IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CODA DEVELOPMENT s.r.o., CODA INNOVATIONS s.r.o. AND FRANTISEK HRABAL, | § § § § | |
| Plaintiffs, | § § | C.A. No. 15-CV-1572 |
| v. | § § | JURY TRIAL DEMANDED |
| GOODYEAR TIRE AND RUBBER COMPANY, ROBERT BENEDICT AND ROBERT ALLEN LOSEY, | § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs CODA DEVELOPMENT s.r.o. and CODA Innovations s.r.o. (collectively "Coda") and Mr. Frantisek Hrabal, ("Mr. Hrabal") (collectively, "Plaintiffs"), allege as follows:

### I.     NATURE OF THE ACTION

1.     This action arises out of Goodyear Tire and Rubber Co.'s ("Goodyear") theft, misappropriation and wrongful patenting of Coda's confidential and proprietary Self-Inflating Tire ("SIT") technology, which was invented by Mr. Hrabal, Coda's CEO.

2.     Coda's SIT is an innovative solution to the problem of underinflated tires. The technology enables a tire to autonomously maintain the correct air pressure. The system is entirely self-contained within the tire and is powered by the energy generated by the rolling of the tire. Plaintiffs have received multiple awards for the SIT technology, including the AEI Technology Award at the 2008 SAE World Congress in Detroit, USA, and "Tire Technology of

the Year" awarded by the Tire Technology Expo in Hamburg, Germany in 2009.

3.     In 2009, Goodyear management, having experienced a number of failed attempts to create a new, innovative product, directed the company to undertake a major effort, using its most accomplished technical personnel, to develop a breakthrough product attractive to its customers.  Defendant Robert Benedict ("Benedict") was a senior member of the Goodyear team charged with this initiative.  As set forth in more detail below, after learning about Plaintiffs' market-changing SIT technology and General Motors' expressions of interest in Coda's SIT, Goodyear improperly sought to deliver a technological breakthrough by misappropriating Plaintiffs' SIT technology.

4.     In early 2008, prior to Goodyear's effort to misappropriate Coda's SIT technology, procurement representatives of General Motors ("GM") approached Coda and expressed interest in SIT as original equipment for new GM cars.  Subsequently, in April 2008, Coda exhibited the SIT at the SAE (Society of Automotive Engineers) World Congress in Detroit, which is a leading forum for new automotive technologies.  Senior GM executives visited Coda's exhibit at the SAE event, and stated that GM "needed" the SIT technology.  At a subsequent meeting with Coda, GM specifically expressed interest in having SIT as original equipment for the 2010 launch of the new Chevy Volt$^{TM}$, to improve its electric-mode driving range.

5.     GM sought Coda's consent to involve Goodyear, a key supplier of original-equipment tires for GM, in bringing a SIT to market.  Coda consented.  GM then wrote to Goodyear suggesting it contact Coda.  In December 2009, Goodyear contacted Coda to initiate discussions on SIT technology.  Benedict soon emerged as the leader of Goodyear interactions with Coda regarding SIT.

6.     In the course of the discussions between Goodyear and Coda, Goodyear misled Plaintiffs

into revealing confidential and proprietary information about their SIT technology.  As an initial step, Goodyear fraudulently induced Coda to enter into a non-disclosure agreement -- one that Goodyear did not ever intend to honor -- under the pretense of potentially engaging in a "development project" with Coda related to this technology.   The non-disclosure agreement expressly restricted Goodyear's use of Coda's confidential and proprietary SIT technology to cooperative efforts between the two companies.  Goodyear ignored its obligations and -- after deriving as much knowledge as it could from a series of meetings with Coda and Mr. Hrabal -- proceeded to patent Plaintiffs' SIT technology (as well as additional related technologies founded on the misappropriated SIT technology) without Plaintiffs' knowledge or consent, and without informing the Patent Office of the true inventor of the SIT technology.

7.     Plaintiffs received a communication evidencing Goodyear's deception in September 2012, when a former Goodyear employee -- who had previously dealt with Plaintiffs during part of the time in which Goodyear was siphoning off Plaintiffs' proprietary knowledge regarding its SIT technology -- learned of Goodyear's SIT technology, and promptly emailed Mr. Hrabal: "I am retired now from Goodyear and see in the news they have copied your SIT.  Unfortunate.  I thought China companies were bad."  Subsequent revelations, including reports of Goodyear's testing of self-inflating tires in San Angelo, Texas, made clear that Goodyear had stolen and improperly patented Plaintiffs' SIT technology.

8.     Plaintiffs are entitled to recover the damages they have suffered as a result of Goodyear's and Benedict's misconduct, and also seek a declaration that Goodyear has improperly obtained patent rights in U.S. Patent Numbers 8,042,586;  8,235,081;  8,322,036;  8,381,784;  8,550,137;  8,573,270;  8,695,661;  8,381,785;  8,113,254;  8,746,306;  8,857,484; and 8,944,126 (collectively, "the Goodyear Patents-In-Suit").  Plaintiffs request the Court to remove the

inventors currently named on US 8,042,586 (Benedict and Losey), and add Mr. Hrabal as the true and sole inventor under 35 U.S.C. § 256.  Because Mr. Hrabal made inventive contributions to the other Goodyear Patents-in-Suit (the "Jointly Invented Patents"), Plaintiffs further request that the Court add him as an additional co-inventor under 35 U.S.C. § 256.

## II.  JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over Goodyear based on at least 28 U.S.C. § 1332 (Diversity), 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1338(a) (Patents), 15 U.S.C § 1121(a). The Ohio state causes of action also are proper under 28 U.S.C. § 1367(a) (Supplemental Jurisdiction). The amount in controversy exceeds $75,000.

10.     This Court has both general and specific personal jurisdiction over Defendants because Goodyear, a corporation organized under the laws of the state of Ohio, which is also the employer of Benedict and Losey, maintains its principal place of business within this District. Moreover, Losey purports to reside in Kent, Ohio, and Benedict purports to reside in Tallmadge, Ohio, both of which are in this District. Furthermore, Defendants have purposefully availed themselves of the privileges and benefits of conducting business in the State of Ohio by, among other things, engaging in business in Ohio, because certain of the acts complained of herein occurred in this District.

11.     Venue is proper in the Northern District of Ohio (Eastern Division) under at least 28 U.S.C. § 1391 (Generally) and § 1400(b) (Patents) because a substantial part of the events or omissions giving rise to this claim occurred in this District, and because Defendants reside and are subject to personal jurisdiction in this District.

## III.  THE PARTIES

12.     Plaintiff CODA Innovations s.r.o. is a research and development entity organized and existing under the laws of the Czech Republic. CODA Innovations s.r.o., has its principal place

of business at Kovaku 1141/11, 15000 Prague 5, Czech Republic.

13.     Plaintiff CODA DEVELOPMENT s.r.o. is a research and development entity organized and existing under the laws of the Czech Republic. CODA DEVELOPMENT s.r.o., has its principal place of business at Taborska 438/51, 140 00 Prague 4, Czech Republic.  CODA DEVELOPMENT s.r.o. is a wholly owned subsidiary of CODA Innovations s.r.o.

14.     Plaintiff, Frantisek Hrabal who resides at Kovaku 1141/11, 15000 Prague 5, Czech Republic, is the CEO of Coda.

15.     Goodyear is a for-profit corporation organized under the laws of the state of Ohio, entity number 12127. Goodyear's website purports that its global headquarters is located at 200 Innovation Way Akron, Ohio 44316-0001. Goodyear, among other things, manufactures and sells automotive tires.

16.     On information and belief, Robert Benedict is a resident of Ohio, and can be served with process at his residence in Tallmadge, Ohio, or workplace at Goodyear at 200 Innovation Way Akron, Ohio 44316-0001.  Benedict was at all relevant times an employee of Goodyear. On information and belief, he was, and remains, responsible for Goodyear's research and development relating to SIT technology.

17.     On information and belief, Robert Allen Losey is a resident of Ohio, and can be served with process at his residence in  Kent, Ohio, or workplace at Goodyear at 200 Innovation Way Akron, Ohio 44316-0001.   Losey was at all relevant times an employee of Goodyear.

## IV.  FACTUAL BACKGROUND

A.     Self Inflating Tire Technology

18.     According to the American Automobile Association, over half of the automobiles operating on American roads have at least one underinflated tire.  Tires, even if in good condition, continuously lose pressure.  Underinflation is not always visible, but drivers, on

average, check their tire pressure only once each year.

19.     Underinflation causes uneven wear on the tire, reduces gas mileage, contributes to tire failures and impairs handling.  Poor handling from underinflated tires causes accidents.  Tire failures result in the loss of hundreds of lives and thousands of injuries every year in the United States. The reduced gas mileage from underinflated tires wastes billions of dollars in fuel each year and accounts for the annual release of millions of tons of carbon dioxide into the atmosphere.  Coda's SIT solves these problems and eliminates the need for drivers to check tire pressure or to manually top up the air.

20.     Coda's SIT technology features a peristaltic pump. The pump is a tube, preferably located in the tire sidewall, which is squeezed by normal deformation of the tire where it meets the road.  As the tire rolls, the squeeze-point travels along the tube, compressing the air in front of it.  If the tire pressure is low, a valve admits the compressed air into the tire, re-inflating it.

B.     Goodyear's need for the SIT Technology

21.     Poised with these market-changing innovations, Plaintiffs began efforts to market their technology.  As described briefly above, GM discovered Plaintiffs' technology, approached Plaintiff, and expressed interest in using SIT for the tires on the new Chevy Volt[TM].  GM expressed its belief that self inflating tires -- itself a green technology -- would be a natural addition to the Volt™.  GM understood that tires that were always properly inflated would improve the vehicle's range, which addressed an important consumer concern about electric cars.

22.     GM noted that Coda's SIT "had all the advantages we are looking for," and that despite the heavy toll the worldwide economic recession was having on GM, "it is technologies such as the SIT that [GM] feel[s] will [play] a part in fixing GM['s] financial health."  In light of the importance to it of this technology, GM requested Goodyear -- a supplier of original equipment

tires to GM -- to cooperate with Coda to produce a self-inflating tire for the launch of the Volt[TM]. Unfortunately, the use of SIT in the Volt[TM] was derailed when on June 1, 2009, General Motors filed for bankruptcy.

23.     Goodyear previously attempted to address the problem of underinflation with a strategic investment in a company that devised an inflation device called the "Cycloid," which was an external unit attached to the wheel and connected to the tire.  It contained a pendulum that powered an air pump as the wheel turned.  Goodyear's attempt to implement this technology failed and, on information and belief, left Goodyear skeptical of self-inflating tire technologies.

24.     Thus, Goodyear's innovation efforts were not initially focused in the self-inflation area, but rather on identifying some new area of interest to its customers. This changed after GM contacted Goodyear, and Goodyear, and especially Benedict, learned about Coda's technology. Subsequently, Benedict and his team seized on this opportunity and accelerated efforts to obtain the details and technological bases of Coda's SIT technology.

25.     A Goodyear representative contacted Mr. Hrabal for detailed information on Coda's SIT efforts, requesting an in-person meeting to discuss technical details, specifically including information on how Coda's technology reduced fuel consumption, withstood wear, and integrated into the tire manufacturing processes.  Goodyear arranged a summit meeting with Mr. Hrabal and Coda at a research facility near Frankfurt, Germany to further discuss the technology.

26.     Before the Goodyear/Coda meeting, Coda -- attentive to protecting its confidential material and trade secrets -- sent Goodyear a non-disclosure agreement (the "Coda NDA"). Goodyear responded not by signing the Coda NDA, but rather by substituting its own corporate NDA (the "Goodyear NDA").  Led to believe that Goodyear proposed its own NDA because it also intended to share its own confidential information -- something it never actually did -- Coda

executed the Goodyear NDA.

27.     The Goodyear NDA restricts use of the information provided thereunder to cooperation between the parties regarding the development of SIT technology.  Specifically, the Goodyear NDA, which contains no provisions maintaining the confidentiality of its terms, states in part;

> "The Confidential Information controlled by this Agreement relates to tires, the manufacturing of tires and in particular to self inflating tires."

> "A recipient of Confidential Information disclosed under this Agreement shall not use the Confidential Information except for discussing a possible cooperation in the field of self inflating tires."

28.     In the Goodyear NDA, Goodyear listed fourteen different individuals from its marketing, research, and development departments, who needed to understand Coda's trade secrets and confidential information, including Benedict.

      C.      Coda Shares Confidential Information Under the Goodyear NDA

29.     The initial summit meeting was held on January 15, 2009 at the research facility near Frankfurt, Germany. It involved Benedict and other key individuals from the Goodyear team, who participated both in-person and by videoconference, and Coda.  Goodyear affirmatively solicited, and was shown, detailed information about Coda's inventions and trade secrets.  In the meeting, some Goodyear participants expressed great skepticism about the viability of the technology, which Mr. Hrabal addressed.

30.     Relying on the Goodyear's supposed good faith commitment to not use its trade secrets "except for discussing a possible cooperation in the field of self inflating tires," and believing that Goodyear was truly exploring a cooperative business relationship with Coda to further develop and market SIT, Coda freely shared information relating to the SIT technology with Goodyear.  Unfortunately, Goodyear's idea of "cooperation" was to lead Coda on and encourage its belief that a mutually beneficial arrangement between the two companies was Goodyear's

desired end-game.  To the contrary, Goodyear's real aim was simply to use Coda's ideas to breathe life into its moribund research efforts.

31.     Specifically, Coda shared novel and proprietary trade secret and confidential information relating to the full technological bases and design parameters of the SIT technology, including, but not limited to, the placement of the pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior and interior of tire.

32.     On information and belief, Goodyear left the January 2009 meeting impressed with Coda's SIT technology.  The parties agreed to continue discussions.

33.     In recognition of Coda's technological advances, in February 2009, Plaintiffs' SIT technology received the prestigious Tire Technology of the Year Award at the Tire Technology Expo in Hamburg, Germany -- the world's most important tire manufacturing technology exhibition which is attended by all of the leading tire manufacturers.   Adam Gavine, editor of Tire Technology International, stated: "It's fantastic, beneficial technology, yet remains a simple, inexpensive solution designed to be manufacturer-friendly. Production costs for incorporating this component will increase only marginally compared to regular tires, but the benefits the technology provides are considerable."

34.     On information and belief, after its meeting with Coda and Coda's receiving the Tire Technology of the Year Award at the Tire Technology Expo, key Goodyear personnel began attempting to replicate Coda's technology.  Goodyear -- apparently uncertain if they were capable of replicating Coda's SIT -- suggested a second summit meeting with Coda on Monday, June 15, 2009, in Prague, Czech Republic.  In an email to Mr. Hrabal, Benedict specifically requested to (i) view an updated technical presentation, (ii) review the latest product, and (iii)

review the testing methods and performance results. Another Goodyear engineer specifically stated that: "After a first internal evaluation [at Goodyear] I'd like to tell you that we are interested in your SIT technology and would like to know more about it. Therefore, we [would like to conduct] a technical readiness evaluation at your premises in Prague, in order to physically judge the concept feasibility on-site and to decide whether we will start a development project or not."

35.     Having induced Coda to share more of its technology with the carrot of a potential "development project," believing a development partnership was in the offing if, in Goodyear's words, Coda's groundbreaking  technology was "feasible," Coda once again agreed to meet with Goodyear and Benedict to share additional confidential and proprietary information relating to the SIT technology.

36.     At this second meeting, Coda reviewed with Goodyear its progress in refining and testing its proprietary designs.  Significantly, Coda also allowed Goodyear to examine a functional prototype of the SIT.  Benedict requested time in private, with his team, in the room where the prototype was located, during which he photographed the prototype without permission.  Some time after leaving the room, he told Coda he had made the photographs.

        D.    Goodyear Cuts Off Communications with Coda

37.     While Coda left the June 2009 summit meeting believing it was a success and that a potential "development project" was imminent, several months passed without any communication from Goodyear, much less apparent progress towards a deal.  Simply and without explanation, Goodyear, having seen, examined and photographed Coda's feasible and commercially viable SIT technology, unilaterally stopped communicating with Coda. During this time, Coda attempted to communicate with Goodyear without success

38.     In one such effort to re-start communications, in November 2009, Mr. Hrabal invited Benedict to dinner in Akron, Ohio to discuss the status of the proposed development project. Benedict declined, stating that "[a] meeting would be premature at this point."  Benedict also declined to give any feedback regarding the June 2009 summit.  Despite repeated attempts to elicit additional information from Benedict and his colleagues as to why Goodyear had surprisingly gone silent in its negotiations with Coda, Mr. Hrabal never heard back.

39.     In December of 2009, a Goodyear employee on Benedict's SIT team -- one who had previously discussed Coda's SIT technology with Mr. Hrabal, but had not been involved in the June 2009 summit meeting -- independently contacted Mr. Hrabal to inquire about the status of Coda's SIT technology in preparation for an internal Goodyear meeting on the subject.  Mr. Hrabal responded by explaining how Benedict -- who the Goodyear employee confirmed remained in charge of Goodyear's self inflating tire project -- had surprisingly gone silent despite Goodyear's apparent interest in the SIT technology.

40.     The Goodyear employee wrote to Mr. Hrabal that, "during [Goodyear's] brainstorm session, I indicated your invention matches up nicely with Goodyear's current criteria for development and asked if we have looked into this with SIT Coda.  His response to this question was oddly vague."  The Goodyear employee later wrote that he attributed Goodyear's sudden silence in negotiations to "the 'not invented here' syndrome."

41.     Despite that, and unbeknownst to Coda, Goodyear was in the process of patenting Coda's technology, falsely claiming it as its own.

        E.      Goodyear Steals and Attempts to Patent Plaintiffs' SIT Technology

42.     In December 2009, mere weeks after Benedict told Mr. Hrabal that meeting to discuss progress on the joint "developmental project" was "premature, " Goodyear filed an application

seeking to patent  Coda's SIT technology.  Goodyear's months-long silence was not as Goodyear claimed an assessment of the SIT's viability, but rather meant only that it had obtained all the confidential and proprietary information it needed from Plaintiffs in order to misappropriate for itself Coda's leading position in the market for SIT technology.  Simply, Goodyear never had any intention of pursuing a "development project" with Plaintiffs.

43.     Thus, on December 21st, 2009 -- although unknown to Plaintiffs until much later -- Goodyear consummated its plan to misappropriate Coda's technology by filing multiple United States patent applications, including application number 12/643,243 ('the '243 Application"), now US Patent No. 8,042,586 ("the '586 Patent").   Despite Coda's invention of the technology embodied in the patent, Goodyear identified Robert Allen Losey and Robert Leon Benedict as the inventors.  Mr. Hrabal is the true and sole inventor of all claims of the '586 Patent, yet is omitted from the patent.

44.     Unfortunately, Plaintiffs did not learn about Goodyear's deception until years later. Plaintiffs simply assumed that Goodyear's silence indicated it was uninterested in the technology -- or, at the very least, that the worldwide economic recession in effect at the time was preventing further discussions.  In September 2012, however, Mr. Hrabal received an unsolicited email from the now ex-Goodyear employee mentioned above.  In that email, the former Goodyear employee stated: "I am retired now from Goodyear and see in the news today that they have copied your SIT. Unfortunate. I thought China companies were bad."

45.     This series of events allowed Plaintiffs to determine that Goodyear had defrauded them, misappropriated their confidential and proprietary SIT technology, and to discover that Goodyear had filed the Patents-in-Suit.

         F.     Goodyear Benefits from its Theft of the SIT Technology

46.     Upon misappropriating the Coda SIT technology, Goodyear received numerous monetary and public relations benefits.  There benefits, include, but are not limited to the following:

a.  In December 2010, the United States Department of Energy ("DOE") announced that it was accepting applications for up to $184 Million in grants to accelerate the development and deployment of new efficient vehicle technologies. At least $1.5 Million was earmarked for developing and demonstrating fuel-efficient tire technology. Plaintiffs believe that Goodyear improperly based its grant application, in part, on the '243 Application.  On or about August 19, 2011, the press reported that the DOE awarded Goodyear a $1.5 million grant for development of SIT technology.  Goodyear stated that it was developing SIT technology for commercial trucks in the United States and consumer vehicles in Europe.

b.  For the European research, Goodyear obtained a separate Luxembourg government grant.  The press described Goodyear's technology as a peristaltic pump: "An inlet port . . .pulls outside air into a tube that runs around the inside rim of the tire. As the tire rolls, the pressure generated by the vehicle's weight on the road flattens the tube, pushing a high-pressure air bubble forward. [It] travels inside the inflation tube to a valve  . . If the air pressure inside the tire is low, the valve opens, allowing the high pressure bubble into the tire."

c.  On May 18, 2012, Benedict presented Goodyear's progress report to the DOE, entitled A System for Automatically Maintaining Pressure in a Commercial Truck Tire. Goodyear stated that it had been granted US 8,042,586, and had filed an additional twenty three applications. Goodyear's plan stated that on-vehicle testing would begin in December 2013.

d.  In October 2012, Popular Mechanics named Goodyear as a 2012 Breakthrough Award winner based on the stolen SIT technology.

e.  In November 2012, Time Magazine named the SIT technology that Goodyear falsely claimed to have invented as one of the Best Inventions of the Year 2012.

47.     On May 16, 2013, Mr. Benedict presented Goodyear's progress to the DOE. He affirmed his earlier statement that on-vehicle testing would begin in December 2013.

48.     On June 19, 2014, Mr. Benedict again presented Goodyear's progress to the DOE. He affirmed that on-vehicle testing began on December 17, 2013 at Goodyear's San Angelo Proving Ground ("SAPG").

G.     Goodyear's Misappropriation Interferes with Coda's Ability to Generate Capital

49.     At the same time, Coda began encountering difficulties arising from Goodyear's patenting of its technology. For example, Plaintiffs were attempting to secure other potential business partners for its SIT technology, as well as financial support for additional research and development. Plaintiffs approached numerous international tire manufacturers, but the substantial publicity Goodyear had begun to generate after misappropriating Plaintiffs' SIT technology made prospective partners wary. Indeed, one such customer specifically named Goodyear's self-inflating tire project as to why it would not cooperate with Coda.

50.     Further, in 2012, Coda submitted a bid to Eurostars, a European Union program that provided funding to market-oriented research and development, and innovation projects for small and medium size businesses. Coda's bid proposal for Eurostars project E! 7759 entitled "Self Inflating Tire for Commercial Vehicles" stressed Coda's proprietary SIT technology. On January 17, 2013 Eurostars rejected Coda's bid for funding. The rejection was based in part on the issuance of U.S. patent 8,381,785, improperly patented by Goodyear, which is based on Mr. Hrabal's technology.

> H.     The Goodyear Patent Applications and Patents-in-Suit

51.     U.S. Patent Number 8,042,586 ("the '586 Patent") issued on October 25, 2011 from U.S. Appl. No. 12/643,243, naming Losey and Benedict as inventors. U.S. Patent Number 8,042,586 is assigned to Goodyear.

52.     U.S. Patent Number 8,235,081 ("the '081 Patent") issued on August 7, 2012 from U.S. Appl. No. 12/951,168, naming Delgado, Drylund, and Sieverding as inventors. U.S. Patent Number 8,235,081 is assigned to Goodyear.

53.     U.S. Patent Number 8,322,036 ("the '036 Patent") issued on December 4, 2012 from U.S. Appl. No. 12/951,184, naming Delgado, Drylund, and Sieverding as inventors. U.S. Patent

Number 8,322,036 is assigned to Goodyear.

54.     U.S. Patent Number 8,381,784 ("the '784 Patent") issued on February 26, 2013 from U.S. Appl. No. 13/178,767, naming Delgado as the inventor. U.S. Patent Number 8,381,784 is assigned to Goodyear.

55.     U.S. Patent Number 8,550,137 ("the '137 Patent") issued on October 8, 2013 from U.S. Appl. No. 12/951,148, naming Delgado, Dyrlund, and Sieverding as inventors. U.S. Patent Number 8,550,137 is assigned to Goodyear.

56.     U.S. Patent Number 8,573,270 ("the '270 Patent") issued on November 5, 2013 from U.S. Appl. No. 13/221,433, naming Hinque as the inventor. U.S. Patent Number 8,573,270 is assigned to Goodyear.

57.     U.S. Patent Number 8,695,661 ("the '661 Patent") issued on April 15, 2014 from U.S. Appl. No. 13/183,896, naming Delgado and Dyrlund as the inventors. U.S. Patent Number 8,695,661 is assigned to Goodyear.

58.     U.S. Patent Number 8,381,785 ("the '785 Patent") issued on February 26, 2013 from U.S. Appl. No. 12/775,552, naming Losey as the sole inventor. U.S. Patent Number 8,381,785 is assigned to Goodyear.

59.     U.S. Patent Number 8,113,254 ("the '254 Patent")  issued on February 14, 2012 from U.S. Appl. No 12/643,176, naming Benedict as the sole inventor. U.S. Patent Number 8,113,254 is assigned to Goodyear.

60.     U.S. Patent Number 8,746,306 ("the '306 Patent") issued on June 10, 2014 from U.S. Appl. No. 13/292,460, naming Hinque, Levy, and Bonnet as co-inventors.  U.S. Patent Number 8,746,306 is assigned to Goodyear.

61.     U.S. Patent Number 8,857,484 ("the '484 Patent") issued on October 14, 2014 from U.S.

Appl. No. 13/221,231 naming Hinque as the sole inventor. U.S. Patent Number 8,857,484 is assigned to Goodyear.

62.     U.S. Patent Number 8,944,126 ("the '126 Patent") issued on February 3, 2015 from U.S. Appl. No. 13/561,141 naming Frantzen as the sole inventor. U.S. Patent Number 8,944,126 is assigned to Goodyear.

63.     Claims of one or more of the Goodyear Patents-In-Suit cover assemblies and methods for assembly of peristaltic pumps and other devices used in self-inflating tires.

64.     The Goodyear Patents-In-Suit do not name Mr. Hrabal as a sole inventor or co-inventor.

65.     On information and belief, Mr. Hrabal was purposefully, and with deceptive intent, not named as an inventor on the Patents-In-Suit.

66.     Each of the Goodyear Patents-In-Suit includes one or more claims containing significant inventive contributions of Mr. Hrabal.

67.     The Goodyear Patents-in-Suit, with the exception of U.S. Patent Number 8,042,586, are referred to as the Jointly Invented Patents. Patent applications, later issuing as the Jointly Invented Patents, are referred to as the Jointly Invented Applications.

68.     The Goodyear Patents-in-Suit have claims that include limitations covering the technology that Coda disclosed in confidence to Goodyear in the January and June 2009 meetings. The technology includes, but is not limited to, the placement of the pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior to interior of tire.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Correction of Inventorship under 35 U.S.C. § 256 of U.S. Patent No. 8,042,586)**

**(Against Goodyear, Benedict and Losey)**

69.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68 above, as though fully set forth herein.

70.    The '586 Patent does not list Mr. Hrabal as an inventor.

71.    Mr. Hrabal independently conceived of each element of each claim in the '586 Patent.

72.    Mr. Hrabal communicated each element of each claim in the '586 Patent to Goodyear.

73.    Since Mr. Hrabal conceived of each element of each claim of the '586 Patent he is the sole inventor of the '586 Patent.

74.    Because Mr. Hrabal is the rightful inventor of the '586 Patent this Court should direct the Commissioner of Patents to add Mr. Hrabal to the '586 Patent as an inventor.

### SECOND CAUSE OF ACTION

**(Correction of Inventorship under 35 U.S.C. § 256 of U.S. Patent No. 8,042,586)**

**(Against Goodyear, Benedict, and Losey)**

75.    Plaintiffs incorporate their allegations as set forth in paragraphs 1 through 68 above, as though fully set forth herein.

76.    The '586 Patent lists Losey and Benedict as co-inventors.

77.    Losey and Benedict did not conceive of any elements of any claims of the '586 Patent.

78.    Since Losey and Benedict did not conceive of any elements of any claims of the '586 Patent, neither are inventors of the '586 Patent.

79.    Because Losey and Benedict did not conceive of any elements of any claims of the '586

Patent this Court should direct the Commissioner of Patents to remove Losey and Benedict as inventors of the '586 Patent.

## THIRD CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,235,081)

### (Against Goodyear)

80.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '081 patent does not list Mr. Hrabal as a co-inventor.

81.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '081 Patent.

82.    Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '081 Patent, he is a co-inventor.

83.    Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '081 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '081 Patent.

## FOURTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,322,036)

### (Against Goodyear)

84.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '036 patent does not list Mr. Hrabal as a co-inventor.

85.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '036 Patent.

86.    Since Mr. Hrabal substantially contributed to the conception of significant features of one

or more of the claims of the '036 Patent, he is a co-inventor.

87.     Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '036 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '036 Patent.

## FIFTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,381,784)

### (Against Goodyear)

88.     Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '784 patent does not list Mr. Hrabal as a co-inventor.

89.     Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '784 Patent.

90.     Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '784 Patent, he is a co-inventor.

91.     Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '784 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '784 Patent.

## SIXTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,550,137)

### (Against Goodyear)

92.     Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '137 patent does not list Mr. Hrabal as a co-inventor.

93.     Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '137 Patent.

94.     Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '137 Patent, he is a co-inventor.

95.     Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '137 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '137 Patent.

## SEVENTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,573,270)

### (Against Goodyear)

96.     Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '270 patent does not list Mr. Hrabal as a co-inventor.

97.     Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '270 Patent.

98.     Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '270 Patent, he is a co-inventor.

99.     Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '270 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '270 Patent.

## EIGHTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,695,661)

### (Against Goodyear)

100.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '661 patent does not list Mr. Hrabal as a co-inventor.

101.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant

features of the inventions recited in one or more claims of the '661 Patent.

102.    Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '661 Patent, he is a co-inventor.

103.    Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '661 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '661 Patent.

## NINTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,944,126)

### (Against Goodyear)

104.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '126 patent does not list Mr. Hrabal as a co-inventor.

105.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '126 Patent.

106.    Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '126 Patent, he is a co-inventor.

107.    Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '126 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '126 Patent.

## TENTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,857,484)

### (Against Goodyear)

108.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '484 patent does not list Mr. Hrabal as a co-inventor.

109.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '484 Patent.

110.    Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '484 Patent, he is a co-inventor.

111.    Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '484 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '484 Patent.

## ELEVENTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,746,306)

### (Against Goodyear)

112.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '306 patent does not list Mr. Hrabal as a co-inventor.

113.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '306 Patent.

114.    Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '306 Patent, he is a co-inventor.

115.    Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '306 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '306 Patent.

## TWELFTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,381,785)

### (Against Goodyear)

Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '785 patent does not list Mr. Hrabal as a co-inventor.

116.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '785 Patent.

117.    Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '785 Patent, he is a co-inventor.

118.    Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '785 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-inventor on the '785 Patent.

## THIRTEENTH CAUSE OF ACTION

### (Correction of Inventorship under 35 U.S.C. § 256 re: 8,113,254)

### (Against Goodyear)

119.    Plaintiffs incorporate their allegations set forth in paragraphs 1 through 68, above, as though fully set forth herein. The '254 patent does not list Mr. Hrabal as a co-inventor.

120.    Mr. Hrabal collaborated with Goodyear and contributed to the conception of significant features of the inventions recited in one or more claims of the '254 Patent.

121.    Since Mr. Hrabal substantially contributed to the conception of significant features of one or more of the claims of the '254 Patent, he is a co-inventor.

122.    Since Mr. Hrabal is a rightful co-inventor of claimed features of one or more claims of the '254 Patent, this Court should direct the Commissioner of Patents to add Mr. Hrabal as a co-

inventor on the '254 Patent.

## FOURTEENTH CAUSE OF ACTION

### (Ohio Common Law: Fraudulent Non-Disclosure re: US 8,042,586)

### (Against Goodyear and Benedict)

123.    Plaintiffs incorporate their allegations set forth in paragraph 1 through 122, above, as though fully set forth herein.

124.    As described above, Goodyear and Benedict intentionally did not disclose and affirmatively hid numerous material facts, which include but are not limited to:

a.      The failure to disclose to Plaintiffs the filing of patent application US 12/643,243, now US 8,042,586, based on inventions of Mr. Hrabal;

b.      The intentional misrepresentation to the United States Patent and Trademark Office that Losey and Benedict were the inventors and that the Goodyear was the rightful owner of the SIT technology;

c.      The affirmative concealment from the United States Patent and Trademark Office of the fact that Mr. Hrabal, and not Losey and Benedict, was the inventor of the SIT technology;

d.      The affirmative concealment from the United States Patent and Trademark Office of the fact that Coda, and not Goodyear, was the inventor of the SIT technology; and

e.      The refusal and failure to inform the United States Patent and Trademark Office that Coda was the rightful owner of the SIT technology.

125.    Goodyear and Benedict had a relationship of special confidence and trust with Coda. The parties had entered into a non-disclosure agreement in which Coda freely shared trade secret and confidential information with Goodyear and Benedict. Goodyear, through Benedict and his team, and under the purported protection of the nondisclosure agreement, urged that special confidence and trust be reposed in them, and by this resulting position of superiority and influence acquired Coda's trust to disclose its secrets. Goodyear, through Benedict, used Goodyear's leading

industry position, its entry into a formal confidentiality arrangement with Coda and the intended joint development project to inspire Coda's confidence. Coda knew of Goodyear's position and accordingly shared its confidences with Goodyear. This relationship was first established in the January 2009 meeting and then extended at Goodyear's request into a second meeting in June 2009.

126.    Thus, Goodyear and Benedict owed a duty of disclosure to Coda, and were obliged to engage in a full, fair, open, and honest disclosure of everything affecting the business relationship.

127.    Goodyear and Benedict had an affirmative duty (i) to inform Plaintiffs that they were filing patent application US 12/643,243, now US 8,042,586, based on inventions of Mr. Hrabal, and were embarking on an extensive program of research, development and patenting, including government-sponsored research and development based on Coda's SIT technology; and (ii) to inform the United States Patent and Trademark Office that Coda was the rightful owner of Mr. Hrabal's SIT technology.

128.    Goodyear and Benedict intentionally and deliberately withheld the knowledge that they were filing patent application US 12/643,243, now US 8,042,586, based on inventions of Mr. Hrabal. Withholding this information was material to the relationship between the parties, and material to Coda's decisions on its technology.

129.    Goodyear and Benedict knew that Plaintiffs were unaware that they were filing patent application US 12/643,243, now US 8,042,586, based on inventions of Mr. Hrabal.

130.    Goodyear and Benedict had a duty to inform, and deliberately did not inform, Plaintiffs that they were filing patent application US 12/643,243, now US 8,042,586, based on inventions of Mr. Hrabal.

131.    By failing to inform Plaintiffs that they were filing patent application US 12/643,243, now US 8,042,586, based on inventions of Mr. Hrabal, Goodyear, intended Plaintiffs to continue to disclose proprietary, confidential, and trade secret information relating to the SIT technology, to assist Goodyear, and to refrain from opposing the patent application at the USPTO.

132.    Plaintiffs reasonably relied on Goodyear and Benedict's non-disclosure.  Plaintiffs continued working with Goodyear in good faith, continuing to disclose proprietary, confidential, and trade secret information, assist Goodyear, and to refrain from interfering with the patent application at the USPTO.

133.    Plaintiffs were injured by the non-disclosure.  After misleading Mr. Hrabal and Coda, Goodyear's subsequent public activities, including procuring government grants in the United States and Europe, publishing relevant patents and patent applications, and publishing its plans to market self-inflating tires under the AMT brand, impaired Coda's access to alternate industrial partners and financing to pursue independent further development of its technology.  By its conduct, Goodyear both misappropriated Coda's leading position in the market for SIT technology, and used that position to improperly hobble Coda, and to obtain a head start in the further development of the technology and effectively prevent Coda from competing in the market.

134.    Goodyear's and Benedict's conduct was committed with actual malice and/or a wanton and willful disregard of plaintiffs' rights.

135.    As a proximate result of this intentional fraudulent non-disclosure, Plaintiffs suffered significant damages in an amount to be determined at trial.

## FIFTEENTH CAUSE OF ACTION

**(Ohio Common Law: Fraudulent Non-Disclosure re: Jointly Invented Applications)**

**(Against Goodyear)**

136.    Plaintiffs incorporate their allegations set forth in paragraph 1 through 135, above, as though fully set forth herein.

137.    As described above, Goodyear through its employees and agents, including but not limited to Benedict, did not disclose and affirmatively hid numerous material facts, which include but are not limited to:

> f.    The failure to disclose to Plaintiffs of the filing of the Jointly Invented Applications, based on inventions of Mr. Hrabal;
>
> g.    The intentional misrepresentation to the United States Patent and Trademark Office that inventors named on the Jointly Invented Patents were the inventors and that the Goodyear was the rightful owner of the SIT technology;
>
> h.    The affirmative concealment from the United States Patent and Trademark Office of the fact that Mr. Hrabal, and not the inventors named on the Jointly Invented Patents, was the inventor of the SIT technology;
>
> i.    The affirmative concealment from the United States Patent and Trademark Office of the fact that Coda, and not Goodyear, was the inventor of the SIT technology; and
>
> j.    The refusal and failure to inform the United States Patent and Trademark Office that Coda was the rightful owner of the SIT technology.

138.    Goodyear had a relationship of special confidence and trust with Coda. The parties had entered into a non-disclosure agreement in which Coda freely shared trade secret and confidential information with Goodyear. Goodyear, under the purported protection of the nondisclosure agreement, urged that special confidence and trust be reposed in it, and by this resulting position of superiority and influence acquired Coda's trust to disclose its secrets. Goodyear imposed confidence in Coda because of its industry position. Coda knew of

Goodyear's position and accordingly shared its confidences with Goodyear. This relationship was first established in the January 2009 meeting and then extended at Goodyear's request into a second meeting in June 2009.

139.    Thus, Goodyear owed a duty of disclosure to Coda, and was obliged to engage in a full, fair, open, and honest disclosure of everything affecting the business relationship.

140.    Goodyear had an affirmative duty to inform Plaintiffs that it was filing the Jointly Invented Applications, based on inventions of Mr. Hrabal, and to inform the United States Patent and Trademark Office that Coda was the rightful owner of Mr. Hrabal's SIT technology.

141.    Goodyear intentionally and deliberately withheld the knowledge that it was filing the Jointly Invented Applications, based on inventions of Mr. Hrabal. Withholding this information was material to the relationship between the parties, and material to Coda's decisions on its technology.

142.    Goodyear knew that Plaintiffs were unaware that it was filing the Jointly Invented Applications, based on inventions of Mr. Hrabal.

143.    Goodyear had a duty to inform, and deliberately did not inform, Plaintiffs that they were filing the Jointly Invented Applications, based on inventions of Mr. Hrabal.

144.    By failing to inform Plaintiffs that it was filing the Jointly Invented Applications, based on inventions of Mr. Hrabal, Goodyear intended Plaintiffs to continue to disclose proprietary, confidential, and trade secret information relating to the SIT technology, to assist Goodyear, and to refrain from interfering with the Jointly Invented Applications at the USPTO.

145.    Plaintiffs reasonably relied on Goodyear's non-disclosure.  Plaintiffs continued working with Goodyear in good faith, continuing to disclose proprietary, confidential, and trade secret information, assist Goodyear, and to refrain from interfering with the Jointly Invented

Applications at the USPTO.

146.    Plaintiffs were injured by the non-disclosure.  After misleading Mr. Hrabal and Coda, Goodyear's subsequent public activities, including procuring government grants in the United States and Europe, publishing relevant patents and patent applications, and publishing its plans to market self-inflating tires under the AMT brand, impaired Coda's access to alternate industrial partners and financing to pursue independent further development of its technology.  By its conduct, Goodyear both misappropriated Coda's leading position in the market for SIT technology, and used that position to improperly hobble Coda, and to obtain a head start in the further development of the technology and effectively prevent Coda from competing in the market.

147.    Goodyear's conduct was committed with actual malice and/or a wanton and willful disregard of Plaintiffs' rights.

148.    As a proximate result of this intentional fraudulent non-disclosure, Plaintiffs suffered significant damages in an amount to be determined at trial.

## SIXTEENTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

### Ohio Rev.Code § 1333.61 et. seq.

### (Against Goodyear)

149.    Coda incorporate the allegations set forth in paragraph 1 through 148, above, as though fully set forth herein.

150.    Coda owned the confidential and proprietary SIT technology and other, related information, as outlined above. The technology and related information had independent economic value from not being generally known, and Coda took efforts reasonable under the

circumstances to maintain its secrecy. The technology and related information constitutes trade secrets under Ohio law.  Goodyear obtained and unlawfully appropriated, secured or stole Coda's confidential and proprietary technology and related information by improper means.

151.    Goodyear both misappropriated Coda's leading position in the market for SIT technology, and used that position to improperly hobble Coda, and to obtain a head start in both the further development of the technology, in being first to market and preventing Coda from marketing its inventions and from entering and competing in the market.   Goodyear further misappropriated Coda's trade secrets in order to file applications for the Patents-in-Suit in direct violation of the very confidentiality and non-disclosure obligations Goodyear undertook in the Goodyear NDA in order to get access to Coda's trade secrets.  Goodyear abused that confidential and contractual relationship in order to acquire access to Coda's trade secrets by improper means, and Goodyear knew that any unauthorized use or disclosure of same was improper and strictly prohibited.  Alternatively, Goodyear has appropriated the trade secrets by inducing Coda to enter into the Goodyear NDA, or by oral agreement.

152.    Goodyear used the appropriated trade secrets to obtain the Goodyear Patents-In-Suit, shorten its time to market for a SIT product, reduce its efforts in bringing its SIT product to market, and enable it to further develop SIT technology and to make applications for, and obtain, patents on certain of those developments.

153.    Goodyear's misappropriation of Coda's trade secrets was and is willful and malicious because Goodyear intentionally tried to benefit itself knowing that in so doing it was injuring Coda.

154.    As a proximate result of Goodyear's misappropriation of Coda's trade secrets, Coda suffered significant damages in an amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION

### (Tortious Interference With Business Relations)

### (Against Goodyear)

155.    Coda incorporates its allegations set forth in paragraph 1 through 154, above, as though fully set forth herein.

156.    During the relevant time period, Coda had prospective business relationships with numerous other national tire manufacturers and other interested parties.  There was a reasonable probability that Coda would have entered into these business relationships and with other prospective customers and investors who sought to license, use or invest in Coda's confidential and proprietary SIT technology.

157.    Goodyear was aware of Coda's prospective business relationships and used wrongful means -- including fraud, misrepresentation and misappropriation of confidential proprietary information and trade secrets -- to intentionally and maliciously interfere with and prevent those relationships.

158.    As a result of Goodyear's intention and improper interference, these other parties have refused to enter into contracts and business relationships with Coda, and/or to license or invest in Coda's confidential and proprietary SIT technology.  One tire manufacturer specifically commented that Goodyear's self-inflating tire project was a cause of its refusal to cooperate with Coda. Goodyear's intentional and improper interference was not privileged.

159.    Goodyear's conduct was committed with actual malice and/or a wanton and willful disregard of the plaintiffs' rights.

160.    As a proximate result of Goodyear's tortious interference with Coda's prospective business relations, Coda suffered significant damages in an amount to be determined at trial.

## EIGHTEENTH CAUSE OF ACTION

### (Tortious Interference With Prospective Economic Advantage)

### (Against Goodyear)

161.   Coda incorporates its allegations set forth in paragraph 1 through 160, above, as though fully set forth herein.

162.   During the relevant time period, Coda had prospective business relationships with numerous other national tire manufacturers as with other prospective investors to help further research and develop Plaintiffs' SIT technology.  There was a reasonable probability that Coda would have entered into these business relationships with these parties and other prospective customers to license, use or invest in Coda's confidential and proprietary SIT technology.

163.   Goodyear was aware of Coda's prospective business relationships and used wrongful means -- including fraud, misrepresentation and misappropriation of confidential proprietary information and trade secrets -- to intentionally and maliciously interfere with and prevent those relationships.

164.   As a result of Goodyear's intention and improper interference, these prospective partners have refused to enter into contracts and business relationships with Coda, and/or to license or invest in Coda's confidential and proprietary SIT technology.  One tire manufacturer specifically commented that Goodyear's self-inflating tire project was a cause of its refusal to cooperate with Coda.  Goodyear's intentional and improper interference was not privileged.

165.   Goodyear's conduct was committed with actual malice and/or a wanton and willful disregard of the plaintiffs' rights.

166.   As a proximate result of Goodyear's tortious interference with Coda's prospective economic advantage, Coda suffered significant damages in an amount to be determined at trial.

## NINETEENTH CAUSE OF ACTION

### (Negligent Misrepresentation)

### (Against Goodyear)

167.    Coda incorporates its allegations set forth in paragraph 1 through 166, above, as though fully set forth herein.

168.    As described above, Goodyear and Mr. Benedict made serial representations that were false and concealed its misappropriation of Plaintiffs' SIT Technology.  Goodyear and Benedict's  numerous false and material misrepresentations to Coda and Mr. Hrabal, include, but not limited to:

> a.    Falsely informing Plaintiffs that Goodyear desired to explore commencing a "development project" with CODA in the form of a long-term relationship centered on development and exploitation of Plaintiffs' SIT technology, and concealing its true intention to misappropriate and patent the SIT technology;

> b.    Making misrepresentations to the United States Patent and Trademark Office that Losey and Benedict were the inventors of the SIT technology, and that Goodyear was the rightful owner of the patents-in-suit; and

> b.    The public misrepresentations that Goodyear, Mr. Losey and Mr. Benedict were the inventors and rightful owners of the SIT technology and the patents-in-suit.

169.    These misrepresentations or omissions were material to Plaintiffs' decision to enter into the Goodyear NDA and to embark on what it believed was a "joint development" effort with Goodyear and to provide Goodyear and Mr. Benedict with restricted access to Plaintiffs' confidential and proprietary SIT technology, subject to that confidential relationship.

170.    Each of these misrepresentations or omissions was false and misleading.  Goodyear did not exercise reasonable care or competence in obtaining or communicating this information, and

made these misrepresentations with the specific intent to induce Coda to enter into the Goodyear NDA and to induce Plaintiffs into granting Goodyear access to Plaintiffs' confidential and proprietary SIT technology such that Goodyear could steal and misappropriate same.

171.    Goodyear made these representations or omissions during the course of Goodyear's business and/or as part of Goodyear's improper misappropriation of Plaintiffs' confidential and proprietary SIT technology.

172.    Goodyear did not exercise reasonable care or competence in obtaining or communicating this information, and made these misrepresentations to induce Plaintiffs into granting Goodyear access to Plaintiffs' confidential and proprietary SIT technology such that Goodyear could steal and misappropriate same.

173.    Plaintiffs had no knowledge that these misrepresentations or omissions were false and/or misleading, and reasonably and justifiably relied on them when entering into the Goodyear NDA, embarking on the purported "joint development" effort with Goodyear and when agreeing to grant Goodyear and Benedict restricted access to Plaintiffs' confidential and proprietary SIT technology.

174.    Had Goodyear and Benedict not made these misrepresentations or omissions, Coda would not have entered into the Goodyear NDA, have granted Goodyear and Benedict access to the confidential and proprietary SIT technology, and Goodyear and Benedict could not have filed applications for the Patents-in-Suit.

175.    Goodyear's and Benedict's conduct was committed with actual malice and/or a wanton and willful disregard of the plaintiffs' rights.

176.    As a proximate result of these negligent misrepresentations and omissions, Plaintiffs suffered significant damages in an amount to be determined at trial.

## TWENTIETH CAUSE OF ACTION

### (Violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(A))

### (Against Goodyear)

177.    Coda incorporates the allegations set forth in paragraph 1 through 176, above, as though fully set forth herein.

178.    Coda owned the confidential and proprietary SIT technology, as outlined above. Goodyear misrepresented the ownership of the proprietary SIT technology by filing U.S. 12/643,243, now US 8,042,586, and the Jointly Invented Applications. It further misrepresented ownership in the SIT technology in presentations to the U.S. Department of Energy.

179.     As a result of its disclosure of the proprietary SIT technology Goodyear has represented to the marketplace in a false and misleading way that it created and owns the intellectual property associated with the proprietary SIT technology.

180.    Goodyear's actions have a tendency to deceive and create confusion in a substantial portion of the intended audience in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

181.    The confusion in the intended audience has influenced and is likely to influence future investment or purchasing decisions. As discussed above, the Eurostars grant was denied due to Goodyear's false representation that it owned the technology clamed in U.S. 8,381,785.

182.    Goodyear's misrepresentations affect or likely will affect commerce.

183.    There is injury or likelihood of injury to Coda in terms of its loss of clearly understood title to its intellectual property and a resulting loss of the value thereof, including a loss of good will.

184.    Goodyear's acts were both willful and malicious, and therefore Coda is entitled to exemplary damages against Goodyear.

**TWENTY-FIRST CAUSE OF ACTION**

**(Unjust Enrichment)**

**(Against Goodyear)**

185.    Plaintiffs conferred benefits to Goodyear by sharing novel and proprietary trade secret and confidential information relating to the full technological bases and design parameters of the SIT technology, including, but not limited to, the placement of the pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior and interior of tire. Plaintiffs spent significant time and effort in the development, testing, and implementing of these trade secrets and confidential information. Further, Plaintiffs spent significant time and effort discussing these concepts with Goodyear.

186.    Goodyear knew that it was benefitting from Plaintiff's trade secrets, confidential information, efforts, and time.

187.    Retention of these benefits by Goodyear under the circumstances is unjust without payment to Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Coda and Mr. Hrabal pray for relief as follows:

1.    That the Court direct the Commissioner of Patents to remove Robert Allen Losey and Robert Leon Benedict as inventors on US 8,042,586;

2.    That the Court direct the Commission of Patents to add Mr. Hrabal as an inventor on US 8,042,586;

3.    That the Court direct the Commissioner of Patents to add Mr. Hrabal as co-inventor on the Jointly Invented Patents;

4.     Punitive damages because Goodyear's conduct is willful and wanton;

5.     Exemplary damages for its willful and malicious misconduct in violation of the

       Lanham Act;

6.     Pre- and post-judgment interest at the maximum rate allowed by law;

7.     An accounting;

8.     All costs of suit, including Plaintiffs' reasonable attorney's fees; and

9.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Lindsey E. Sacher*

MITCHELL G. BLAIR (0010892)
TRACY SCOTT JOHNSON (0064579)
ALEXANDER B. REICH (0084869)
LINDSEY E. SACHER (0087883)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
Tel:  216-622-8200
Fax:  216-622-8441
mblair@calfee.com
tjohnson@calfee.com
areich@calfee.com
lsacher@calfee.com

*Attorneys for Plaintiffs, CODA*
*DEVELOPMENT s.r.o., CODA*
*Innovations s.r.o., and Mr. Frantisek*
*Hrabal*

OF COUNSEL:

STEVEN C. CARLSON
KEVIN PASQUINELLI
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Tel.  (650) 453-5414
Fax. (650) 368-9326
scarlson@kasowitz.com
kpasquinelli@kasowitz.com

**JURY DEMAND**

Plaintiffs CODA DEVELOPMENT s.r.o. and CODA Innovations s.r.o. and Mr. Frantisek

Hrabal hereby demand trial by jury on all claims and issues so triable.

Respectfully submitted,

*/s/ Lindsey E. Sacher*
MITCHELL G. BLAIR (0010892)
TRACY SCOTT JOHNSON (0064579)
ALEXANDER B. REICH (0084869)
LINDSEY E. SACHER (0087883)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
Tel:  216-622-8200
Fax:  216-622-8441
mblair@calfee.com
tjohnson@calfee.com
areich@calfee.com
lsacher@calfee.com

*Attorneys for Plaintiffs, CODA*
*DEVELOPMENT s.r.o., CODA*
*Innovations s.r.o., and Mr. Frantisek*
*Hrabal*

OF COUNSEL:

STEVEN C. CARLSON
KEVIN PASQUINELLI
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Tel.  (650) 453-5414
Fax. (650) 368-9326
scarlson@kasowitz.com
kpasquinelli@kasowitz.com