# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CODA DEVELOPMENT s.r.o., CODA INNOVATIONS s.r.o., et al., | ) ) ) | CASE NO. 5:15-cv-1572 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION** |
| THE GOODYEAR TIRE & RUBBER COMPANY, et al., | ) ) ) | |
| DEFENDANTS. | ) ) | |

Before the Court is the motion to dismiss filed by defendants under Fed. R. Civ. P. 12(b)(6). (Doc. No. 16 ["Mot."].)[1] Plaintiffs filed an opposition brief (Doc. No. 23 ["Opp'n"]) and defendants filed a reply (Doc. No. 25 ["Reply"]). Plaintiffs also filed a motion to strike portions of defendants' reply brief or, in the alternative, to be granted leave to file a surreply. (Doc. No. 26.) Defendants have opposed this motion (Doc. No. 27) and plaintiffs have replied (Doc. No. 28). For the reasons discussed herein, plaintiffs' motion to strike or to file a surreply is denied and defendants' motion to dismiss is granted.

## I. BACKGROUND

On August 9, 2015, plaintiffs Coda Development s.r.o., Coda Innovations s.r.o. (collectively, "Coda"), and Frantisek Hrabal ("Hrabal") (collectively, "plaintiffs") filed their complaint alleging various claims relating to the purported misappropriation by defendants of

---

[1] There are several U.S. and international patents attached as exhibits to the motion. In ruling on a motion to dismiss under Fed. R. Civ. P. 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Further, a court may take judicial notice of published patents and patent applications. *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed. Cir. 1993).

plaintiffs' confidential and proprietary Self-Inflating Tire ("SIT") technology, allegedly invented by Hrabal, Coda's CEO. (Doc. No. 1 ["Compl."] ¶ 1.)

In their complaint, plaintiffs set forth thirteen (13) causes of action for correction of inventorship under 35 U.S.C. § 256 and one cause of action under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  In addition, they assert several state law claims: two for fraudulent non-disclosure, one for misappropriation of trade secrets, two for tortious interference with business relations/prospective economic advantage, one for negligent misrepresentation, and one for unjust enrichment.

All of the claims are based on the same underlying factual allegation that defendant Goodyear Tire & Rubber Company ("Goodyear") misappropriated plaintiffs' SIT technology. (Compl. ¶ 3.) At the urging of General Motors ("GM"), who wanted to incorporate SIT technology in the Chevy Volt™, Goodyear contacted Coda in December 2008[2] to initiate discussions.[3] Defendant Robert Benedict ("Benedict"), a senior member of the Goodyear team charged with development, soon emerged as the leader of Goodyear interactions with Coda regarding SIT. (*Id.* ¶ 5.) Plaintiffs allege that, in the course of discussions between Goodyear and Coda, Goodyear misled plaintiffs into revealing confidential and proprietary information about Coda's SIT technology, and fraudulently induced Coda to enter into a non-disclosure agreement under the pretense of potentially engaging in a "development project" with Coda relating to this technology. (*Id.* ¶ 6.) Goodyear allegedly ignored its obligations under the non-disclosure

---

[2] Paragraph 5 of the complaint actually says this occurred in December 2009, but that year reference seems to be a typographical error, based on other allegations in the complaint. (*See, e.g.,* Compl. ¶¶ 29, 36.)

[3] In April 2008, GM executives had visited Coda's exhibit at the World Congress of the Society of Automotive Engineers ("SAE"), a leading forum for new automotive technologies, and stated that GM "needed" the SIT technology. GM sought, and received, Coda's consent to involve Goodyear, a key supplier of original equipment tires for GM, in bringing a SIT to market. (*Id.* Compl. ¶¶ 4, 5, 21, 22.)

agreement and, after deriving as much knowledge as it could from a series of meetings with Coda and Hrabal, proceeded to patent plaintiffs' SIT technology (as well as additional related technologies founded on the misappropriated SIT technology) without plaintiffs' knowledge or consent, and without informing the Patent Office of the true inventor of the SIT technology. (*Id.*) Plaintiffs allegedly learned of Goodyear's deception in September 2012, from a former Goodyear employee. (*Id.* ¶ 7.)

The challenged Goodyear patents are U.S. Patent Numbers 8,042,586;[4] 8,235,081; 8,322,036; 8,381,784; 8,550,137; 8,573,270; 8,695,661; 8,381,785; 8,113,254; 8,746,306; 8,857,484; and 8,944,126 (collectively, "the Goodyear Patents-In-Suit"). (*Id.* ¶ 8.) Plaintiffs seek the removal of the inventors currently named on the '586 Patent (Benedict and defendant Robert Losey ["Losey"], another Goodyear employee) and the addition of Hrabal's name as the true and sole inventor under 35 U.S.C. § 256. Plaintiffs further seek to add Hrabal as an additional co-inventor of the other Goodyear Patents-in-Suit (the "Jointly Invented Patents") under § 256 because Hrabal allegedly made inventive contributions to those patents. (*Id.*) Finally, plaintiffs seek damages, including exemplary and punitive damages.

## II. DISCUSSION

### A.    Plaintiffs' Motion to Strike

Plaintiffs filed a motion to strike portions of defendants' reply (in particular, Exhibit 19 and any discussion thereof) or, in the alternative, to be granted leave to sur-reply. (Doc. No. 26.) Plaintiffs argue that Exhibit 19, an article entitled "Self-Inflating Tire Technology," which was authored by Hrabal and published in 2008 in a quarterly publication called "Tire Technology

---

[4] For ease of reference, when citing to particular patents, the Court will use only the final three digits of the patent number. For example, U.S. Patent No. 8,042,586 will be referred to as "the '586 Patent."

International," is matter outside the complaint that would convert the motion to one for summary judgment. They further argue that a surreply is required because defendants have misinterpreted the article. Defendants opposed this motion (Doc. No. 27), arguing that the Court can take judicial notice of the article, since it was authored by Hrabel and is publicly available. They also argue that the article was presented only in response to plaintiffs' first-time assertion, made in their opposition brief, that the June 2009 meeting with Goodyear was the first ever display of Coda's functional prototype of its SIT technology, a fact defendants argue is belied by Exhibit 19. Plaintiffs filed a reply (Doc. No. 28), arguing that taking judicial notice of this "extrinsic evidence" is not only impermissible under judicial notice standards, but is beyond the scope of a motion to dismiss. Plaintiffs state that Goodyear's purpose in submitting this 2008 article is to show that "Coda's allegations that it had trade secrets in 2009 are false." (Doc. No. 28 at 1048.)[5]

Plaintiffs argue that the Court may not engage in "[a]n evidence-based inquiry into the merits[.]" (*Id.*) But the Court need not do so in order to take judicial notice of the *fact* that Exhibit 19 was authored by Hrabal and was published in 2008. The Court also need not determine whether any portion of the article is actually true or factually correct in order to determine whether it was a 2008 public disclosure of something Coda now claims was secret when disclosed to Goodyear in 2009. *See e.g., United States ex rel Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 977 n. 2 (W.D. Mich. 2003) (where plaintiffs claimed that statements in a journal article were incorrect and thus unreliable as public disclosures, the court concluded that "such an inaccuracy does not preclude the article from serving as a public disclosure[]").

Plaintiffs' motion to strike is denied.

---

[5] All page number references are to the page identification number generated by the Court's electronic docketing system.

4

**B.      Standard on a Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556 n. 3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## C. Analysis of the Motion to Dismiss

### 1. Federal Claims under 35 U.S.C. § 256 (1st – 13th Causes of Action)

The first thirteen (13) of plaintiffs' causes of action seek to correct patent inventorship under 35 U.S.C. § 256 with respect to the twelve (12) Goodyear Patents-in-Suit. The first and second causes of action both relate to the '586 Patent, whereas the third through thirteenth causes of action each address one of the other eleven (11) patents.[6]

Title 35, Section 256 provides:

(a) **Correction.** – Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director [of the Patent and Trademark Office] may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

(b) **Patent valid if error corrected.** -- The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

"Because issued patents are presumed to correctly name their inventors, the burden of proving nonjoinder of inventors is a heavy one, which must be demonstrated by clear and convincing evidence." *Meng v. Chu*, Nos. 2014-1746, 2015-1390, 2016 WL 1321127, at *4 (Fed.

---

[6] In claims 3-13, plaintiffs seek an order adding Hrabal as a co-inventor on the relevant patents. The first and second causes of action are different, with the first seeking to add Hrabal as an inventor, and the second seeking to remove Benedict and Losey as inventors. If this relief were granted with respect to these two causes of action, the effect would be a substitution of Hrabal (as the sole inventor) for Benedict/Losey as co-inventors. Although defendants did not raise this argument, there is case law suggesting that this is not a form of relief available under § 256. *See McMurray v. Harwood*, 870 F. Supp. 917, 919-20 (E.D. Wis. 1994) (rejecting a request under § 256 for declaratory judgment that plaintiff was the inventor and that the named inventor had committed a fraud on the PTO by applying for the patent; noting that courts discussing the scope of § 256 "uniformly agree that it may not be used to substitute one sole inventor for another"). For that matter, *McMurray* may even call into question the viability of claims 3 through 13 because that court points out that § 256 is intended to resolve inadvertent mistakes with respect to joint ownership. *Id*. at 919 (citing cases, including *Dee v. Aukerman*, 625 F. Supp. 1427, 1429 (S.D. Ohio 1986)). Plaintiffs' claims herein are quite clearly based on allegations of underlying intent to defraud. (*See e.g.,* Opp'n at 629 ("Coda does not allege mere parallel thinking, but rather a wholesale *theft of an invention*.") (emphasis added).)

Cir. Apr. 5, 2016) (quotation marks and citation omitted); *see also Hess v. Adv. Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) ("one claiming that the inventor listed in the patent derived the invention from the claimant's work must show derivation by clear and convincing evidence") (citing *Amax Fly Ash Corp. v. United States*, 514 F.2d 1041, 1047 (Ct. Cl. 1975)).

To prevail on a § 256 claim, "an alleged co-inventor must show that he **contributed** to the **conception** of the claimed invention *and* that his contribution was '**not insignificant in quality**, when that contribution is measured against the dimension of the full invention.'" *Meng*, 2016 WL 1321127, at *4 (emphases added) (citation omitted). Conception is "the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994). It exists "when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented" is formed in the mind of the inventor. *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994) (citing *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985)). "Conception, and consequently inventorship, are questions of law[.]" *Id.*

Given the elements plaintiffs would need to prove to prevail on their § 256 claims, the complaint must, at the very least, set forth sufficient facts, not legal conclusions, in support of each element.

In their motion, defendants argue generally that plaintiffs' allegation of disclosure of their confidential, proprietary information is "vague and conclusory," with no identification of "the allegedly confidential thing that was said about 'the SIT' that forms the basis for the conclusory allegation (¶ 77) that neither Mr. Benedict nor Mr. Losey conceived of any claimed element of the later-filed Goodyear '586 patent." (Motion at 108.) More specifically, as to claims one and two, defendants argue that plaintiffs fail to plead facts supporting Hrabal's conception (or co-conception) of the particular inventions claimed in Goodyear's patents. (*Id.* at 113, 114-15.) For

the remaining eleven (11) claims under § 256, defendants assert that plaintiffs never identify Hrabal's "substantial[] contribut[ion]" to any of the 11 patents. (*Id.* at 116-17.) Nor are there any allegations of collaboration on any of the patents. (*Id.* at 118-19.) Defendants attack the allegations of the complaint as "threadbare."

Plaintiffs argue, in opposition, that the '586 Patent claims "a tire inflated through the compression of an air tube embedded in the tire side wall," (Opp'n at 627-28), and that "Hrabal created precisely this invention." (*Id.*, citing Compl. ¶ 20.) Plaintiffs claim that Hrabal "shared with Goodyear the *trade secret compilation* that rendered this invention operable over the course of two meetings." (*Id.* at 628 (emphasis added), citing Compl. ¶¶ 31, 35-36.) "Coda specifically alleges that the '586 Patent must be corrected because it 'cover[s] assemblies and methods for assembly of peristaltic pumps and other devices used in self-inflating tires,' and specifically 'the technology that Coda disclosed in confidence to Goodyear in the January and June 2009 meetings,' such as 'the placement of the pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior to interior of the tire." (*Id.*, quoting ¶¶ 63, 68.)[7]

---

[7] The paragraphs of the complaint relied upon by plaintiffs to make their argument allege as follows:

    20.    Coda's SIT technology features a peristaltic pump. The pump is a tube, preferably located in the tire sidewall, which is squeezed by normal deformation of the tire where it meets the road. As the tire rolls, the squeeze-point travels along the tube, compressing the air in front of it. If the tire pressure is low, a valve admits the compressed air into the tire, re-inflating it.

    31.    Specifically, Coda shared novel and proprietary trade secret and confidential information relating to the full technological bases and design parameters of the SIT technology, including, but not limited to, the placement of the pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior and interior of tire.

    35.    Having induced Coda to share more of its technology with the carrot of a potential "development project," believing a development partnership was in the offing if, in Goodyear's words, Coda's groundbreaking technology was "feasible," Coda once again

But the '586 Patent actually identifies these very concepts as "prior art." (*See* Mot. at 987-88; Ex. 3 at 213, describing Fig. 5 and Fig. 5A.) Therefore, the concept of putting a tube in a side wall was known before Goodyear filed the '586 Patent. Further, Coda's own 2007 international patent application, which is referenced among the "foreign patent documents" listed on the first page of the '586 Patent, disclosed a tube in a side wall. (Mot. Ex. 2 at 152; Ex 3 at 198.) The Patent Office allowed Goodyear's claims over plaintiffs' own 2007 "SIT Technology" patent application, meaning that the Office found them distinct.

Moreover, Exhibit 19 to defendants' reply brief, which this Court has declined to strike, constitutes a public disclosure of the *concepts* that Coda is claiming as "secret." The article discusses SIT technology, a "system based on highly reliable and proven peristaltic pump principles." (Reply at 1019.) With reference to the *only* specific elements that the complaint identifies (in ¶ 31, and repeated in ¶ 68) as having been disclosed to Goodyear, the Court concludes that the article publicly discloses each of those elements, as follows:

---

agreed to meet with Goodyear and Benedict to share additional confidential and proprietary information relating to the SIT technology.

36.    At this second meeting [in June 2009], Coda reviewed with Goodyear its progress in refining and testing its proprietary designs. Significantly, Coda also allowed Goodyear to examine a functional prototype of the SIT. Benedict requested time in private, with his team, in the room where the prototype was located, during which he photographed the prototype without permission. Some time after leaving the room, he told Coda he had made the photographs.

63.    Claims of one or more of the Goodyear Patents-In-Suit cover assemblies and methods for assembly of peristaltic pumps and other devices used in self-inflating tires.

68.    The Goodyear Patents-in-Suit have claims that include limitations covering the technology that Coda disclosed in confidence to Goodyear in the January and June 2009 meetings. The technology includes, but is not limited to, the placement of the pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior to interior of tire.

| Elements from Compl. ¶¶ 31/68 | Exhibit 19 – Hrabal's Article Published in 2008 |
|---|---|
| **"placement of the pump tube"** | "The peristaltic tubing is located longitudinally between the rim and the tire wall, and follows almost the whole perimeter of the rim. … The peristaltic tubing can be implemented in the tire wall in the following way. As there is already room between a regular tire and rim where the reinforced tire wall is periodically pressed against the rim due to the weight of the vehicle, the tubing can be created as a crevice in the tire sidewall. … It is also possible to create the tubing outside the tire wall as a separate unit, placed between the rim and the tire. … Therefore, SIT can be either part of the tire or a part of the rim. (Ex. 19 at 1019; Figs. 1-4.) |
| **"design of the pressure management system"** | "The pressure management device in its simplest form is a container of compressed air equipped with a membrane. (Ex. 19 at 1020; *see also id.* at 1021 ("The pressure management device can be replaced by a calibrated spring or an electronically managed valve.").) |
| **"efficiency of the leakage compensation system"** | "The above described inflation system would pump up the tire with every wheel revolution, regardless of whether the tire is under-inflated or not. Therefore a managing system has been designed to turn on the inflation if the tire is under-pressured, and turn it off once the desired pressure inside the tire has been reached." (Ex. 19 at 1019; *see also* Figs. 5-6.) |
| **"air passageway/interface between the exterior and interior of [the] tire"** | "The SIT consists of the tubing with a single opening at one end leading into the tire, and two openings at the other end, one of which leads back into the tire and is equipped with the pressure management device; the other intake opening, equipped with the check valve, leads outside the tire." (Ex. 19 at 1020; *see also* Figs. 1-4.) |

10

Finally, plaintiffs repeatedly refer to a "trade secret compilation" but never describe or define this compilation. (*See* Opp'n at 628, 630.) Their allegations are no more than legal conclusions, which this Court need not accept as true. There are no facts to support the assertions in claims one and two that Hrabal is the true, sole inventor, nor are there any facts that he contributed in any way, much less a novel way, to the patents in claims three through thirteen. In fact, as to the latter claims, which require a showing of collaboration, the allegations of the complaint are to the contrary. Plaintiffs allege that they disclosed certain secret information to Goodyear during two meetings in the first half of 2009, that Goodyear then "unilaterally stopped communicating with Coda," and that Coda's repeated attempts to further communicate with Goodyear failes. (Compl. ¶¶ 32, 34, 37, 38.) Plaintiffs also allege that they "believ[ed] a development partnership was in the offing" (*id.* ¶ 35), but they never allege that it actually occurred; in fact, they allege that Goodyear "never had any intention of pursuing a 'development project'" with them. (*Id.* ¶ 42.)

Plaintiffs' complaint fails to allege with sufficiency facts that would make their claims for correction of inventorship plausible within the meaning of *Twombly* and *Iqbal*. Defendants cannot be expected to defend against nebulous claims and allegations such as those contained in the complaint. Plaintiffs argue that courts have denied motions to dismiss on far less specific complaints. In particular, plaintiffs cite *Fuma Int'l, LLC v. Steiger*, No. 1:14CV2154, 2015 WL 4093349 (N.D. Ohio July 2, 2015). But *Fuma* is distinguishable because it did not involve a question of whether the plaintiff was an inventor, but rather, whether three others also named on the pending patents were co-inventors. The complaint alleged that none of the three "contributed to the conception of the idea or the subject matter of any claim" of the pending patents, *id*. at *3

11

(quoting ¶ 39 of the complaint), and the court found this allegation "sufficient to maintain a claim for declaratory judgment against Defendant at this stage of the proceedings." *Id.*

Here, without actually pursuing declaratory judgment, plaintiffs are seeking the equivalent by asking this Court to simply declare Hrabal the inventor of Goodyear's '586 Patent and a co-inventor of the Jointly Invented Patents. They seek this relief under a statute that "indicate[s] congressional interest in resolving *inadvertent* mistakes with respect to joint ownership." *McMurray*, 870 F. Supp. at 919 (quoting *Dee v. Aukerman*, 625 F. Supp. 1427, 1429 (S.D. Ohio 1986)). They want to do this without identifying, in other than very broad, generalized allegations that border on legal conclusions, what it was that they supposedly disclosed to defendants. (*See* Opp'n at 629 ("Coda has identified what was stolen, when, by whom, and into which patents the stolen technology was incorporated, providing Goodyear with a more than sufficient reminder of its theft.").) Plaintiffs do not meet the requisite pleading standards.

To the extent defendants seek dismissal of the first thirteen causes of action in the complaint, all brought under 35 U.S.C. § 256, the motion is granted.

### 2.   Federal Lanham Act Claim (20th Cause of Action)

In their twentieth cause of action, plaintiffs allege that "Goodyear misrepresented the ownership of the proprietary SIT technology by filing U.S. 12/643,243, now [the '586 Patent], and the Jointly Invented Applications." (Compl. ¶ 178.) As a result, "Goodyear has represented to the marketplace in a false and misleading way that it created and owns the intellectual property associated with the proprietary SIT technology." (*Id.* ¶ 179.) These actions "have a tendency to deceive and create confusion" that "has influenced and is likely to influence future investment or purchasing decisions." (*Id.* ¶¶ 180, 181.) Coda alleges a "loss of clearly

12

understood title to its intellectual property[.]" (*Id.* ¶ 183.) Plaintiffs claim that these actions violate 15 U.S.C. § 1125(a)(1)(A).

> The Lanham Act imposes liability on
>
> (a) (1) Any person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125.

Defendants argue that plaintiffs' Lanham Act claim should be dismissed because alleged misrepresentations about the ownership of intangible intellectual property rights — as opposed to tangible goods — are outside the scope of the Act. (Mot. at 119-20, citing *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003).)

Plaintiffs argue in opposition that *Dastar* is inapplicable because the Supreme Court held that, since Dastar was the producer of the tangible copies of the videos, the Lanham Act did not apply, even if Dastar did not own the content. (Opp'n at 648.)

The Court concludes that defendants have the better argument on this claim. Goodyear manufactures and sells tires, which are tangible goods. (Compl. ¶ 15.) Plaintiffs, on the other hand, are only involved in research and development. (*Id.* ¶¶ 12, 13.) Nothing in the complaint suggests that plaintiffs also sell tires "in commerce." The dispute here is not over whether consumers are confused about whether Goodyear is selling Coda tires or Coda is selling Goodyear tires. The dispute is over who owns the "idea" behind the Goodyear tires, that is, the SIT technology. Put another way, the dispute is over the identity of the inventor. This is not the

sort of dispute covered by the Lanham Act. To that extent, *Dastar* does apply because it held that the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37; *see also Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 589 (6th Cir. 2015) (Lanham Act does not guard against theft of a product idea for purposes of manufacturing a rival facsimile product).

Defendants are entitled to dismissal of the twentieth cause of action because it fails to state a Lanham Act claim. To that extent, their motion to dismiss is granted.

### 3.    State Law Fraud Claims (14th and 15th Causes of Action)

In the fourteenth cause of action, plaintiffs allege fraudulent nondisclosure regarding the '586 Patent. In the fifteenth cause of action, plaintiffs allege the same regarding the Jointly Invented Patents. With respect to both, plaintiffs generally allege that Goodyear and its employees, including Benedict, "did not disclose and affirmatively hid numerous material facts[.]" (Compl. ¶¶ 124, 137.) They further allege that they entered into a non-disclosure agreement that created "a relationship of special confidence and trust" between the parties. (*Id.* ¶ 125, 138.) Plaintiffs identify two kinds of allegedly fraudulent statements or omissions by defendants: (1) not informing plaintiffs that Goodyear was filing patent applications, and (2) making fraudulent statements to the Patent Office. (*Id.* ¶¶ 124 (a)-(e), 137 (f)-(j).)[8]

"An action for fraudulent nondisclosure requires the following elements: (1) a representation or, where there is a duty to disclose, concealment of fact; (2) which is material to

---

[8] The allegations regarding misrepresentations made to the United States Patent and Trademark Office ("USPTO") in the course of obtaining the patents are somewhat unusual. More typically, these types of allegations are seen supporting a claim of invalidity of a patent, due to its procurement by fraud on the USPTO. But plaintiffs make no such invalidity claims here. Their goal seems to preserve the validity of all the patents, but to change the identity of the inventors.

the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance." *Spinelli v. Bair*, No. 1999CA00399, 2000 WL 34335853, at *3 (Ohio Ct. App. July 3, 2000) (citing *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984)).

In their motion to dismiss, defendants argue (1) that plaintiffs fail to allege facts supporting a duty owed by Goodyear, fail to allege the fraudulent acts with particularity, improperly rely upon statements to the Patent Office, and allege only speculative harm; and (2) that plaintiffs' claims of fraud are time-barred. (Mot. at 122, 125.)

In opposition to defendants' first argument, plaintiffs argue that they have sufficiently asserted state law claims of "fraud by concealment." (Opp'n at 635.)[9] They assert that a duty to disclose "'may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence.'" (*Id.* at 637, quoting *Mancini v. Gorick*, 536 N.E.2d 8, 10 (Ohio Ct. App. 1987).) They further argue that, due to the non-disclosure agreement between the parties, Goodyear had a duty to disclose to plaintiffs that it had filed a patent application encompassing the SIT technology belonging to plaintiffs. (*Id.*) With respect to alleged fraudulent statements made to the Patent Office, plaintiffs claim that Goodyear's failure to credit Hrabal with inventorship prevented them from discovering Goodyear's misappropriation sooner. (*Id.* at 638.)

---

[9] In their reply brief, defendants assert that "fraudulent concealment" is a new theory, different from the "fraudulent non-disclosure" in the complaint. (Reply at 996.) The Court will not address this argument because, under Ohio law, the elements of the four varieties of fraud (inducement, misrepresentation, concealment, and non-disclosure) "are essentially the same[.]" *Gentile v. Ristas*, 828 N.E.2d 1021, 1033-34 (Ohio 2005).

Plaintiffs interpret too broadly the "duty to disclose" element of a fraudulent non-disclosure or a fraudulent concealment claim.

> The duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. The term "fiduciary relationship" has been defined as a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.

*Steinfels v. Ohio Dep't of Commerce*, 719 N.E.2d 76, 82 (Ohio Ct. App. 1998) (internal citations omitted). Here, as in *Steinfels*, there was "an arm's-length transaction in which [plaintiffs] actively participated." *Id.* Although plaintiffs rely on the non-disclosure agreement as the basis for a "special trust" that they had in defendants, "[t]he assertion that one party reposed a 'special trust' in the other party 'is insufficient as a matter of law without the allegation that both parties understood that this fiduciary relationship existed.'" *Nichols v. Chicago Title Ins. Co.*, 669 N.E.2d 323, 333 (Ohio Ct. App. 1995) (quoting *Lee v. Cuyahoga Cnty. Ct. of Common Pleas*, 602 N.E.2d 761, 763 (Ohio Ct. App. 1991)); *see also Mancini*, 536 N.E.2d at 10 (stating that a duty to disclose "may arise in any situation where one party imposes confidence in the other *because of that person's position*, and the other party knows of this confidence") (internal quotations omitted) (emphasis added). Here, defendants held no special position vis-a-vis plaintiffs. These parties simply entered into an arm's length business negotiation, the type of transaction where "each party is ordinarily advancing his or her own interest, and not undertaking some special duty for the benefit of the other." *Nelson v. Am. Power & Light*, No. 2:08-cv-549, 2010 WL 3219498, at *10 (S.D. Ohio Aug. 12, 2010) ("While a strict fiduciary relationship is not required in order to trigger the duty to speak, that duty does not arise in the course of an ordinary arms-length business transaction."). Each side here had equal status (i.e.,

16

neither had a "position of superiority or influence"), and each side had the responsibility to judge the business trustworthiness of the other when entering into their business dealings, including the sharing of any proprietary information.

Failure to identify any duty to disclose on the part of defendants is fatal to plaintiffs' fourteenth and fifteenth causes of action and entitles defendants to dismissal of those claims. But, even if these fraud claims were to survive on the elements, they would nonetheless be time-barred, as defendants assert in their second argument.[10] Plaintiffs, although acknowledging the four-year statute of limitations,[11] counter defendants' argument that the claims are time-barred by asserting the "discovery rule," which "'generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury.'" (Opp'n at 643, quoting *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989).) Plaintiffs claim they could not have reasonably discovered a basis for these claims until August 19, 2011, when Goodyear's "supposed invention of the self-inflating tire gained the attention of the international press." (*Id.* at 644, citing Compl. ¶ 46.) They further assert that it was not until September 2012 that a former Goodyear employee advised them that "Goodyear's self-inflating tire was nothing more than a copy of Coda's invention[.]" (*Id.*)

"[U]nder certain circumstances Ohio law recognizes that the concealment of a cause of action can toll the statute of limitations." *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002) (citation omitted). But "courts have generally held that there must be something of

---

[10] "[T]he prevailing rule is that a complaint showing on its face that relief is barred by an affirmative defense is properly subject to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).

[11] *See* Ohio Rev. Code § 2305.09.

an affirmative character designed to prevent, and which does prevent, discovery of the cause of action; or some actual artifice to prevent knowledge of the fact; or some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry." *Id.* (citation omitted). "More recent case law in Ohio has reaffirmed the legal proposition that the statute of limitations may be tolled where there is some conduct of the adverse party, such as a misrepresentation, which excludes suspicion and prevents inquiry." *Id.* (citation omitted).

Plaintiffs argue that they had no way to learn of Goodyear's invention (and thus the basis for plaintiffs' potential claims) until they first read of it in the "international press." But this is not so. Taking as true the detailed allegations in their own complaint, plaintiffs were active participants and well-versed in the field of SIT technology, having themselves filed numerous patent applications both in the U.S. and globally. (*See* Doc. Nos. 16-1 to 16-2, 16-15 to 16-18.) They do not, and cannot, allege that information about patent applications and/or issued patents would not have been readily *available* to them. In fact, their own patent applications cite numerous other patents in this area of technology. (*Id.*) Furthermore, they themselves allege that Goodyear's filing of the relevant patent applications "represented to the marketplace" (which would include plaintiffs) that Goodyear had created the technology. (Compl. ¶ 179.)

Even more importantly, plaintiffs also allege that, after an initial meeting on January 15, 2009 with "Benedict and other key individuals from the Goodyear team" when Goodyear was shown "detailed information about Coda's inventions and trade secrets[]" (Compl. ¶ 29), Goodyear suggested another meeting. Plaintiffs claim they believed Goodyear "was truly exploring a cooperative business relationship with Coda to further develop and market SIT[.]" (*Id.* ¶ 30.) Therefore, they agreed to meet again on June 15, 2009. "At this second meeting, Coda reviewed with Goodyear its progress in refining and testing its proprietary designs. Significantly,

18

Coda also allowed Goodyear to examine a functional prototype of the SIT. Benedict requested time in private, with his team, in the room where the prototype was located, during which he photographed the prototype without permission. Some time after leaving the room, he [Benedict] told Coda he had made the photographs." (*Id.* ¶ 36.)

Plaintiffs allege that, after the June 2009 meeting, Goodyear inexplicably "unilaterally stopped communicating with Coda[,]" and, when plaintiffs tried to re-engage the discussion in November 2009, they were told by Benedict that "[a] meeting would be premature at this point." (*Id.* ¶ 38.) Then, in December 2009, Hrabal was "independently contacted" by "a Goodyear employee on Benedict's SIT team … [who] had not been involved in the June 2009 summit meeting[.]" (*Id.* ¶ 39.) This employee advised that he was "inquir[ing] about the status of Coda's SIT technology *in preparation for an internal Goodyear meeting on the subject*." (*Id.*, emphasis added.) Hrabal informed this Goodyear employee that Goodyear "had surprisingly gone silent *despite Goodyear's apparent interest in the SIT technology*." (*Id.*, emphasis added.) After Goodyear's "brainstorm session" the same employee wrote to Hrabal, indicating that when, during the brainstorming session, he had noted the match between Goodyear's ideas and the SIT technology, "his [Benedict's] response to this question was oddly vague." (*Id.* ¶ 40.)

This factual scenario should have been sufficient notice to plaintiffs that something *might have* been amiss, that is, sufficient notice to trigger a duty to investigate on plaintiffs' part. Had they done so, they would have discovered patent application number 12/643,243 (now the '586 Patent)—titled "Self-Inflating Tire Assembly" and claiming Robert Losey as the inventor. This application was filed in December 2009 and was first published in June 2011. (*See* Doc. No. 16-3 at 198.) Under the four-year statute of limitations for fraud, plaintiffs' claims in the fourteenth and fifteenth causes of action are time-barred because they were not filed until August 2015, at

least two months too late. Although, admittedly, the simple fact of the parties' business relationship would not have put plaintiffs under a continuous duty to investigate Goodyear's behavior, under the "inquiry notice doctrine" a person's duty to investigate is triggered when the person "becomes aware of suspicious activity that may indicate infringement." *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) (citing *Warren Freedenfeld Assoc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008)) (both cases involving copyright infringement). Here, plaintiffs' own allegations suggest sufficient "suspicious activity" to have triggered a duty of inquiry on plaintiffs' part.[12]

Plaintiffs' fraud claims in the fourteenth and fifteenth causes of action are barred due to both failure to state a claim and untimeliness. Therefore, defendants are entitled to dismissal of those claims.

### 4.    State Law Misappropriation of Trade Secrets Claim (16th Cause of Action)

Defendants argue that plaintiffs fail to allege any trade secret within the meaning of Ohio Rev. Code § 1333.61(D), which provides that "trade secret" means:

> …information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation,

---

[12] In *MV Circuit Design, Inc. v. Omnicell, Inc.*, No. 1:14CV2028, 2015 WL 1321743, at *10 (N.D. Ohio Mar. 24, 2015) (Polster, J.), a branch of this court agreed with another court that "mere publication of a patent or patent application is insufficient to put a claimant on notice of his claims relating to the patent." *Compare Gen. Elec. Co. v. Wilkins*, No. 1:10-cv-00674-OWW-JLT, 2011 WL 3163348, at *5 (E.D. Cal. July 26, 2011) (same) *with Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 425 (E.D. Va. 2011) ("[P]ublication of the patent application for the #146 Patent on October 16, 2008[ ] was sufficient to place [plaintiff] on constructive notice and trigger the statute of limitations on [its] fraud claim."). *MV Circuit* is distinguishable because, there, the parties had a six-year relationship during which they *both* worked *together* on various components of the patented technology, ending with one of them filing a patent application, unbeknownst to the other, without naming both sides as inventors. Here, the parties' relationship, if it can even be called that, was quite short and amounted, by plaintiffs' own allegations, to a one-way sharing of confidential ideas from plaintiffs to defendants. (*See* Compl. ¶ 26, asserting that Goodyear never shared, or even intended to share, its own confidential information.) In *MV Circuit*, the mutual long-term working relationship would not have caused any suspicion or triggered a duty to inquire or to search out possible patent applications. But here, based on their own allegations, plaintiffs had sufficient reason to be suspicious, due to the sudden non-communication and disinterest of Goodyear followed by the conversations with a Goodyear employee working on the SIT technology. This triggered a duty to take steps to protect themselves, which plaintiffs failed to do.

20

program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

      (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

      (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Defendants further argue that plaintiffs' alleged "trade secret" was not confidential by the time it was disclosed to defendants since the technology had been published in patents and patent applications, and had been exhibited at public trade shows. Finally, raising the same argument as for claims 14 and 15, defendants assert that this state law trade secret claim is time-barred because it was not brought within the requisite four-year statute of limitations.

In opposition, plaintiffs first assert, pointing to specific paragraphs, that their complaint is adequate to state a claim. They further assert that, prior to their conversations with Goodyear, they had never publicly disclosed the underlying details of their confidential technology. Plaintiffs do not address defendants' argument based on the statute of limitations.

The Court need not decide whether the complaint states a claim of trade secret misappropriation under Ohio law because, for the same reasons discussed above in the section on fraud claims, any such claim is time-barred. Defendants are entitled to dismissal of the trade secret misappropriation claim in the sixteenth cause of action.

    **5.**    **State Law Tortious Interference Claims (17th and 18th Causes of Action)**

In the seventeenth and eighteenth causes of action, plaintiffs allege that Goodyear, with "actual malice and/or a wanton and willful disregard of the plaintiffs' rights[,]" (Compl. ¶¶ 159, 165), tortiously interfered with Coda's "prospective business relationships with numerous other

national tire manufacturers and other interested parties[,]" with whom there was "a reasonable probability" that Coda would have entered into business relationships. (*Id.* ¶ 156.) Plaintiffs further allege that Goodyear tortiously interfered with "other prospective investors" who might have "help[ed] further research and develop Plaintiffs' SIT technology." (*Id.* ¶ 162.) Plaintiffs allege that, as a result of Goodyear's improper interference, these other parties "have refused to enter into contracts and business relationships with Coda, and/or to license or invest in Coda's confidential and proprietary SIT technology." (*Id.* ¶¶ 158, 164.) They allege that at least one tire manufacturer "specifically commented that Goodyear's self-inflating tire project was a cause of its refusal to cooperate with Coda." (*Id.*)

Under Ohio law, "the tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another." *Harris v. Bornhorst*, 513 F.3d 503, 523 (6th Cir. 2008) (citing *McConnell v. Hunt Sports Enters.*, 725 N.E.2d 1193, 1216 (Ohio Ct. App. 1999)).

> The elements of tortious interference with a business relationship are: (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom.
>
> Tortious interference with a business relationship includes intentional interference with prospective contractual relations not yet reduced to a contract.

88 Ohio Jur. 3d Torts § 16.

Defendants assert that plaintiffs have not alleged any specific, intentional interference by Goodyear that caused a breach or termination of any existing business or investment relationship, or the loss of any prospective business or investment relationship.

In opposition, plaintiffs point to allegations in the complaint, including those quoted above, as sufficiently alleging their tortious interference claims. Specifically, plaintiffs point to two paragraphs in the complaint that identify alleged lost opportunities:

> 49.　At the same time, Coda began encountering difficulties arising from Goodyear's patenting of its technology. For example, Plaintiffs were attempting to secure other potential business partners for its SIT technology, as well as financial support for additional research and development. Plaintiffs approached numerous international tire manufacturers, but the substantial publicity Goodyear had begun to generate after misappropriating Plaintiffs' SIT technology made prospective partners wary. Indeed, one such customer specifically named Goodyear's self-inflating tire project as to why it would not cooperate with Coda.

> 50.　Further, in 2012, Coda submitted a bid to Eurostars, a European Union program that provided funding to market-oriented research and development, and innovation projects for small and medium size businesses. Coda's bid proposal for Eurostars project E! 7759 entitled "Self Inflating Tire for Commercial Vehicles" stressed Coda's proprietary SIT technology. On January 17, 2013 Eurostars rejected Coda's bid for funding. The rejection was based in part on the issuance of U.S. patent 8,381,785 [*see* Doc. No. 16-8], improperly patented by Goodyear, which is based on Mr. Hrabal's technology.

(Compl., docket citation added.)

Defendants properly point out that, even taking these allegations as true, plaintiffs have not alleged that either of these outcomes was caused by any action or statement of Goodyear to either of these two third-party entities, the first of whom is not even identified. Although the entities might have been influenced by facts they knew of Goodyear's activities in the marketplace, that does not translate into direct interference by Goodyear. *See Dabrowski v. City of Twinsburg*, No. 5:14CV569, 2014 WL 5824786, at *2-3 (N.D. Ohio Nov. 10, 2014) (tortious interference with contract was not established without "actual procurement of a contract breach" that can be "link[ed] … to the named defendants"); *see also Diamond Wine & Spirits, Inc. v.*

23

*Dayton Heidelberg Distrib. Co., Inc.*, 774 N.E.2d 775, 782 (Ohio Ct. App. 2002) ("interference must be intentional because Ohio does not recognize negligent interference with a business relationship").

The Court concludes that plaintiffs' complaint does not withstand the motion to dismiss because it fails to sufficiently allege facts tying any intentional act by Goodyear to either of the allegedly missed business opportunities cited by plaintiffs.

Furthermore, as properly pointed out by defendants, the claims are also barred by the statute of limitations. Although plaintiffs suggest that the discovery rule and Goodyear's alleged fraudulent concealment operate to toll the statute of limitations (*see* Opp'n at 648 n. 11), since Ohio Rev. Code § 2305.09 "does not expressly provide for application of the discovery rule for tortious interference claims, the discovery rule is inapplicable." *Porter v. Probst*, 18 N.E.3d 824, 830 (Ohio Ct. App. 2014) (citing *Investors REIT One*, 546 N.E.2d at 211).

Defendants' motion to dismiss the seventeenth and eighteenth causes of action is granted.

### 6.    State Law Negligent Misrepresentation Claim (19th Cause of Action)

In the nineteenth cause of action, plaintiffs allege that Goodyear and Benedict made "numerous false and material misrepresentations to [plaintiffs]" that were "material to Plaintiffs' decision to enter into the Goodyear [non-disclosure agreement] and to embark on what it believed was a 'joint development' effort with Goodyear and to provide [defendants] with restricted access to Plaintiffs' confidential and proprietary SIT technology, subject to that confidential relationship." (Compl. ¶¶ 168, 169.) These misrepresentations include, but are not limited, to:

> a.    Falsely informing Plaintiffs that Goodyear desired to explore commencing a "development project" with CODA in the form of a long-term relationship centered on development and exploitation of Plaintiffs' SIT

24

technology, and concealing its true intention to misappropriate and patent the SIT technology;

b.      Making misrepresentations to the United States Patent and Trademark Office that Losey and Benedict were the inventors of the SIT technology, and that Goodyear was the rightful owner of the patents-in-suit; and

b.      The public misrepresentations that Goodyear, Mr. Losey and Mr. Benedict were the inventors and rightful owners of the SIT technology and the patents-in-suit.

(Compl. ¶ 168, second "b" in original.)

The elements of negligent misrepresentation are as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Delman v. City of Cleveland Hts.*, 534 N.E.2d 835, 838 (Ohio 1989) (quoting 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1)) (emphasis added in original) (additional citations omitted).

Defendants argue that plaintiffs' complaint fails to allege that defendants are in the business of supplying information. Further, they argue that the claim is not available to redress mere broken promises. Finally, they argue that any such claim is time-barred.

Plaintiffs assert in opposition that "a growing chorus of recent decisions have rejected any [special relationship] requirement." (Opp'n at 641, citing cases.) Plaintiffs also argue for application of the discovery rule with respect to the statute of limitations.

The Court concludes that defendants have the better view as to this claim, the gravamen of which is that defendants either lied to plaintiffs or broke a promise to them. "A claim for negligent misrepresentation is based on false information, not a broken promise." *R.J. Wildner*

*Contracting Co., Inc. v. Ohio Turnpike Comm'n*, 913 F. Supp. 1031, 1041 (N.D. Ohio 1996) (citing *Delman*, 534 N.E.2d at 838). Further, although, strictly speaking, no "special relationship" is required, the tort is aimed at those "who are in the business of supplying information for the guidance of others[.]" That "typically include[s] attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks." *Nichols v. Ryder Truck Rental, Inc.*, No. 65376, 1994 WL 285000, at *4 (Ohio Ct. App. June 23, 1994) (citing *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgmt., Inc.*, 622 N.E.2d 1093 (Ohio Ct. App. 1993)). Further, as asserted by defendants, and as already explained above, this tort claim is time-barred.

Defendants are entitled to dismissal of the nineteenth cause of action. To that extent, their motion to dismiss is granted.

### 7.     State Law Unjust Enrichment Claim (21st Cause of Action)

In their twenty-first cause of action, plaintiffs allege that they

> conferred benefits to Goodyear by sharing novel and proprietary trade secret and confidential information relating to the full technological bases and design parameters of the SIT technology, including, but not limited to, the placement of the pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior and interior of tire. Plaintiffs spent significant time and effort in the development, testing, and implementing of these trade secrets and confidential information. Further, Plaintiffs spent significant time and effort discussing these concepts with Goodyear.

(Compl. ¶ 185.) Plaintiffs assert that "Goodyear knew that it was benefitting from Plaintiff's [sic] trade secrets, confidential information, efforts, and time" and that "[r]etention of these benefits by Goodyear under the circumstances is unjust without payment to Plaintiffs." (*Id.* ¶¶ 186, 187.)

Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 14 N.E.2d 923, 927 (Ohio 1938). The

statute of limitations for an unjust enrichment claim in Ohio is six years, and the discovery rule does not apply. Ohio Rev. Code § 2305.07; *Med. Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 394 n. 6 (6th Cir. 2008) (citing *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 665 N.E.2d 718, 722-23 (Ohio Ct. App. 1995) (additional citations omitted)).

Defendants argue that, since the complaint was filed on August 9, 2015, any benefit conferred upon them by plaintiffs must not have occurred before August 9, 2009. Plaintiffs allege that their final disclosure of SIT technology to defendants occurred on June 15, 2009. (Compl. ¶¶ 34-36.)[13]

In opposition, plaintiffs assert that their unjust enrichment claim did not accrue "until the point at which the defendant's retention becomes unjust," and the tort continues for so long as the plaintiff continues to confer a benefit that the defendant retains unjustly. (Opp'n at 650, quoting *Desai v. Franklin*, 895 N.E.2d 875, 884 (Ohio Ct. App. 2008) (further citations omitted).) Plaintiffs argue that Goodyear's retention of Coda's technology did not become unjust until they violated the terms of the non-disclosure agreement and patented the technology in December 2009.

In reply, defendants point out that plaintiffs allege that "Goodyear did not ever intend to honor" the non-disclosure agreement (*Id.* ¶ 42). Therefore, according to plaintiffs, Goodyear's unjust enrichment commenced at the very beginning of the parties' conversations.

Defendants have the better view. Not only do plaintiffs allege that defendants *entered into* the negotiations with an intent to misappropriate plaintiffs' confidential information, they further allege that "after deriving as much knowledge as it could from a series of meetings with

---

[13] Defendants also assert that the claim is preempted by Ohio Rev. Code § 1333.67(A), the Ohio Uniform Trade Secrets Act ("OUTSA"). Because it is time-barred, the Court need not address this argument.

Coda and Mr. Hrabal – [Goodyear] proceeded to patent Plaintiffs' SIT technology[.]" (Compl. ¶ 6.) That "series of meetings" ended in June 2009. By then, according to plaintiffs' own allegations, Goodyear had derived all it could from plaintiffs.

Because this twenty-first cause of action is time-barred, defendants are entitled to its dismissal. To that extent the motion to dismiss is granted.

## III. CONCLUSION

For the reasons set forth herein, as well as those set forth in defendants' supporting memoranda, plaintiffs' motion to strike (Doc. No. 26) is denied, and defendants' motion to dismiss (Doc. No. 16) is granted. This case is dismissed.[14]

**IT IS SO ORDERED**.

Dated: September 29, 2016

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[14] Ordinarily, when a motion to dismiss highlights insufficiencies in a complaint, "the appropriate method for adding new factual allegations is to request leave to amend the complaint in conjunction with responding to the motion to dismiss." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 521 (6th Cir. 2008). But here, plaintiffs have not sought leave to amend. Rather, they have steadfastly insisted that "Goodyear knows what it took, and knows full well how Coda's secrets were incorporated into its patents[,]" (Opp'n at 621), and Coda claims that "even if Goodyear has forgotten what information it stole, Coda's [187-paragraph] complaint contains sixty-eight specific factual allegations describing at length interactions between Coda and Goodyear and the specific technology Goodyear stole, *more than sufficient to put Goodyear on notice*." (*Id.*, emphasis added.) But length does not necessarily ensure sufficiency. Having reviewed the complaint and plaintiffs' opposition to defendants' motion, the Court sees no reason to *sua sponte* grant an opportunity to amend when plaintiffs have demonstrated that they have no further factual allegations to supply.

28