IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CODA DEVELOPMENT s.r.o., CODA INNOVATIONS s.r.o., and FRANTISEK HRABAL,** | Case No. 5:15-CV-01572-SL |
| Plaintiffs, | |
| v. | JUDGE SARA LIOI |
| **THE GOODYEAR TIRE & RUBBER COMPANY, ROBERT BENEDICT, and ROBERT LOSEY,** | |
| Defendants. | |

**DEFENDANTS' ANSWER TO FIRST AMENDED
COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendants The Goodyear Tire & Rubber Company ("Goodyear"), Robert Benedict, and Robert Losey (collectively, "Defendants"), by and through their undersigned counsel, answer the amended complaint of Plaintiffs CODA DEVELOPMENT s.r.o., CODA Innovations s.r.o. ("Coda"), and Frantisek Hrabal (collectively, "Plaintiffs"), filed on April 15, 2019 ("Amended Complaint").  Defendants deny each and every allegation of the Amended Complaint not expressly admitted or otherwise responded to herein.

## RESPONSE TO "NATURE OF THE ACTION"

1.     Denied.

2.     Defendants admit that employees of Goodyear met with representative(s) of Coda in January 2009 and June 2009 to discuss Coda's patents and/or patent applications and its desire to commercialize the technology described in those patents and/or patent applications. Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 2, and therefore deny them.

3.     Defendants admit that at two 2009 meetings, Coda discussed its patents and/or patent applications and Coda's desire to partner with a tire company (such as Goodyear) in commercializing its patents and/or patent applications.  Defendants further admit that Coda and Goodyear executed a non-disclosure agreement.  Defendants deny that Coda disclosed any trade secrets to Goodyear.  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 3.

4.     Defendants admit that a meeting occurred in January 2009 and that Mr. Hrabal told Goodyear participants that he had a prototype tire.  Defendants admit that Plaintiffs' Exhibit 3 purports to be an email from Christian Spieker to Mr. Topoli that states "we think about a technical readiness evaluation at your premises in Prague, in order to physically judge the

concept feasibility on-site and to decide whether we will start a development project or not." Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore deny them.

5. Defendants admit that a meeting occurred in June 2009 and that Mr. Hrabal showed a non-secret prototype tire at the meeting. Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 5, and therefore deny them.

6. Defendants admit that the picture in Paragraph 6 of the Amended Complaint appears similar to Coda's non-secret prototype tire that was shown in the June 2009 meeting and shown on Coda's website and at a trade show prior to the June 2009 meeting. Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 6, and therefore deny them.

7. Defendants admit that the non-secret prototype tire used a tube as a peristaltic pump to maintain air pressure. Except as expressly admitted, Defendants deny each and every allegation of Paragraph 7.

8. Admitted.

9. Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 9, and therefore deny them.

10. Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 10, and therefore deny them.

11. Defendants admit that Mr. Hrabal's non-secret prototype tire did not contain a tube in the tire itself. Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 11, and therefore deny them.

12.    Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants further admit that Mr. Hrabal appeared to lack substantial experience in tire research and development or prototyping. Defendants deny that Mr. Hrabal disclosed any trade secrets to them, and deny that Coda or Mr. Hrabal told Defendants that a pump tube chamber could be put into the bending region of a tire sidewall.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 12.

13.    Defendants admit that the location on the non-secret prototype tire where the sidewall extension rests is visible, and the non-secret prototype speaks for itself.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them, and deny that Coda or Mr. Hrabal told Defendants that a pump tube chamber could be put into the bending region of a tire sidewall. Except as expressly admitted, Defendants deny each and every allegation of Paragraph 13.

14.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 14, and therefore deny them.

15.    Denied.

16.    Defendants admit that Goodyear did not move forward with a joint development project with Coda.  Defendants further admit that on December 21, 2009, Goodyear filed two patent applications related to self-inflating tires, including United States Application Serial Number 12/643,243.  Defendants deny that those patent applications disclose or claim any trade

secrets of Plaintiffs.  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 16.

17.     Defendants admit that Goodyear has applied for, and obtained, patents relating to various aspects of tire technology, including self-inflating tires.  Defendants deny that any of their patents disclose or claim any trade secrets of Plaintiffs.  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 17.

## RESPONSE TO "THE PARTIES"

18.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 18, and therefore deny them.

19.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 19, and therefore deny them.

20.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 20, and therefore deny them.

21.     Admitted.

22.     Defendants admit that Robert Benedict is a resident of Ohio, and can be served with process.  Defendants further admit that Mr. Benedict was an employee of Goodyear from 1984 to 2015, and that, for some of that time period, Mr. Benedict's responsibilities at Goodyear involved research and development relating to, among other things, air pressure maintenance in tires.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 22.

23.     Defendants admit that Robert Allen Losey is a resident of Ohio and can be served with process.  Defendants further admit that Mr. Losey has been an employee of Goodyear from

- 4 -

June 1979 to the present.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 23.

### RESPONSES TO "JURISDICTION AND VENUE"

24.     Defendants admit that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 as to Plaintiffs' Causes of Action 1-3.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 24.

25.     Defendants admit that this Court has personal jurisdiction over Defendants. Defendants admit that Goodyear is a corporation organized under the laws of the state of Ohio that maintains its principal place of business within this District.  Defendants admit that Mr. Benedict and Mr. Losey reside within this District.  Goodyear further admits that it transacts business in the State of Ohio within the meaning of Ohio Revised Code 2307.382(A)(1).  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 25.

26.     Defendants deny that a substantial part of the alleged events or omissions purportedly giving rise to the causes of action asserted herein occurred in this district.

### RESPONSES TO "FACTUAL BACKGROUND"

27.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 27, and therefore deny them.

28.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 28, and therefore deny them.

29.     Defendants admit that PCT Application No. PCT/CZ02/00064 says on its face that it was filed on December 5, 2002.  Defendants admit that United States Patent No. 7,117,731 ("the '731 Patent") says on its face that it issued from United States Patent Application No.

10/498,145 on October 10, 2006.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 29, and therefore deny them.

30.    Admitted.

31.    Defendants state that the '731 patent speaks for itself and deny that Paragraph 31 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '731 patent.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 31, and therefore deny them.

32.    Defendants state that the '731 patent speaks for itself and deny that Paragraph 32 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '731 patent.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 32, and therefore deny them.

33.    Defendants state that the '731 patent speaks for itself and deny that Paragraph 33 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '731 patent.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 33, and therefore deny them.

34.    Defendants state that the '731 patent speaks for itself and deny that Paragraph 34 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '731 patent.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 34, and therefore deny them.

35.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 35, and therefore deny them.

36.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 36, and therefore deny them.

37.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 37, and therefore deny them.

38.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 38, and therefore deny them.

39.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 39, and therefore deny them.

40.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 40, and therefore deny them.

41.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 41, and therefore deny them.

42.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 42, and therefore deny them.

43.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 43, and therefore deny them.

44.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 44, and therefore deny them.

45.    Defendants admit that Czech Patent Application No. PV 2006-335 says on its face that it was filed on or about May 23, 2006.  Defendants admit that U.S. Patent Application No. 12/302,027 ("the '027 Application") claims priority to Czech Patent Application No. PV 2006-335.  Defendants admit that the '027 Application was abandoned.  Defendants admit that U.S. Patent Application 13/399,038 claims the benefit of the '027 Application.  Defendants further admit that Exhibit 2 to the Amended Complaint purports to be a copy of the '027 Application.

Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 45, and therefore deny them.

46.     Admitted.

47.     Admitted.

48.     Defendants state that the '027 Application speaks for itself and deny that Paragraph 48 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '027 Application.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 48, and therefore deny them.

49.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 49, and therefore deny them.

50.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 50, and therefore deny them.

51.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 51, and therefore deny them.

52.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 52, and therefore deny them.

53.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 53, and therefore deny them.

54.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 54, and therefore deny them.

55.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 55, and therefore deny them.

56.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 56, and therefore deny them.

57.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 57, and therefore deny them.

58.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 58, and therefore deny them.

59.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 59, and therefore deny them.

60.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 60, and therefore deny them.

61.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 61, and therefore deny them.

62.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 62, and therefore deny them.

63.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 63, and therefore deny them.

64.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 64, and therefore deny them.

65.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 65, and therefore deny them.

66.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 66, and therefore deny them.

67.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 67, and therefore deny them.

68.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 68, and therefore deny them.

69.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 69, and therefore deny them.

70.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 70, and therefore deny them.

71.     Defendants admit that U.S. Patent Application No. 12/918,690 ("the '690 Application") on its face claims foreign priority to Czech Patent Application Nos. PV 2008-143 and PV 2008-97, claiming priority dates of March 7, 2008 and February 21, 2008, respectively. Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 71, and therefore deny them.

72.     Admitted.

73.     Defendants admit that tire development has occurred since at least the early twentieth century and that patents have been granted relating to tires.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 73, and therefore deny them.

74.     Defendants admit that Goodyear developed a certain air pressure maintenance tire design in or around 2000 called the "Cycloid."  Defendants admit that, among other things, the Cycloid employed a pendulum affixed to the wheel, which powered a pump that would help maintain air pressure in the tire.  Defendants further admit that the Cycloid was not

- 10 -

commercialized.  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 74.

75.     Defendants admit that there was a website that displayed figures from patents and patent applications purportedly associated with Mr. Hrabal and that a press release existed relating to self-inflating tires.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 75, and therefore deny them.

76.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 76, and therefore deny them.

77.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 77, and therefore deny them.

78.     Defendants admit that Coda told Goodyear that Coda won an award for self-inflating tire technology at the Society of Automotive Engineers ("SAE") World Congress, held April 14-17, 2008 in Detroit, Michigan.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 78, and therefore deny them.

79.     Defendants admit that on or about April 28, 2008, Mr. Benedict met Mr. Hrabal at the Intelligent Tire Conference in Detroit, Michigan.  Defendants admit that Mr. Benedict was already aware of Mr. Hrabal's work related to self-inflating tires because Mr. Benedict was aware that Mr. Hrabal had already publicized his work.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 79, and therefore deny them.

80.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 80, and therefore deny them.

81.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 81, and therefore deny them.

82.     Defendants admit that on or about December 18, 2008, Alexandre Vaïsse, a Goodyear employee, sent an email to Mr. Hrabal that read, in part, "We would be interested to discuss together with you about your 'Self inflating tire' technology.  Should it be possible to give me your availability during the course of January 2009 in order to meet you (either at your facilities or in one of our Technical Center / Frankfurt or Luxembourg areas)."  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 82.

83.     Defendants admit that on or about December 19, 2008, Mr. Vaïsse sent an email to Mr. Hrabal that read, in part, "Thanks for your appreciated feedback and nice phone call introduction.  As discussed, the purpose of our mid-Jan09 introduction meeting will be to review your SIT concept together with our technical and marketing management communities, in order to understand it a bit more into details vs. presentation already available in your website (i.e. to cover topics like impact on fuel consumption, SIT behavior under aging/mileage, manufacturability, etc)."  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 83.

84.     Defendants admit that on or about December 23, 2008, Mr. Vaïsse received a proposed non-disclosure agreement from Mr. Hrabal via email.  Defendants admit that Mr. Vaïsse sent an email to Mr. Hrabal on or about January 5, 2009 that read, in part, "[w]e have reviewed your NDA proposal which was apparently not covering the technical part (only timing and budget were mentioned in your version).  Knowing that our introduction meeting is dedicated to technical discussions (please refer to my former email for agenda proposal) and introduce ourselves, we therefore suggest to use our standard NDA document to cover the needs

of our 15-Jan-09 meeting." Defendants admit that Goodyear and Coda executed a non-disclosure agreement on or about January 7, 2009. Defendants admit that they are unaware of any trade secret information that Mr. Hrabal ever disclosed to Goodyear.

85.     Defendants admit that Paragraph 85 recites portions of paragraphs 7, 8, and 10 of the non-disclosure agreement between Goodyear and Coda. Except as expressly admitted, Defendants deny each and every allegation of Paragraph 85.

86.     Defendants admit that on or about January 15, 2009, representatives of Goodyear met with Mr. Hrabal and Mr. Topoli at the Goodyear Dunlop Technical Center in Frankfurt, Germany, and that at least some of those representatives are identified in Paragraph 86. Defendants further admit that some representatives of Goodyear were physically present and others, including Mr. Benedict, attended via telephone and/or videoconference. Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 86, and therefore deny them.

87.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany. Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website. Defendants deny that Mr. Hrabal told Defendants that a pump tube chamber could be put into the bending region of a tire sidewall. Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 87.

88.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants further admit that Mr. Hrabal appeared to lack substantial experience in tire research and development or prototyping. Defendants deny that Mr. Hrabal disclosed any trade secrets to them, and deny that Coda or Mr. Hrabal told Defendants that a pump tube chamber could be put into the bending region of a tire sidewall.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 88.

89.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 89.

90.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire

Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 90.

91.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 91.

92.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 92.

93.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential

PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 93.

94.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 94.

95.     Denied.

96.     Admitted.

97.     Defendants admit that Plaintiffs' Exhibit 3 purports to be an email dated May 19, 2009 from Christian Spieker to Mr. Topoli that reads: "After a first internal evaluation I'd like to tell you that we are interested in your SIT technology and would like to know more about it. Therefore we think about a technical readiness evaluation at your premises in Prague, in order to physically judge the concept feasibility on-site and to decide whether we will start a development project or not."  Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 97, and therefore deny them.

98.     Defendants admit that Goodyear agreed to have a meeting with Mr. Hrabal on or about June 15, 2009.  Defendants admit that Mr. Spieker agreed to meet with Mr. Hrabal on June 15, 2009.  Defendants admit that on or about June 12, 2009, Mr. Benedict sent an email to Mr. Hrabal that read, in part: "Our goal is to evaluate CODA's Self Inflating tire technology.  We would like to: View updated technical presentation[,] Review the prototype product[, and ] Review testing methods and results."

99.     Defendants admit that representatives of Goodyear met with Mr. Hrabal and others on June 15, 2009.  Defendants admit that Mr. Hrabal brought his non-secret prototype tire to the meeting.  Defendants admit that Mr. Hrabal brought mock-ups of tire cross-sections. Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 99, and therefore deny them.

100.     Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants further admit that Mr. Hrabal appeared to lack substantial experience in tire research and development or prototyping. Defendants deny that Mr. Hrabal disclosed any trade secrets to them, and deny that Coda or Mr. Hrabal told Defendants that a pump tube chamber could be put into the bending region of a tire sidewall.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 100.

101.     Admitted.

- 17 -

102.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 102, and therefore deny them.

103.     Defendants admit that Goodyear took photographs of Mr. Hrabal's non-secret prototype tire after obtaining Mr. Hrabal's permission to do so.  Defendants deny taking photographs of the non-secret prototype tire outside the presence of Mr. Hrabal.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 103, and therefore deny them.

104.     Defendants admit that the next communication Defendants have a record of with Mr. Hrabal is from November 2009.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 104, and therefore deny them.

105.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 105, and therefore deny them.

106.     Defendants admit that Goodyear received an inquiry labelled as an "RFI" from Coda.  Defendants admit that the next communication Defendants have a record of with Mr. Hrabal is from November 2009.  Defendants admit that on or about November 6, 2009, Mr. Benedict received an email from Mr. Hrabal regarding his travel plans and requesting a meeting. Defendants admit that Mr. Benedict sent an email to Mr. Hrabal that read: "We appreciate your interest but we are not in a position to respond to your RFI.  A meeting would be premature at this point."  Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 106, and therefore deny them.

107.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 107, and therefore deny them.

108.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 108, and therefore deny them.

109.    Defendants admit that on December 21, 2009, Goodyear filed U.S. Patent Application No. 12/643,243 ("the '243 application").  Defendants admit that this application issued as U.S. Patent No. 8,042,586 ("the '586 patent") on October 25, 2011.  Defendants admit that Robert Losey and Robert Benedict are the named inventors of the '586 patent.  Defendants admit that Mr. Benedict had not previously been a named inventor on a patent directed to self-inflating tires.  Defendants admit that Mr. Benedict is a named inventor on patents related to aspects of tire technology.  Defendants admit that Goodyear did not inform Plaintiffs about its plans to file the '243 application.  Defendants state that the '586 patent speaks for itself and deny that Paragraph 109 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '586 patent.  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 109.

110.    Defendants admit that on December 21, 2009, Goodyear filed U.S. Patent Application No. 12/643,176 ("the '176 application).  Defendants admit that the '176 application issued as U.S. Patent No. 8,113,254 ("the '254 patent") on February 14, 2012.  Defendants admit that Mr. Losey and Mr. Benedict are named inventors of the '254 patent.  Defendants further admit that Mr. Losey was not previously a named inventor on a patent directed to self-inflating tires.  Defendants admit that Mr. Losey is a named inventor on patents related to aspects of tire technology.  Defendants state that the '254 patent speaks for itself and deny that Paragraph 110 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '254 patent.  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 110.

- 19 -

111.    Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 111, and therefore deny them.

112.    Denied.

## RESPONSES TO "FIRST CAUSE OF ACTION"

113.    In answer to Paragraph 113, Defendants incorporate their responses to Paragraphs 1 to 112 above.

114.    Denied.

115.    Defendants deny that Mr. Hrabal is an inventor of the '586 patent.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 115, and therefore deny them.

116.    Defendants deny that Mr. Hrabal is an inventor of the '586 patent.  Defendants lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 116, and therefore deny them.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    In answer to Paragraph 124, Defendants incorporate their responses to Paragraphs 10 to 13 above.  Defendants admit that in June 2009, Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work

- 20 -

thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants admit that Mr. Hrabal disclosed his non-secret prototype tire.  Defendants further admit that Mr. Hrabal appeared to lack substantial experience in tire research and development or prototyping.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them, and deny that Coda or Mr. Hrabal told Defendants that a pump tube chamber could be put into the bending region of a tire sidewall. Defendants further deny that any Goodyear patent discloses any trade secret information of Plaintiffs.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 124.

125.     Defendants state that the non-secret prototype tire speaks for itself.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them or that any Goodyear patent discloses any trade secret information of Plaintiffs.  Defendants further deny that Mr. Hrabal communicated to Goodyear the idea to put a tube in a groove in the bending region of the sidewall.  Defendants further deny that the non-secret prototype tire meets the claim limitations of the '586 patent.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 125.

126.     Denied.

**RESPONSES TO "SECOND CAUSE OF ACTION"**

127.     In answering Paragraph 127, Defendants incorporate their responses to Paragraphs 1 to 126 above.

128.     Denied.

- 21 -

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Defendants admit that in December 2008, Goodyear employee Alexandre Vaisse sent an email to Mr. Hrabal that read, in part, "the purpose of our mid-Jan09 introduction meeting will be to review your SIT concept together with our technical and marketing management communities, in order to understand it a bit more into details vs. presentation already available in your website (i.e. to cover topics like impact on fuel consumption, SIT behavior under aging / mileage, manufacturability, etc)."  Defendants admit that during the January 2009 meeting, Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 133.

134.    Defendants admit that the '586 patent and the '254 patent disclose a rim and a tire thereon.  Defendants admit that peristaltic pumps were disclosed in the prior art relevant to the field of self-inflating tires and/or air pressure maintenance in tires.  Defendants admit that the '254 patent discloses, among other things, "an outlet device positioned within the annular passageway at a location substantially 180 degrees apart opposite the inlet device."  Defendants

- 22 -

further admit that Paragraph 134 depicts Figure 2 of the '254 patent.  Defendants state that the '586 and '254 patents speak for themselves and deny that Paragraph 134 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '254 patent or '586 patent.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 134.

135.    Defendants admit that the '254 patent discloses, among other things, an "outlet mechanism further having one-way valve means within the first and second outlet sleeve passageways operative in an open condition to pass air from an outlet sleeve passageway out of the outlet device and into the tire cavity."  Defendants further admit that Paragraph 135 depicts Figure 3A of the '254 patent.  Defendants state that the '254 patent speaks for itself and deny that Paragraph 135 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '254 patent.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 135.

136.    Denied.

137.    Denied.

**RESPONSES TO "THIRD CAUSE OF ACTION"**

138.    In answering Paragraph 138, Defendants incorporate their responses to Paragraphs 1 to 137 above.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Denied.

144.    Defendants admit that Mr. Hrabal disclosed his non-secret prototype tire and discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website. Defendants further deny that the '784, '661, '955, and '132 patents disclose or claim any trade secret information of Plaintiffs.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 144.

145.    Defendants admit that U.S. Patent No. 8,381,784 ("the '784 patent") recites, among other things, a "projecting ridge extending from a groove sidewall segment into the groove, the at least one projecting ridge operatively positioned to engage a respective opposite segment of the air tube."  Defendants admit that U.S. Patent No. 8,695,661 ("the '661 patent") recites, among other things, an "elongate locking rib extending from a side of the air tube and having a complementary external configuration to the groove locking detent, the locking rib operably residing within the groove locking detent to deter lateral movement of the air tube within the sidewall groove."  Defendants further admit that Paragraph 145 depicts Figures 8A and 8D of the '784 patent and Figures 8A and 8D of the '661 patent, respectively.  Defendants state that the '784 and '661 patents speak for themselves and deny that Paragraph 145 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '784 patent or the '661 patent.  Except as expressly admitted, Defendants deny each and every allegation of Paragraph 145.

146.    Defendants admit that U.S. Patent No. 8,851,132 ("the '132 patent") discloses, among other things, "sidewall groove having an outer groove entry opening, a groove entry chamber axially inward from the groove entry opening defined by divergent entry chamber sidewalls, and a groove primary chamber axially inward from the groove entry chamber defined by primary chamber sidewalls."  Defendants further admit that Paragraph 146 depicts Figure 8A of the '132 patent.  Defendants state that the '132, '784, and '661 patents speak for themselves and deny that Paragraph 146 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '132, '784, and '661 patents.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 146.

147.    Defendants admit that U.S. Patent No. 8,826,955 ("the '955 patent") discloses, among other things, "the tube assembly comprising a first tube and a second tube, the first tube secured within the sidewall groove, the second tube secured within the first tube."  Defendants further admit that Paragraph 147 depicts Figure 18 of the '955 patent.  Defendants state that the '955, '132, '784, and '661 patents speak for themselves and deny that Paragraph 147 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '955, '132, '784, and '661 patents.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 147.

148.    Denied.

## RESPONSES TO "FOURTH CAUSE OF ACTION"

149.    In answering Paragraph 149, Defendants incorporate their responses in Paragraphs 1 to 148 above.

150.    Denied.

151.    Denied.

152.     In answering Paragraph 152, Defendants incorporate their responses to Paragraphs 27 through 72 above.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 152.

153.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 153, and therefore deny them.

154.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 154, and therefore deny them.

155.     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 155, and therefore deny them.

156.     Denied.

157.     Defendants admit that Goodyear developed a certain air pressure maintenance tire design called the Cycloid prior to January 2009.  Defendants admit that the Cycloid was not commercialized.  Defendants admit that public prior art disclosed the use of a peristaltic pump tube for self-inflating/air pressure maintenance tires prior to 2009.  Defendants admit that U.S. Patent No. 7,225,845 and the '556 application were public in 2007 and disclosed self-inflating tires/air pressure maintenance tires having peristaltic pump tubes in at least the tire bead or rim area.  Defendants admit that in 2008, Mr. Hrabal published an article in Tire Technology International disclosing self-inflating tire technology.  Defendants further admit that Goodyear filed U.S. patent applications in 2009 relating to self-inflating/air pressure maintenance tire technology.  Defendants deny that any of Goodyear's patents and/or patent applications disclose or claim any trade secret information of Plaintiffs.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 157.

158.    Defendants admit that Goodyear filed two patent application directed to self-inflating/air pressure maintenance tire technology on December 21, 2009.  Defendants admit that Goodyear has obtained patents related to aspects of tire technology.  Defendants deny that any Goodyear patents disclose or claim any trade secret information of Plaintiffs.  Defendants admit that Goodyear developed a tire product called the Air Maintenance Tire ("AMT").  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 158.

159.    Denied.

160.    Denied.

161.    Defendants admit that Mr. Hrabal disclosed his non-secret prototype tire and discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants admit that the '731 patent discloses, among other things, pressure management in self-inflating tires.  Defendants admit that the '690 application discloses, among other things, three-way valve embodiments and pressure regulation by means of a reference pressure and membrane.  Defendants further admit that U.S. Patent No. 8,857,484 ("the '484 patent") discloses, among other things, a "pressure membrane [that] senses the pressure in the tire cavity."  Defendants state that the '731 patent, the '690 application, and U.S. Patent No. 8,857,484 ("the '484 patent") speak for themselves and deny that Paragraph 161 is a complete and proper summary and/or interpretation of the disclosures and/or claims of the '731 patent, the '690 application, or the '484 patent.  Defendants deny that Mr. Hrabal disclosed any trade secrets

to them.  Defendants further deny that any Goodyear patent application discloses or claims any trade secret information of Plaintiffs.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 161.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Defendants further deny that any Goodyear patents disclose any trade secret information of Plaintiffs.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 169.

170.    Defendants admit that the '690 application discloses valves, among other things. Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint

presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo

2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on

his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to

them.  Defendants further deny that any Goodyear patents disclose any trade secret information

of Plaintiffs.  Except as expressly admitted, Defendants deny each and every remaining

allegation of Paragraph 170.

171.    Defendants admit that Mr. Hrabal discussed his patents and/or patent applications

and disclosed non-confidential information about self-inflating tires, his work thereon, and his

views on the market therefor, including information which is set forth in the non-confidential

PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire

Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed

videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any

trade secrets to them.  Defendants further deny that any Goodyear patents disclose any trade

secret information of Plaintiffs.  Except as expressly admitted, Defendants deny each and every

remaining allegation of Paragraph 171.

172.    Defendants admit that the '027 application discloses, among other things, the idea

of forming a channel by removing a matrix.  Defendants admit that Mr. Hrabal discussed his

patents and/or patent applications and disclosed non-confidential information about self-inflating

tires, his work thereon, and his views on the market therefor, including information which is set

forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was

presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr.

Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr.

Hrabal disclosed any trade secrets to them.  Defendants further deny that any Goodyear patents

disclose any trade secret information of Plaintiffs.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 172.

173.    Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 173.

174.    Defendants admit that Mr. Hrabal discussed his patents and/or patent applications and disclosed non-confidential information about self-inflating tires, his work thereon, and his views on the market therefor, including information which is set forth in the non-confidential PowerPoint presentation, attached hereto as Exhibit 1, which was presented at the Tire Technology Expo 2009 in Hamburg, Germany.  Defendants admit that Mr. Hrabal also disclosed videos posted on his publicly-available website.  Defendants deny that Mr. Hrabal disclosed any trade secrets to them.  Except as expressly admitted, Defendants deny each and every remaining allegation of Paragraph 174.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

## RESPONSES TO "FIFTH CAUSE OF ACTION"

180.    In answering Paragraph 180, Defendants incorporate their responses to

Paragraphs 1 to 179 above.

181.    Denied.

182.    Denied.

183.    Denied.

## PRAYER FOR RELIEF

WHEREFORE, Defendants seek the following relief:

A.    That Plaintiffs take nothing by their Amended Complaint and that their Amended

Complaint be dismissed with prejudice;

B.    That Plaintiffs' conduct in commencing and pursuing this case be deemed to

render this case exceptional and that Defendants be awarded their attorneys' fees and costs

incurred in this action; and

C.    That Defendants be granted such other and additional relief as the Court deems

just and proper.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses.  To the extent any of the defenses,

in whole or in part, relates to or negates an element of Plaintiffs' claims, Defendants in no way

seek to relieve Plaintiffs of their burden of proof or persuasion on that element.  All defenses are

pled in the alternative and do not constitute an admission of liability or that Plaintiffs are entitled

to any relief whatsoever.  Defendants reserve the right to assert additional defenses and/or

counterclaims as additional facts are learned or present themselves during discovery or otherwise

during the course of these proceedings.

**First Affirmative Defense – Failure to State a Claim for Relief**
**(All Counts)**

1.     Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense – Acquiescence, Waiver, Ratification, or Consent**
**(All Counts)**

2.     Plaintiffs' claims and relief sought by Plaintiffs are barred, in whole or in part, by the equitable doctrines of acquiescence, waiver, ratification, or consent.

**Third Affirmative Defense – Estoppel**
**(All Counts)**

3.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of equitable estoppel.

**Fourth Affirmative Defense – Laches**
**(All Counts)**

4.     Plaintiffs' claims and relief sought by Plaintiffs are barred, in whole or in part, by the equitable doctrine of laches.

**Fifth Affirmative Defense – No Injury**
**(All Counts)**

5.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered any injury in fact from the conduct alleged in the Amended Complaint.

**Sixth Affirmative Defense – No Causation**
**(All Counts)**

6.     Defendants' conduct was and is neither the cause in fact nor proximate cause of any injury, loss, or damages alleged by Plaintiffs.

**Seventh Affirmative Defense – Independent Development**
**(Count 4)**

7.      Defendants did not misappropriate any of Plaintiffs' alleged trade secrets or misuse any of Plaintiffs' alleged confidential information.  Defendants independently developed their technology without the use or benefit of any of Plaintiffs' alleged trade secrets or confidential information.

**Eighth Affirmative Defense – Generally Known**
**(Count 4)**

8.      Plaintiffs' alleged trade secrets and confidential information constitute information that is generally known to the public or to people with general knowledge and skill in the tire manufacturing field.  Plaintiffs' alleged trade secrets and confidential information consist of information that has been described, detailed, and publicized in printed publications, trade shows, electronic presentations and videos, patents and patent applications, and on publicly available Internet sites.

**Ninth Affirmative Defense – Readily Ascertainable**
**(Count 4)**

9.      Plaintiffs' alleged trade secrets and confidential information were readily ascertainable by proper means from publicly available information about tire manufacturing, air pressure maintenance and control, automotive systems, and other topics, including from Plaintiffs' own publicly available patents and patent applications and its own public presentations, publications, and publicly available Internet sites, as well as many other, third-party sources.  Plaintiffs' alleged trade secrets and confidential information consist of information that has been described, detailed, and pictured in publications, at public presentations, and on publicly available Internet sites.

**Tenth Affirmative Defense – No Reasonable Efforts to Maintain Secrecy**
**(Count 4)**

10. Plaintiffs have not taken reasonable efforts under the circumstances to maintain the secrecy of their alleged trade secrets and confidential information.  On information and belief, Plaintiffs have conveyed their alleged trade secrets and confidential information to various individuals and entities without a non-disclosure or confidentiality agreement or under a confidentiality agreement of limited duration.  Additionally, on information and belief, Plaintiffs have publicly disclosed some or all of its alleged trade secrets and confidential information in its publicly available patents and patent applications.

**Eleventh Affirmative Defense – Lack of Independent Economic Value**
**(Count 4)**

11. Plaintiffs' alleged trade secrets and confidential information do not derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.  Plaintiffs' alleged trade secrets comprise information that were generally known to people of skill and knowledge in the tire manufacturing field and elsewhere, such that Plaintiffs' alleged trade secrets do not have any independent economic value.

**Twelfth Affirmative Defense – Statute of Limitations**
**(Count 4 & 5)**

12. Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

**Thirteenth Affirmative Defense – Lack of Subject Matter Jurisdiction/Forum Non**
**Conveniens**
**(All Counts)**

13. The Court lacks subject matter jurisdiction over Plaintiffs' claims.  Under the explicit terms of non-disclosure agreement between Plaintiffs and Goodyear, the agreement shall

- 34 -

be construed according to the laws of Germany, and the courts at the city of Frankfurt/Main have

exclusive jurisdiction over any controversy arising from the terms of the agreement.

Additionally, on information and belief, all the events and omissions alleged to have given rise to

this cause of action took place in Germany and/or other places in Europe.  This Court is an

inappropriate forum for this cause of action because there is a substantially more appropriate

court that is available for Plaintiffs' claim.

**Fourteenth Affirmative Defense – Damages Speculative, Uncertain, and Contingent
(Count 4)**

14.    Plaintiffs' alleged damages claims are speculative, uncertain and/or contingent,

have not accrued, and are not recoverable.

Dated: May 13, 2019                                Respectfully submitted,


By:    *s/ David M. Maiorana*
Calvin P. Griffith (0039484)
David M. Maiorana (0071440)
Thomas R. Goots (0066010)
John C. Evans (0081878)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
cpgriffith@jonesday.com
dmaiorana@jonesday.com
trgoots@jonesday.com
jcevans@jonesday.com

*Attorneys for Defendants The Goodyear
Tire & Rubber Company, Robert
Benedict, and Robert Losey*

- 35 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2019, a copy of the foregoing document was filed electronically with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

By:   s/*David M. Maiorana*

*An attorney for Defendants The Goodyear Tire & Rubber Company, Robert Benedict, and Robert Losey*