# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CODA DEVELOPMENT S.R.O, et al., | CASE NO. 5:15-cv-1572 |
| PLAINTIFFS, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| GOODYEAR TIRE & RUBBER COMPANY, et al., | |
| DEFENDANTS. | |

On November 1, 2019, the Court conducted a status conference wherein certain discovery disputes were discussed. (*See* Doc. Nos. 74, 76.) Following the conference, the Court issued a non-document minute order ruling in relevant part, as follows:

> First, as to Interrogatory Nos. 1 [and] 2, . . . propounded by defendants on plaintiffs, by 11/16/2019, plaintiffs will provide (1) a description of what was said at the meetings in January and June 2009, and (2) a complete list of the trade secrets (with particularity) that they claim were orally disclosed to defendants, including detail as to when plaintiffs conceived of and developed each of the features in each trade secret. The Court made clear that additions to this list at a later time will be permitted only upon showing of an exceptional reason to do so. . . .

(Minute Order 11/1/2019.[1]) The Court also directed counsel to brief "the issue of whether any description of what was said at the meetings may be supplemented at a later date or whether plaintiffs are bound by their written response." (*Id.*) Those briefs have been submitted. (*See* Doc. No. 79 ["Defts' Brief"]; Doc. No. 80 ["Pltfs' Brief"].)[2]

---

[1] The November 16, 2019 deadline was subsequently extended to November 22, 2019 for both Interrogatory No. 1 and Interrogatory No. 2.

[2] The two discovery letters previously referenced were in agreement that the parties' current dispute related to plaintiffs' answers to defendants' Interrogatory Nos. 1, 2, and 3, as well as to the parties' inability to agree on an ESI protocol. Neither side, however, supplied the Court with copies of what has been exchanged to date. After discussion at the status conference on November 1, 2019, the disputes over the ESI protocol were worked out and the Court's minute order resolved most of the dispute regarding the interrogatories, although plaintiffs' instant brief is still

# DISCUSSION

In their first amended complaint, plaintiffs explain the "nature of the action" as follows:

> 1. This action arises out of Goodyear Tire and Rubber Co.'s ("Goodyear") theft of Coda's secret self-inflating tire ["SIT"] technology. Coda shared with Goodyear its secret self-inflating tire technology, including specifically that a self-inflating tire could be created by embedding a tube in a groove in tire sidewalls that would act as a peristaltic pump and always keep the tire properly inflated. Goodyear promised that it would keep these trade secrets confidential and consider them solely to evaluate whether it would partner with Coda to develop Coda's self-inflating tire technology further. Instead, without Coda's knowledge, Goodyear applied for, and obtained, numerous patents on self-inflating tire technology based on Coda's trade secrets and now is about to introduce to the market it's "Air Maintenance Technology," a self-inflating tire made up of a tube embedded in a groove in the tire sidewall.
>
> 2. At the behest of General Motors ("GM"), Goodyear and Coda met in January 2009, and again in June 2009 to discuss a potential partnership for commercializing Coda's SIT technology. GM was interested in using Coda's SIT technology on the new Chevy Volt. GM suggested that Goodyear work with Coda to bring Coda's SIT technology to market because GM believed that Goodyear could deliver in time for the Volt's anticipated 2010 launch date.
>
> 3. At those two 2009 meetings, and in various communications, Coda fully educated Goodyear about its SIT technology. This included SIT technology that Coda had publicly disclosed in its own patent application filings and issued patents, as well as Coda's trade secret information that Coda has not publicly disclosed. Coda provided this information to Goodyear pursuant to a non-disclosure agreement.
>
> 4. At the first meeting in January 2009, among other things, Coda explained that it had produced a functional prototype, which generated sufficient pressure to inflate a vehicle tire. Following that meeting, representatives from Goodyear emailed Coda to ask for a second meeting so that Goodyear could perform a "technical readiness evaluation at your premises in Prague, in order to physically judge the concept feasibility on-site and to decide whether we will start a development project or not." A Goodyear employee named Robert Benedict, who is a Defendant in this case, wrote separately to Mr. Hrabal and stated that "Our goal is to evaluate CODA's Self Inflating Tire technology. We would like to: View the

---

challenging even that ruling. (*See* Pltfs' Brief at 2652 n.6 [all page citations are to the Page ID# assigned by CMECF] ("respectfully submit[ting] that the Court's ruling with respect to closing the enumerated trade secret list is at odds with federal precedent[]".) As explained herein, plaintiffs' view is simply incorrect and fails to acknowledge this Court's discretion when it comes to discovery matters, particularly those involving trade secrets.

updated technical presentation[,] Review the prototype product[, and] Review testing methods and results."

    5.    The second meeting occurred in June 2009. And just as Mr. Benedict requested, Mr. Hrabal showed Goodyear Coda's prototype at that meeting, along with covering other subjects, including those other subjects addressed in Mr. Benedict's email.

\* \* \*

    16.    Ultimately, Goodyear did not move forward with a joint development project with Coda. Instead, on December 21, 2009, Goodyear filed two patent applications, claiming self-inflating tires based on the principles Mr. Hrabal shared with Goodyear. The first, United States Application Serial Number 12/643,243, claimed a self-inflating tire with a pump tube in a sidewall groove—an invention that was conceived by Mr. Hrabal, maintained by Mr. Hrabal as a trade secret, disclosed to Goodyear under the terms and conditions of a non-disclosures agreement, and ultimately misappropriated by Goodyear. (footnote omitted)

    17.    In the years since, Goodyear has developed an extensive portfolio of patents on self-inflating tire technologies. Many of these patents also claim other trade secrets that were developed by Mr. Hrabal. And Goodyear now stands on the verge of introducing its self-inflating tire technology to the world. Technology it would never have had if it didn't meet with Coda in 2009.

(Doc. No. 52, First Amended Complaint ["FAC"].)[3]

It is readily apparent from these allegations that, in order to defend themselves, defendants must know precisely what "Coda claims to have discussed with [defendants] at two critical meetings in 2009." (Doc. No. 74 at 2605.) Coda's claims "are based entirely on alleged *oral* disclosure of trade secrets . . . over the course of a few hours of discussion in two meetings." (*Id.* (emphasis in original).) There is no dispute that "[n]o written materials containing trade secrets were given to [d]efendants in the meetings." (*Id.*) Defendants argue: "Since Coda contends that its spoken words at these two meetings are worth hundreds of millions of dollars, it is only fair to

---

[3] Doc. No. 52 is a redacted version of the FAC. An unredacted copy is filed under seal. (*See* Doc. No. 53.)

require Coda to provide a complete, straightforward, and closed answer to [Interrogatory No. 1]." (*Id.*)[4] And therein lies the dispute between the parties that is the subject of this order.

Plaintiffs oppose any requirement that their answer to the interrogatory be "closed" and/or that they be precluded from supplementing at a later date. Plaintiffs claim that "[d]efendants' demand is improper, and contrary to the Federal Rules of Civil Procedure and established law." (Doc. No. 76 at 2618.) They further argue that "[t]his Court should not permit [d]efendants to preclude [p]laintiffs from doing that which they are obligated to do under the Federal Rules of Civil Procedure, particularly where [d]efendants have not articulated any prejudice or unfair surprise that would result from [p]laintiffs being permitted to timely supplement their response." (Pltfs' Brief at 2648; 2650 (citing Fed. R. Civ. P. 26(e)).)

Plaintiffs assert that defendants' position is "particularly absurd" because "Interrogatory No. 1 requests, in narrative format, a <u>word-for-word</u> recitation of <u>everything</u> that was said between approximately fifteen (15) participants at two, multi-hour meetings that occurred in 2009[.]" (*Id.* at 2649 (underlining in original).) Plaintiffs claim that this would amount to "punish[ing] litigants for having imperfect memories[.]" (*Id.*)

Defendants, on the other hand, argue that plaintiffs "ha[ve] the facts needed to provide a complete response to Interrogatory No. 1[,]" and "need[] no discovery of [d]efendants to know

---

[4] As already noted, neither side previously supplied the Court with the text of the interrogatories. According to plaintiffs' instant brief (Doc. No. 80), the relevant interrogatories propounded by defendants are as follows:

> *Interrogatory No. 1*: Set forth, in as much detail as [y]ou are able to recall, everything that was said (word by word, if possible) by the participants in the January 2009 meeting and the June 2009 meeting referenced in the Amended Complaint.
>
> *Interrogatory No. 2*: Describe with particularity all facts and information that Goodyear received from Coda in writing, orally and/or by observation, including but not limited to all information regarding SIT, pump location, side wall groove and tube in the bending region of the sidewall, bi-directional pump, valve designs, and testing results.

(Pltfs' Brief at 2648 n.1; 2649 n.2.)

4

what [they] said during the 2009 meetings." (Defts' Brief at 2644.) In addition, defendants assert that plaintiffs "had plenty of time to reflect on any alleged oral disclosures of [their] trade secrets, having filed suit over four years ago." (*Id.*) Defendants fear that, absent a "closed" discovery response, the central facts of the case could become "moving targets[,]" and CODA might "manipulate its account of what it said to [d]efendants by 'recalling' additional statements made to [d]efendants at the 2009 meetings only after having the benefit of discovery from [d]efendants[,]" (*id.*), thereby permitting plaintiffs to mold their trade secret claims based upon the discovery they receive.

"[D]iscovery impasse[s] [are] not uncommon in trade secret cases, and bring[] into conflict many competing policies." *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007). The competing policies relate to, on the one hand, "allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets[,]" as opposed to "delaying trade secret discovery until the trade secret plaintiff has sufficiently described the trade secrets at issue." *Id.* The instant case does not fit squarely on either end of this spectrum, but the parties' respective arguments come close enough to render useful a consideration of the competing policies.

The policies supporting the former discovery philosophy include: (1) "a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure[;]" (2) a trade secret plaintiff's inability to "know[] what trade secrets have been misappropriated until it receives discovery on how the defendant is operating[;]" and, (3) the plaintiff's "Catch-22" by being "forced to identify the trade secrets at issue without knowing which of those trade secrets have been misappropriated . . . [that is,] without knowledge [of] what the defendant is doing[.]" *Id.* Plaintiffs' view is closer to this policy argument—they claim they should be allowed, in response to Interrogatory No. 1, to

submit their best recollection of the two conversations held in 2009 and be permitted to supplement the response as discovery progresses.

Courts adopting the latter discovery philosophy identify at least four policies: (1) "if discovery on the defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor[;]" (2) "until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant[;]" (3) "it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated[;]" and, (4) "requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives." *Id.* at 680–81. Defendants come down on this end of the policy spectrum—arguing that plaintiffs should not be permitted, after discovery, to "remember" more about the 2009 conversations.

A district court in this circuit has noted that, "[g]iven the nature of and burdens imposed by trade secret cases, many courts across the country recognize the 'growing consensus' in favor of 'requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue.'" *A&P Tech., Inc. v. Lariviere*, No. 1:17-cv-534, 2017 WL 6606961, at *7 (S.D. Ohio Dec. 27, 2017) (quoting *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-CV-1687-P, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013) and citing cases). Courts are trending toward this stance due to the potential for trade secret plaintiffs to "mold their claims around the discovery they receive." *JJ Plank Co. v. Bowman*, No. 3:18-CV-00798, 2018 WL 3545319, at *5 (W.D. La. July 23, 2018). "A '[f]ailure to identify . . . trade secrets with sufficient specificity' renders courts 'powerless' to enforce them." *A&P Tech.*, 2017 WL

6

6606961, at *7 (quoting *Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) (further citation omitted).)

Although, "[g]enerally speaking, parties are entitled to discovery regarding any non-privileged matter that is relevant to any claim or defense][,]" *DeRubeis*, 244 F.R.D. at 678 (citing Fed. R. Civ. P. 26(b)(1)), "rulings on discovery limitations are a case-by-case decision where courts must use their broad discretion based heavily on the distinct circumstances of any particular action." *A&P Tech.*, 2017 WL 6606961, at *8.

Under the peculiar circumstances of this case, where the alleged disclosure of trade secrets was *entirely oral*, the danger of plaintiffs "molding" their claims by way of subsequent supplementation of their original recollection of those two 2009 conversations is of particular concern. Plaintiffs claim they *told* defendants their trade secrets and defendants thereafter misappropriated them. Under that scenario, it is entirely reasonable for defendants to request, by way of Interrogatory No. 1, that plaintiffs supply a "closed" recital of their recollection of what was orally imparted in the two meetings of limited duration in 2009.

## CONCLUSION

Accordingly, the Court will require that plaintiffs supply a "closed" response to Interrogatory No. 1, supplying sufficient specificity and description to permit defendants to know what discovery will be relevant and what specific claims of trade secret misappropriation they must defend against.

As a final caution, the Court directs plaintiffs to take this discovery mandate seriously and *not* provide a response so broad that it is meaningless or so incomplete, vague, and evasive that it is useless. Should the Court determine that plaintiffs fail in this regard, and do so purposefully, it will reserve the right to sanction plaintiffs up to and including dismissal. This is not prejudicial to

plaintiffs because *plaintiffs themselves* are the ones who know what they said to defendants during the two meetings. There is no need to *discover* anything from the defendants in order for plaintiffs to write down their recollection of those meetings.[5]

That said, although general supplementation will not be permitted, should it be determined that plaintiffs *inadvertently* failed to include something in their answer to Interrogatory No. 1, the Court will remain open to entertaining limited supplementation upon a showing of an exceptional reason for doing so.

**IT IS SO ORDERED**.

Dated: November 21, 2019

                                                                 **HONORABLE SARA LIOI**
                                                                  **UNITED STATES DISTRICT JUDGE**

---

[5] Presumably, it was also plaintiffs themselves who made the choice to rely entirely upon an *oral* disclosure, which easily lends itself to the very situation the parties find themselves in now.