**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CODA DEVELOPMENT, S.R.O., et al., | ) | CASE NO. 5:15-cv-1572 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| GOODYEAR TIRE & RUBBER CO., et al., | ) | AND ORDER |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are Doc. Nos. 169 and 196—defendants' objections to and request for reconsideration of the Magistrate Judge's Orders resolving certain discovery disputes. (*See* Doc. Nos. 139, 160, 178 and 190.) Plaintiffs filed responses (Doc. Nos. 185 and 199) and defendants filed replies (Doc. Nos. 194 and 204).[1] Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), the Court has conducted its review and, for the reasons discussed herein, defendants' objections are overruled in part and sustained in part.

**I.    Standard of Review**

> When [as here] a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to "reconsider" the determination, but under a limited standard of review. 28 U.S.C. § 636(b)(1)(A). Under this standard, the magistrate judge's determination may be overturned by the district court only if it is "clearly erroneous or contrary to law." *Id*. Rule 72(a) of the Federal Rules of Civil Procedure implements Section 636(b)(1)(A).

*Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

---

[1] Due to the number of documents, for ease of reference herein the Court will cite to all documents using the document number assigned by CMECF.

"The 'clearly erroneous' standard of review is a limited one." *Burghardt v. Ryan*, No. 5:19-cv-325, 2020 WL 4350049, at *2 (N.D. Ohio July 29, 2020). "A court may not overturn a ruling just because, if it were the original fact-finder, it would have decided the evidence differently. If there are two plausible views of a matter, then a decision cannot be 'clearly erroneous.'" *Id.* (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). "In reviewing a magistrate judge's decision to determine whether it is 'contrary to law,' a district court is to apply the same standard the Sixth Circuit employs to review a district court's ruling on an evidentiary question, which is an 'abuse of discretion' standard." *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-cv-1195, 2015 WL 7251307, at *1 (N.D. Ohio Nov. 16, 2015).

"Under this deferential standard, '[t]he party seeking to reverse a Magistrate Judge's ruling concerning discovery bears a heavy burden, in part, because the Magistrate Judge is afforded broad discretion in these matters.'" *Burghardt*, 2020 WL 4350049, at *2 (quoting *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005)).

**II.    Discussion**

    **A.    Background**

In this lawsuit, plaintiffs Coda Development s.r.o., Coda Innovations s.r.o., and Frantisek Hrabal (collectively, "plaintiffs" or "Coda") claim that, during two conversations in 2009, Coda orally disclosed certain trade secrets to defendants The Goodyear Tire & Rubber Company, Robert Benedict, and Robert Losey (collectively, "defendants" or "Goodyear"), which Goodyear, in turn, subsequently disclosed in certain of Goodyear's patents, claiming Coda's trade secrets as Goodyear's own original ideas.

During the course of discovery, Coda has withheld as privileged or work-product-protected over 13,000 documents originating from the time before this lawsuit was filed in 2015, while producing around 38,000 documents. Goodyear asserts (and Coda does not deny) that, prior to this lawsuit, Coda was attempting to attract investors by, among other things, informing them of its plan to bring a patent infringement case against Goodyear. As part of this effort, Coda explained to potential investors its belief that its published patents and patent applications describe and claim features in Goodyear's AMT tire designs, and Coda disclosed its attorneys' advice on these subjects, never characterizing these features as trade secrets.

Goodyear claims it is entitled to discover the withheld documents because they "show that Coda previously admitted that its own patent filings and other publications disclose what it now claims were trade secrets." (Doc. No. 169 at 6470.)[2]

### B.     Goodyear's First and Second Notices of Discovery Dispute

Goodyear filed its First Notice of Discovery Dispute (Doc. No. 103 ["First Notice"]) on July 13, 2020, seeking production of (1) the legal opinion of Coda's patent lawyer, Harry Brown (the "Brown Opinion"[3]), and (2) thirty communications—withheld on privilege and work product grounds—between Coda and Alliacense, a well-known patent licensing firm described by Coda as a "potential investor." Coda withdrew its privilege claim over twenty-nine of the communications and the Alliacense Claim Chart I, and produced them on the condition that such production was "not construed as a broader waiver of privilege over any other documents." (Doc. No. 127 at 4473;

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

[3] The Brown Opinion is also referred to in the briefing as the "WRB-IP patent analysis."

*see also* Doc. No. 109, Minute Order, at 2926–27.) Coda maintained its privilege claim over the Brown Opinion.

On September 15, 2020, the Magistrate Judge resolved the portion of the First Notice relating to the Brown Opinion, ordering that it be produced, after concluding that Coda could not claim privilege over the opinion because Coda had shared the opinion with potential investor Dan Jackson. (Doc. No. 139 at 4674.) On September 28, 2020, the Magistrate Judge cursorily denied "[t]he remainder of Goodyear's [First] Notice of Discovery Dispute[.]" (Doc. No. 160 at 5520.)

On July 29, 2020, while its First Notice was still under advisement, Goodyear filed its Second Notice of Discovery Dispute (Doc. No. 110 ["Second Notice"]) challenging (1) Coda's attempts to claw back Coda-produced documents that Goodyear used as exhibits in the depositions of Coda's witnesses, and (2) Coda's "serious and systemic abuse of privilege and work-product protections." (*Id.* at 2928.) At the Magistrate Judge's direction, the Second Notice was subsequently supplemented. (Doc. No. 144.)

In Section II of the Second Notice, Goodyear challenged Coda's claw back of Daniel Jackson's November 2015 notes in two Excel spreadsheets (the "Jackson Excel Notes"), a January 2015 email from Jackson to Jan Martinek (the "Jackson Email"), a claim chart authored by plaintiff Frantisek Hrabal in September 2013 (the "FH Claim Chart"), the June 2016 MacMaster Presentation (the "MacMaster Presentation"), an August 2018 presentation given to Josef Broz (the "Broz Presentation"), a December 2014 email chain and attachment (the "Luptak Email"), portions of a December 2014 email chain between Hrabal and third-party Innovation Partners ("Equity Terms Email"), and portions of an October 2017 email chain between Hrabal and Coda's investors ("Valuation Email"). During a conference with the Magistrate Judge on September 3, 2020, Goodyear identified "a new discovery dispute regarding late produced pages from Mr.

4

Jackson's personal notebooks." (Doc. No. 178 at 6583.) In Goodyear's subsequent supplement to the Second Notice, Goodyear sought production of those notebooks (the "Jackson Notebooks") (or, at least, an *in camera* inspection) and permission to re-depose Hrabal and Jackson. (Doc. No. 144 at 4735–36.)[4]

In Section III of the Second Notice, Goodyear argued that Coda had overbroadly and arbitrarily claimed attorney-client privilege and work-product protections. (Doc. No. 110 at 2936–37.) Goodyear claimed that Coda's recklessness in this regard operated as a waiver of these protections. (*Id.* at 2937.)

On October 21, 2020 and October 30, 2020, the Magistrate Judge issued two orders that resolved the remainder of Goodyear's Second Notice. In Doc. No. 178, the Magistrate Judge denied Goodyear's request for production of the Jackson Excel Notes, the FH Claim Chart, and the Jackson notebooks, but granted the request with respect to the Jackson Email; the magistrate Judge also denied the request to re-depose Hrabal and Jackson. In Doc. No. 190, the Magistrate Judge ruled that Coda did not waive privilege as to the FH Claim Chart by inadvertently disclosing it to Dr. Shirley Webster.

### C. Goodyear's Objections Generally

With respect to its First Notice of Discovery Dispute, Goodyear claims that the Order of September 15, 2020 (Doc. No. 139) addressed only the Brown Opinion and failed to address other matters raised in the various briefs,[5] in particular, Coda's refusal to produce other Alliacense-

---

[4] Goodyear was granted leave to supplement only as to one issue newly-raised during a phone conference (*see* Doc. No. 136 at 4662–63), but its supplement improperly re-argued matters raised in Doc. No. 110, sometimes broadening the arguments and the general relief sought. The record does not reflect any disapproval by the Magistrate Judge of Goodyear's strategy.

[5] It is inaccurate to consider Doc. No. 103 as the sole document setting out this discovery challenge. Issues relating to Goodyear's First Notice were detailed in many additional filings. (*See* Doc. Nos. 111, 116, 119, 124, 127, 131, 145,

related documents and the scope of Coda's subject matter waiver as to the Brown Opinion and Alliacense-related documents. (Doc. No. 169 at 6471–72.)

Because Goodyear had raised in its First Notice reply brief a new dispute over the Alliacense Claim Chart II (*see* Doc. No. 131), the Magistrate Judge ordered separate briefing on that. On September 28, 2020, in the Minute Order now challenged by Goodyear, the Magistrate Judge succinctly, and without any analysis or citation to authority, ruled that "[t]he remainder of Goodyear's Notice of Discovery Dispute at [Doc.] No. 103 and 131 is DENIED." (*See* Doc. No. 160.)

With respect to this First Notice, Goodyear now objects to the Magistrate Judge's denial of its motion to compel production of (1) the Alliacense Claim Chart II, (2) other communications and documents shared with Alliacense, and (3) documents having the same subject matter as the intentionally-waived Brown Opinion or Alliacense documents. (Doc. No. 169 at 6473.)

In opposition, Coda first argues that Goodyear's challenge, except as to the Alliacense Claim Chart II, is untimely because the Magistrate Judge's decision as to the other matters was issued on September 15, 2020. The Court rejects Coda's argument. Goodyear was entitled to wait until there was a final and complete resolution of its First Notice, which did not occur until September 28, 2020.

With respect to its Second Notice of Discovery Dispute, Goodyear objects to the Magistrate Judge's denial of its motion to compel production or to have some form of *in camera* review of (1) the 5,500 documents on Coda's privilege logs for which no attorney is associated, (2) several hundred communications and documents described as being shared with potential investors

---

146, 156, and 159.) This undisciplined multiplicity of filings, followed by piecemeal orders, is an unfortunate (and uncontrolled) pattern in this case, adding layer upon layer of argument and confusion.

(besides Alliacense, addressed above), and (3) three clawed-back documents provided to Coda's expert. (Doc. No. 169 at 6478–79.) In a separate filing, Goodyear also objects to the Magistrate Judge's rulings that Coda had neither waived privilege with respect to the Jackson Excel Notes or the FH Claim Chart nor shown a substantial need for the information contained therein that cannot be obtained by other means. (Doc. No. 196 at 6739.)

### D. Specific Pending Objections Now Before the Court

As required, the Court now turns to its *de novo* review of the specific objections raised by Goodyear.

In Doc. No. 169, Goodyear objects to the Magistrate Judge's resolution of the following issues:

(1) whether Coda waived privilege as to all communications and documents shared with third-party Alliacense Limited, LLC ("Alliacense"), and the extent of Coda's subject matter waiver as to those materials;

(2) the extent of Coda's subject matter waiver as to a legal opinion (the "Brown Opinion") for which the Court has already ruled Coda intentionally waived privilege;

(3) whether Coda is entitled to assert privilege over about 5,500 documents listed in its privilege logs with which Coda identified no associated attorney or attorney agent;

(4) whether Coda may assert privilege over documents and communications it shared with third-party potential investors; and

(5) whether three documents provided to Coda's expert must be produced.

In Doc. No. 196, Goodyear objects to the Magistrate Judge's resolution of the following additional issues, which the Court will number consecutively with the above list:

(6) whether Coda waived any work product or other protections over Mr. Jackson's Notes by failing to promptly claw them back and failing to take reasonable precautions to prevent inadvertent disclosure;

(7) whether Coda waived any attorney-client privilege or attorney work product protection over the FH Claim Chart by sharing it with third parties; and

7

  (8)  whether Goodyear has a substantial need for Mr. Jackson's Notes and the FH Claim Chart and cannot obtain their substantial equivalents by other means.

The Court will separately address each of these eight issues, although there may be some overlap among them.

  **(1)**  ***Alliacense Claim Chart II and Documents Shared***

Goodyear argues that, because the subject matter of the two Alliacense Claim Charts is the same,[6] Coda waived privilege as to Alliacense Claim Chart II when it voluntarily waived privilege as to Alliacense Claim Chart I by permitting it to be used as a deposition exhibit and by allowing substantive questions about it during Frantisek Hrabal's deposition.

In opposition, Coda does not dispute that the two charts have related subject matter. Rather, it claims that, "in the spirit of good faith and compromise" (Doc. No. 185 at 6628), Coda agreed to produce Chart I upon realizing that it was a duplicate of a document Coda had allowed Mr. Hrabal to be questioned on—on the mistaken belief that it was not privileged (and failing to succeed in its attempted claw-back). In so doing, Coda emphasized that: (1) the chart *did* contain privileged information; (2) privilege was not waived by way of the voluntary production; and, (3) withdrawal of privilege as to Chart I should not be construed as a broader waiver of privilege over any other documents. (Doc. No. 127 at 4472–73.) Therefore, Coda argues in opposition to Goodyear's objections that it did not waive privilege over Chart II or over the subject matter of Chart I. (Doc. No. 185 at 6627.)

---

[6] *Compare* Doc. No. 131-11 (Alliacense Claim Chart I) *with* Doc. No. 131-7 (Alliacense Claim Chart II), both filed under seal as are most documents in this case. Goodyear points out that even Coda acknowledged the similar subject matter when it initially refused to produce Chart II until there was a ruling on Chart I, which Coda believed would be "instructive" as to whether Chart II should be produced. (Doc. No. 131-6 at 4610–11.) After Coda voluntarily produced Chart I, it began to argue that the two charts were unrelated. (*See* Doc. No. 146 at 4781.)

There was no need for the Magistrate Judge to issue any ruling with respect to Alliacense Claim Chart I given Coda's voluntary production of the chart. That said, it is clear that Coda, by allowing the use of Chart I at Hrabal's deposition and by failing to subsequently take the necessary steps to protect it, had already waived privilege with respect to Chart I. *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06-cv-2804, 2010 WL 275083, at *5–6 (S.D. Cal. Jan. 13, 2010) (discussing Fed. R. Evid. 502(b) governing disclosure of privileged documents). All of Coda's attempted disclaimers regarding not waiving privilege and/or limiting the scope when it subsequently voluntarily produced the Chart are unavailing.

The Magistrate Judge's denial of Goodyear's request for production of Chart II is not explained in her Minute Order and so there is no basis upon which this Court can review the decision. As such, the Court has independently reviewed the two charts contained in Doc. No. 131 and concludes that, although they are formatted differently, they do address the same subject matter—namely, the scope and content of Coda's patent filings and their applicability to Goodyear's AMT tire designs. Further, although Coda denies in this litigation that these ideas were previously published (even though they were admittedly shared with numerous potential investors), in these documents, Coda arguably admits that its published patent documents describe and even claim the same ideas that Coda now asserts are trade secrets. As a result, Coda's waiver of privilege as to the Alliacense Claim Chart I extends to Alliacense Claim Chart II. *Luna Gaming*, 2010 WL 275083, at *7 (finding that the privilege over four documents—two used at depositions and in court filings, and two never used but having related subject matter—was waived); *see also In re United Shore Fin. Servs., LLC*, No. 17-2280, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) ("Litigants . . . cannot use the privilege as 'a shield and a sword.'") (quoting *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)). "'Thus, the privilege may be implicitly waived when [a party] asserts a

claim that in fairness requires examination of the protected communications.'" *Id*. (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

Coda must produce Alliacense Claim Chart II. To that extent, Goodyear's objection is sustained.

Goodyear also argues that Coda failed to prove that it shared a common legal interest with Alliacense that would have protected its disclosure to Alliacense of various privileged documents. (*See* Doc. No. 169 at 6474–76, citing cases.)

As near as the Court can tell, the "other" documents Goodyear claims entitlement to refers to the thirty communications with Alliacense that were initially withheld by Coda. (*See* Doc. No. 103 at 2852 (referencing five documents) and note 4 (referencing an additional twenty-five).) It appears that, of these, only one—the Alliacense Claim Chart II—is still being withheld and has been addressed above.

The Court is unable to ascertain what Goodyear refers to when claiming that Order No. 139 failed to address "other Alliacense-related documents," and the Magistrate Judge's decision sheds no light on this issue. All but one of the documents Goodyear's First Notice sought have already been produced (or have been ordered produced). Goodyear's instant objections identify no additional documents and, therefore, have no underlying substance.

This portion of Goodyear's objections to the Magistrate Judge's Orders is overruled.

**(2)** *Scope of Coda's Subject Matter Waiver*

This portion of the objections seems to refer to Goodyear's assertion, raised in its First Notice reply brief, that any waiver of privilege by Coda (due to its having disclosed certain documents to potential third-party investors) would extend to all documents involving the same

10

subject matter as the Brown Opinion *and* the Alliacense documents. (See Doc. No. 131 at 4540.) Goodyear argues that the Magistrate Judge's Orders failed to address this.

Once again, although setting forth case law that Goodyear believes is relevant to the issue, the objections fail to identify what documents Goodyear seeks (in addition to those already obtained or ordered), merely stating in conclusory fashion: "Having intentionally waived protection for the Brown Opinion and the First Alliacense Claim Chart, Coda must produce its other communications and documents on the same subject matter." (Doc. No. 169 at 6477.) Nor does Goodyear make any effort to identify what that purportedly waived "subject matter" is.

Coda has already produced most of the documents it originally withheld under a claim of privilege, including the Alliacense Claim Chart I, and it has been ordered to produce the Brown Opinion and the Alliacense Claim Chart II. The Court is unable to ascertain any additional documents that fall into the category of the "same subject matter" and Goodyear's objections shed no further light.

Goodyear's objection relating to subject matter waiver is overruled.

**(3)** *Abuse of Privilege Logs*

In Section III of its Second Notice, Goodyear argued that "Coda has overused privilege and work product protections[]" by "claim[ing] that nearly 25% of all of its pre-lawsuit documents included attorney advice or work product." (Doc. No. 110 at 2936.) Goodyear also cataloged "[o]ther facts [that] confirm that Coda has recklessly failed to take reasonable precautions in reviewing, logging, and producing its documents" and that "show that Coda's assertions of privilege and work product are overly broad and arbitrary." (*Id*. at 2936–37.) To underscore that point, Goodyear supplied a 1255-page compilation of Coda's privilege logs as an exhibit to its Second Notice. (*See* Doc. No. 110-9.)

11

>Goodyear quoted Fed. R. Civ. P. 26(b)(5)(A) for the proposition that,

>when a party withholds information otherwise discoverable by claiming that the information is privileged … the party must: (i) expressly make the claim; and (ii) describe the nature of the documents … in a manner that …will enable other parties to assess the claim.

(Doc. No. 110 at 2937.) Goodyear claimed that Coda has failed to meet the threshold burden of establishing privilege, at the very least with respect to all the documents in its log for which no attorney is identified, and/or has waived any privilege by virtue of its recklessness in both indiscriminately claiming privilege as to an extraordinary number of documents and in failing to exhibit any urgency with respect to attempts to claw back documents flagged by Goodyear as possibly having been inadvertently produced by Coda. (*Id*.)

Goodyear now objects to the Magistrate Judge's cursory denial of its requests in Section III of its Second Notice, again arguing that Coda may not claim privilege or work-product for documents without identifying an attorney as a sender or recipient. (Doc. No. 169 at 6479.) In response, Coda correctly asserts that it is well-settled law that the attorney-client privilege does not require an attorney to have authored or received the document to maintain the privilege, that Goodyear's own authority recognizes this principle, and that Goodyear itself applied the principle to its own log. (Doc. No. 185 at 6634–35, citing cases.)

Goodyear also asserts that Coda has failed to meet its substantial burden of proving that it is entitled to privilege and work product protections. (Doc. No. 169 at 6481.) But, as properly pointed out by Coda, the Magistrate Judge issued her ruling without requiring Coda to respond to Goodyear's arguments. (Doc. No. 185 at 6634, n.6.)

Coda claims it is not surprising that the Magistrate Judge rejected Goodyear's "omnibus waiver argument" given that it failed to present "'sufficient evidence upon which a reasonable person may find that the privilege has been waived.'" (*Id.*, quoting *Shumaker, Loop & Kendrick,*

*LLP v. Zaremba*, 403 B.R. 480, 484 (N.D. Ohio 2009).) Coda argues that Goodyear's conclusory and unsupported arguments regarding a total waiver of privilege did not meet this standard. (*Id.*)

Although the Magistrate Judge's Order includes nothing substantial for review, since Goodyear's primary argument—that all documents not attributed to an attorney are unprotected by either work-product or privilege—is not supported by the case law, Goodyear fails to meet its heavy burden of showing that the Magistrate Judge's ruling, though cursory, was clearly erroneous.[7]

This objection is overruled.

**(4)** ***Documents Shared With "Potential Investors" (Other than Alliacense)***

Goodyear objects to the denial by the Magistrate Judge of its request that Coda be ordered to produce the estimated 200 documents in its privilege log that are described as having been shared with at least twenty-eight different "potential investors[,]" as well as at least another 600 documents involving Dan Jackson as a third-party potential investor. (Doc. No. 169 at 6480.) Goodyear argues that, since the Court has already determined that "by sharing the Brown Opinion with potential investor Dan Jackson, Coda cannot properly claim privilege over [it][,]" (*id.*, quoting Doc. No. 139), Coda has "likewise waived by sharing privileged communications with other potential investors as part of Coda's sales pitch to bring them in as equity investors—a commercial, not legal, interest." (*Id.*, citing *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 348 (N.D. Ohio 1999) (adopting the "narrower view" in which "the parties must have 'a *common legal*, as opposed to commercial, interest'" and "more than 'merely *concurrent* legal interests'") (emphases in original) (further citations omitted).)

---

[7] Goodyear's argument with respect to its substantial need for this discovery, which more particularly addresses only the Jackson Excel Notes and the FH Claim chart, is addressed below.

13

In opposition, Coda argues that Goodyear ignores the record in challenging the Magistrate Judge's ruling. In particular, in its briefing on the issue, Coda had pointed specifically to excerpts of Jackson's deposition where it was established that Jackson had created the relevant documents at the direction of counsel in November 2015, *after* this lawsuit was filed and while Goodyear's motion to dismiss was pending. (Doc. No. 199 at 6767, citing record documents.) At the time, Jackson was a consultant to Coda (pursuant to a consulting agreement under which Jackson agreed to advise and assist in protection of Coda's intellectual property) and was already a substantial investor in Coda. (*Id*.) Counsel also assisted Jackson in the production of some of the documents Goodyear seeks. (*Id*. at 6767–68.)

The Magistrate Judge conducted an *in camera* review of the relevant documents and, thereafter, accepted Coda's position with respect to their protection by privilege and/or work-product. This Court finds no clear error in that ruling.

Accordingly, Goodyear's objection with respect to the Magistrate Judge's ruling as to these particular documents is overruled.

**(5)** ***Clawed-Back Documents Shared With Expert***

Goodyear notes in its objections that, on January 29, 2020, it notified Coda of a potential inadvertent production of 30 documents, three of which Goodyear seeks here: the "Master IP Presentation," the "'586 Co-Invention Discussion," and the "DPJ Patents Review." (Doc. No. 169 at 6482, citing Doc. No. 110-2; Doc. No. 144.) Coda clawed these documents back in August 2020, and Goodyear argues that the belatedness of this claw-back operated as a waiver. (*Id*.) According to Goodyear, Coda further waived protection by providing these documents to its expert, Dr. Coughlin, who reviewed them. (*Id*. at 6482–83, citing *Reg'l Airport Auth. of Louisville v. LFG,*

14

*LLC*, 460 F.3d 697, 717 (6th Cir. 2006) (citing cases for the proposition that Rule 26 requires disclosure of all documents, including attorney opinion work product, given to testifying experts).)

Although Coda's opposition does not appear to address these three documents specifically, Coda is correct that, after the 2010 amendments to Rule 26, there is no longer a bright-line rule mandating disclosure of all documents given to testifying experts. *See, e.g.*, *Picken v. Louisville Ladder, Inc.*, Case No. 11-13044, 2013 WL 12182395, at *2 (E.D. Mich. Sept. 26, 2013). The controlling law cited by the Magistrate Judge's ruling relating to another document requires that the key inquiry is whether the expert "considered" the inadvertently provided document in forming an opinion. (Doc. No. 199 at 6775, citing Doc. No. 190 at 6672.[8]) If the expert never read, reviewed, or considered the inadvertently provided document, there is no waiver, and disclosure is not required. (*Id.*)

Goodyear has not established that any expert "read, reviewed, or considered" the relevant documents.

Finding no clear error in the Magistrate Judge's ruling, the Court overrules Goodyear's objection with respect to these three documents.

**(6), (7) and (8)** *The Jackson Excel Notes, the FH Claim Chart, and Substantial Need*

Goodyear argues that, "'[b]ecause work product protection may hinder an investigation into the true facts, it is narrowly construed.'" (Doc. No. 196 at 6748, quoting *Clear Cast Grp., Inc. v. Ritrama, Inc.*, No. 1:09-cv-169, 2011 WL 13334451, at *6 (N.D. Ohio Sept. 15, 2011 (collecting cases).) "'The work product doctrine does not protect from disclosure the underlying facts known

---

[8] The Magistrate Judge correctly quoted from the 2010 Advisory Committee note indicating that "[t]he refocus [of the Rule] on 'facts or data' is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel[,]" while also intending that "'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients."

15

to the party or her counsel, even if acquired in anticipation of litigation.'" (*Id.*, quoting *Clear Cast Grp.*) Goodyear argues that the Magistrate Judge's *in camera* review of the documents showed that they contain purely factual information. (*Id.* at 6748–49, listing the particular facts.)

Goodyear further argues that Coda has failed to even try to show that anything in either of these documents reflects an "'attorney's mental impressions, opinions, conclusions, judgments or legal theories.'" (*Id.* at 6749, quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986).) According to Goodyear, Coda has taken an "all or nothing" approach without proving the documents are entitled to protection.

Moreover, and importantly, Goodyear argues that both of these documents are unique impeachment evidence for which Goodyear has a substantial need. "'Substantial need' requires a showing that the materials sought bear on a material fact at issue and the ability of the discovering party to prepare its case." (*Id.* at 6749–50, citing *Linetsky v. City of Solon*, No. 1:16-cv-52, 2016 WL 5402615, at *3–4 (N.D. Ohio Sept. 28, 2016) (substantial need for material that is "highly relevant" to a "pivotal issue"); *Mantell v. Health Prof. Ltd.*, No. 5:11-cv-1034, 2012 WL 12892199, at * 2 (N.D. Ohio Feb. 3, 2012) (substantial need for notes which "include recordings of conversations held much closer in time to the event than any discovery depositions" and noting it is "possible that the notes may also contain party admissions").)

Following an *in camera* inspection, the Magistrate Judge concluded that the Jackson Excel Notes were work product "as they were prepared at the direction of counsel in anticipation of litigation[.]" (Doc. No. 178 at 6581.) Pointing out that, under Rule 26(b)(3), work-product documents may be discovered only if they are otherwise discoverable under Rule 26(b)(1) and the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means, the Magistrate Judge concluded

16

that the first requirement was not met because the Jackson Excel Notes are protected by attorney-client privilege. The Magistrate Judge further found no waiver by Coda because she credited as "truthful" Coda's assertion that it believed it had responded to Goodyear's January 2020 email warning of a possible inadvertent production by Coda. (*Id.*)

The Magistrate Judge also concluded that the FH Claim Chart was work product and that "Rule 26(b)(3) was not met because Goodyear has already been supplied the underlying discoverable facts by other means and therefore does not have a substantial need." (*Id.* at 6582.)

The Court concludes that the Magistrate Judge's findings with respect to substantial need are clearly erroneous. First, even assuming that the Jackson Excel Notes are work-product, the Court perceives no reason for assigning attorney-client privilege to the Notes and the Magistrate Judge's Order throws no specific light on this conclusion. Therefore the Court rejects as clearly erroneous the finding that the Jackson Excel Notes are not otherwise discoverable. In addition, the Court rejects as clearly erroneous the finding that Goodyear has been supplied by other means the underlying discoverable facts in the FH Claim Chart; neither the Magistrate Judge nor Coda give any support for this finding.

Rather, the Court finds compelling the following very specific arguments made by Goodyear regarding its substantial need for these two documents:

> (1) they are the only documentary evidence of what Mr. Hrabal recalls (and does not recall) saying to Goodyear in 2009; (2) they are the only internal Coda documents identifying any alleged trade secrets; (3) they were created at a time closer to the events in question; and (4) they are unique impeachment evidence.

(Doc. No. 196 at 6751.)

As pointed out by Goodyear, Coda has always contended that its alleged trade secrets were orally disclosed to Goodyear during two critical meetings in 2009. In resolving an earlier discovery dispute in this case, this Court ruled, over Coda's objection:

17

> Under the peculiar circumstances of this case, where the alleged disclosure of trade secrets was *entirely oral*, the danger of plaintiffs "molding" their claims by way of subsequent supplementation of their original recollection of those two 2009 conversations is of particular concern. Plaintiffs claim they *told* defendants their trade secrets and defendants thereafter misappropriated them. Under that scenario, it is entirely reasonable for defendants to request, by way of Interrogatory No. 1 [asking Coda to set forth in detail everything that was said during the two 2009 meetings, as best that Coda could recall], that plaintiffs supply a "closed" recital of their recollection of what was orally imparted in the two meetings of limited duration in 2009.

(Doc. No. 82 at 2671.) Goodyear argues that Coda's "closed" response to Interrogatory No. 1[9] is entirely at odds with the Jackson Excel Notes[10] and the FH Claim Chart,[11] and there is no other reliable source for such impeachment evidence. (Doc. No. 196 at 6751.) Goodyear's position is correct in the particular context of this case, the underlying factual allegations, the case law, and the federal rules regarding discovery.

---

[9] A copy of Coda's response can be found at Doc. No. 204-1, beginning at page ID# 6854.

[10] For example, in a letter to Coda's counsel from Goodyear's counsel dated July 10, 2020 wherein Goodyear disputed Coda's attempted belated claw-back of the Jackson Excel Notes, Goodyear identifies several inconsistencies and unique impeachment information as follows:

> Mr. Jackson's Notes memorialize facts concerning Coda's alleged trade secrets as of November 2015. Generally, Mr. Jackson's Notes record facts relating to whether Mr. Hrabal (Coda's C.E.O.) recalled disclosing alleged trade secrets to Goodyear, how Goodyear allegedly used them, and public disclosure issues associated with each of them. Mr. Jackson's Notes also reflect his interview of Mr. Hrabal concerning what Mr. Hrabal could recall of the two meetings with Goodyear in 2009, and state that Mr. Hrabal could not recall whether he discussed with Goodyear several of Coda's alleged trade secrets. Mr. Jackson divided Coda's alleged trade secrets into two categories: those for which Coda had "some hope" of arguing secrecy and those that were almost certainly published by Coda. The substance of this document impeaches Coda's claims in this case, directly contradicts Coda's interrogatory responses regarding what Mr. Hrabal recalled disclosing to Goodyear, and suggests that Coda brought and maintains its trade secrets claims against Goodyear in bad faith.

(Doc. No. 110-1 at 2942–43.)

[11] In the same letter cited in n. 10, Goodyear states in relevant part as to the FH Claim Chart: "The metadata in the document produced to Goodyear indicated that its author was Frantisek Hrabal and that its creation date was in September 2013. The FH Claim Chart generally analyzes the claims of certain Goodyear patents at issue in this case vis-à-vis Coda's prior patent filings and other public disclosures. The document substantially impeaches Coda's claims that Goodyear's patents disclose Coda's alleged trade secrets." (Doc. No. 110-1 at 2944.)

Goodyear's objections to the Magistrate Judge's discovery orders with respect to the Jackson Excel Notes and the FH Claim Chart are sustained. Both documents must be produced by Coda.

### III. Conclusion

For the reasons set forth herein, Goodyear's objections (Doc. No. 169 and 196) in so far as they relate to its discovery requests in Doc. No. 103 and Doc. No. 110, as supplemented by Doc. No. 144, are overruled in part and sustained in part.

In particular, all objections are overruled *except* as to the Alliacense Chart II (for which privilege was waived) and the Jackson Excel Notes and FH Claim Chart (for which production is warranted under the "substantial need" doctrine).

**IT IS SO ORDERED**.

Dated: February 4, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**