# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CODA DEVELOPMENT s.r.o., CODA INNOVATIONS s.r.o., and FRANTISEK HRABAL,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE GOODYEAR TIRE & RUBBER COMPANY and ROBERT BENEDICT,**<br><br>Defendants. | Case No. 5:15-CV-01572-SL<br><br><br>JUDGE SARA LIOI |

## SUPPLEMENT TO DEFENDANTS' RULE 50(a) MOTION
## FOR JUDGMENT AS A MATTER OF LAW

Defendants—collectively, "Goodyear"—submit this short supplement in further support of their motion for judgment as a matter of law (JMOL) pursuant to Fed. R. Civ. P. 50(a). This supplement seeks to provide the Court with some helpful focus on three of the most important issues presented by Goodyear's motion: (i) the indefiniteness and public disclosure of alleged trade secret 16; (ii) the indefiniteness and public disclosure of alleged trade secret 24; and (iii) the necessary dependency of plaintiffs'—Coda's—damages theory on a specific license to a defined patent with defined claims, which is wholly absent from their case.

## I. ALLEGED TRADE SECRETS 16 AND 24

"If 16 and 24 come out, then we have a big problem." Dkt. 361 at 2062:22 (statement of Mr. Cloern). They should come out.

### A. ALLEGED TRADE SECRET 24

Trade secret 24 is stated in the following terms: "Coda's knowledge regarding the optimal location for placement of a pump in a tire for tire manufacturers, namely, in the sidewall close to, and above, the rim where the tire cyclically deforms in response to deformation."

Even putting aside the indefinite "Coda's knowledge regarding" portion, a problem that affects so many of Coda's alleged trade secrets, this alleged trade secret would reduce to "placement of a pump in the tire sidewall close to, and above, the rim where the tire cyclically deforms." Coda and Hrabal agree that placement of the pump in the sidewall close to the rim, where the tire sidewall cyclically deforms, was public:

> Q. So locating a peristaltic pump in the tire sidewall near the rim in an area where it cyclically deforms was not a trade secret?
>
> A. This is public.

Dkt. 356 at 625:9-12.

Hrabal also testified that Figure 3(h) of his 2007 PCT application (D-043) discloses placement of a pump in the tire sidewall close to **and above** the rim.

First, Mr. Hrabal agreed that the "ancillary structures" in the 2007 PCT application could be executed as lug bosses. These two designs (ancillary structure and lug boss) are shown generally in Figures 2(b) and 2(c) of the 2007 publication.

 

Ancillary Structure (6)  Lug Boss

(Reproduced from the U.S. counterpart for better legibility; *see* Dkt. 356 at 646:3-23 (discussing DDX 3.5, based on D-395 (U.S. counterpart)).)

The difference between an "ancillary structure" and a lug boss design is that a lug boss is part of the tire sidewall:

> Q. Okay, so that's an ancillary structure, whereas in the lug boss rendition, that's not called an ancillary structure. It's part of the tire sidewall?
>
> A. Yes.

(642:7-11.) A lug boss version of Figure 3(h) of the 2007 publication is illustrated by Defendants' demonstrative exhibit 3.16:

2



(Defendants' DDX-3.6 (image cropped))	(2007 publication, Figure 3(h) (D-043))

Hrabal agreed that the 2007 publication teaches that a "hose" (*i.e.*, a pump) can be put into the chamber (1) in Figure 3(h):

> Q. So you could put a pump, a hose, into that chamber, right?
>
> A. Yes.

Dkt. 356 at 665:15-17. With the hose placed into the chamber, the lug boss embodiment looks like this:



Hrabal further agreed that the Figure 3(h) lug boss embodiment, with the hose, has a pump chamber near and above the rim:

3

> Q. If one does that with the 3H embodiment, lug boss embodiment, do you agree that the hose in that embodiment would be near and above the rim?
>
> A. Yes.
>
> Q. Okay. And in an area of the tire that cyclically deforms, correct?
>
> A. That cyclically deforms here, it refers to the location within the tire sidewall itself, in the tire sidewall.
>
> Q. The lug box [sic; boss] is in the tire sidewall, right?
>
> A. Lug boss is tire sidewall extension between the tire and the rim. It's just –
>
> Q. It's part of the sidewall?
>
> A. Yes.

*Id.* at 665:23-666:11. In short, trade secret 24 was known from the 2007 publication.

Hrabal attempted to evade the consequences of these indisputable facts by asserting that trade secret 24 does not actually mean what it says. In this regard, the Court will recall that Hrabal contradicted himself many times on whether the lug boss is part of the sidewall. *Compare id.* at 622:19-623:5 ("in the sidewall"), 624:14 ("part of the tire sidewall"), 642:7-11 ("part of the tire sidewall") *with id.* at 658:6-10 ("not in the sidewall," but rather "on" the sidewall); *see generally id.* at 661:6-9 (overruling Mr. Cloern's objection to continued questioning of Hrabal and noting: "The reason I was allowing it is because he keeps changing his answer. And I'm not sure what his final answer is.").

Elsewhere, Hrabal asserted that the pump in the 2007 PCT application is not "near and above" and "close to and above the rim," notwithstanding the images to the contrary, but "because it is crushing the peristaltic pump against the rim." *Id.* at 655:25-656:14. Yet trade secret No. 24 does not say "in the sidewall excluding the lug boss," nor does it say "in the sidewall but without having rim crush." He went further, arguing that the location in Figure 3(h) is not "optimal," even though it is near and above the rim. *Id.* at 656:15-24.

4

This issue cannot go to the jury. Trade secret 24 is either clear and disclosed by the 2007 publication, or it is indefinite. Does the sidewall in the alleged trade secret exclude a lug boss, or require the absence of rim crush, or some other vague, unspecified, "optimal" location? This deliberate obfuscation, this "word salad" of contradictory answers, violates the Court's Order requiring Coda to describe its trade secrets with particularity. This Court should grant JMOL in favor of Goodyear on alleged trade secret 24.

B.  **ALLEGED TRADE SECRET 16**

The issue with alleged trade secret 16 is similar. It provides: "Coda's design, development, and testing regarding the feasibility and improvements in self-inflating tire technology by embedding a tube in a groove in a tire sidewall to act as a peristaltic pump."

Even if one ignores the vague "design, development, and testing" language that begins Coda's statement of this trade secret, the alleged trade secret reduces to embedding a tube in a groove in a tire sidewall. Yet this design is shown in the Figure 3(h) "lug boss" embodiment depicted above. Hrabal admitted that a "slot = gro[o]ve" (D-152); that cannot be denied. And that means that Coda disclosed this alleged secret in the 2007 PCT application. (Not to mention the 2008 *Tire Technology* article that called this same structure a "crevice in the tire sidewall," (D-058).)

Coda, however, contends that alleged trade secret 16 was not publicly disclosed because (according to Coda) a slot is *not* a groove. Nor is a "crevice." But if that's the case, then alleged trade secret 16 is indefinite, because no one could tell the difference between the tire with the "secret" groove and the publicly disclosed ones with a "slot" or "crevice"—and not with any reasonable certainty. Coda's attempted cross-examination of Dr. Sprague just this morning served as demonstration of these linguistic games.

5

Either way, this "secret" can't go to the jury. Judgment as a matter of law on alleged trade secret 16 is in order.

## II. THE CRITICAL NEED FOR IDENTIFICATION OF THE PATENT CLAIMS THAT CODA WOULD HAVE OBTAINED ON THE TRADE SECRETS

We showed the Court in our earlier paper (Dkt. 360 at 13-15) that Coda's and Ms. Webster's theory of actual loss depends, necessarily, on the presence of a hypothetical patent license (because a license to a bare trade secret would be of minimal value to Goodyear and impossible to sublicense once Goodyear had commercialized a single tire). We also showed that it was Coda's obligation to "identify the potential claims that would have supported a patent," show that applications for patents would have been filed containing those patent claims, and that those applications "would have resulted in the issuance of patents for [Coda's alleged] inventions, citing and quoting this Court's decision in *Davis v. Brouse McDowell*, No. 5:08CV1356, 2009 WL 10703128, at *11, *13 (N.D. Ohio May 22, 2009), *aff'd*, 596 F.3d 1355 (Fed. Cir. 2010), and the First Circuit's decision in *Russo v. Baxter Healthcare Corp.*, 140 F.3d 6, 10-11 (1st Cir. 1998), which held a trade-secret plaintiff's theory that he "would . . . have obtained foreign patents" to be a "totally speculative" one, given that he "never applied for such patents (so that, for example, it can never be known whether some wholly separate and different reason would have caused rejection of the applications)."

Why is this required? Because for Webster's house of cards to hold together as a matter of causation, at a minimum Goodyear would have to have had no choice but to take a license to Coda's hypothetical patent or patents. (In the patent world, this is called a "blocking" patent, *see, e.g., Acorda Therapeutics, Inc. v. Roxane Labs., Inc.*, 903 F.3d 1310, 1327 (Fed. Cir. 2018), meaning that no one could make a competing product without a license to that patent.) That's exactly what Webster testified to: "so long as there is a technology and trade secret that's

6

included in the bundle that would be a blocking technology, that would require the payment of the full royalty amount." Dkt. 359 at 1531:19-22. But she didn't do that patent analysis; she said she was relying on Hrabal and Coughlin for that. *Id.* at 1532:3-4 ("That's a technical issue for Mr. Hrabal and Dr. Coughlin.").

Yet neither of them provided that evidence. And while each was keen to make the conclusory statement that claims 16 and 24 are "foundational" technology, they still never "identif[ied] the potential claims" that might have covered this technology, as *Brouse McDowell* requires. That would be a fatal failure of proof for any case requiring proof of causation, but it's especially true because of the record that's been made here—without at least the articulation of a hypothetical claim, no one can tell whether Coda's hypothetical patent would have been a "blocking technology," to quote Ms. Webster.

As noted above, the allegedly "foundational" technology is the alleged tube-in-a-groove, and the pump-in-a-tire-sidewall-close-to-and-above-the-rim. But what would that patent look like? What would those claims look like? We don't know. What we do know is that one patent claim would have had to have claimed at least "a tube in a groove," and another would have had to have claimed a pump "close to, and above, the rim where the tire cyclically deforms." And there would be serious doubts that such claims could possibly have been found novel (*see* 35 U.S.C. § 102) or nonobvious (*id.* § 103), and issued as a patent in light of Coda's own prior disclosures. Just with respect to alleged trade secret 16, its only chance to be found novel and nonobvious over the 2008 *Tire Technology* article ("crevice") and the 2007 PCT application ("slot") would be for Hrabal to have distinguished his "groove" from a "slot" or a "crevice," using the same fine distinctions that Mr. Cloern offered at the Rule 50(a) hearing, and that Mr. Richey tried to use with Dr. Sprague. Dkt. 361 at 1947:1-14. But that would give Coda and

Hrabal such narrow patent protection that it could not possibly be a "blocking" patent—as Webster admitted her theory required—but would instead be a narrow patent that could be easily avoided by using one of the public-domain variants that Coda and Hrabal had already disclosed—a tube in a crevice, or a tube in a slot.  (We don't concede that they're different things, but we do assume it for purposes of this part of our motion.)  And no reasonable jury could conclude that Goodyear would pay as much as $246 million for a license to a patent that it could avoid for free by putting the tube in a crevice or slot rather than a "groove."

The same goes for the claim that might have been sought on alleged trade secret 24.  A tube "close to, and above the rim where the tire cyclically deforms in response to deformation" would have difficulty leaping the novelty and nonobviousness hurdles in light of all of the prior disclosures, in particular figure 3(h) of the 2007 PCT application.  It would also have serious problems with the requirement that patent claims be drafted with definiteness, 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").  The case law is replete with holdings that terms like "near," a preposition that "signifies physical proximity and is a term of degree that is susceptible to subjective interpretation," is indefinite as a matter of law when used in a patent claim and not defined in the specification.  *In re Neurografix ('360) Patent Litigation*, 201 F. Supp. 3d 206 (D. Mass. 2016); *see also Advanced Aero. Techs., Inc. v. United States*, 124 Fed. Cl. 282, 292 (2015) (same; as applied to patent claim term "near the point of engagement").

So it's highly doubtful that Coda could have ever gotten the patents that Webster says are the essential foundation of her damages model.  The more important point, though, is that neither she nor Coda ever tried to make that showing.  And without that foundation, her house of cards

8

crumbles.  No reasonable jury could conclude that Coda and Hrabal would have gotten a blocking patent.  Judgment as a matter of law should be granted.

Dated: September 15, 2022                        Respectfully submitted,

<u>/s/  David M. Maiorana</u>
Calvin P. Griffith (0039484)
David M. Maiorana (0071440)
John C. Evans (0081878)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
cpgriffith@jonesday.com
dmaiorana@jonesday.com
jcevans@jonesday.com

Gregory A. Castanias (*pro hac vice*)
Tracy A. Stitt (0079949)
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC  20001
gcastanias@jonesday.com
tastitt@jonesday.com

*Attorneys for Defendants The Goodyear Tire & Rubber Company and Robert Benedict*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September, 2022, a copy of the foregoing was electronically filed with the Court and was served upon counsel of record via the Court's electronic filing system.

                                                 */s/ David M. Maiorana*
                                                One of the Attorneys for Defendants