# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **CODA DEVELOPMENT s.r.o., CODA INNOVATIONS s.r.o., and FRANTISEK HRABAL,** | Case No. 5:15-CV-01572-SL |
| Plaintiffs, | |
| v. | JUDGE SARA LIOI |
| **THE GOODYEAR TIRE & RUBBER COMPANY and ROBERT BENEDICT,** | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 50(b)
MOTION FOR JUDGMENT AS A MATTER OF LAW AND, IN
THE ALTERNATIVE, TO REMIT EXCESSIVE PUNITIVE AWARD**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 1

    A.    The Court Should Grant JMOL As To Trade Secrets 7, 11, 20, 23, and 24.......... 1

        1.    JMOL As To Trade Secret 24 ................................................... 3

        2.    JMOL As To Trade Secret 7 ..................................................... 6

        3.    JMOL As To Trade Secret 11 ................................................. 10

        4.    JMOL As To Trade Secret 20 ................................................. 12

        5.    JMOL As To Trade Secret 23 ................................................. 14

    B.    No Substantial Evidence Demonstrates "Actual Malice".................................. 15

    C.    Alternatively, The Punitive Damages Award Should Be Reduced .................... 16

        1.    The OUTSA's Cap On Punitive Damages Is Facially Constitutional................................................................................. 16

        2.    The OUTSA's Cap Is Constitutional As Applied To Coda .................... 19

III.    CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Arbino v. Johnson & Johnson,*
880 N.E.2d 420 (Ohio 2007)...............................................................................16, 17, 18, 20

*Arnos v. MedCorp.,*
No. L-09-1248, 2010 WL 1730139 (Ohio Ct. App. Apr. 30, 2010).......................................11

*Atwood v. UC Health,*
No. 1:16-CV-593, 2019 WL 6877643 (S.D. Ohio Dec. 17, 2019)........................................18

*Biomedino, LLC v. Waters Techs. Corp.,*
490 F.3d 946 (Fed. Cir. 2007)..........................................................................................7, 8

*BMW of North Am. Inc. v. Gore,*
517 U.S. 599 (1996)............................................................................................................19

*Brandt v. Pompa,*
No. 2021-0497, 2021 WL 4713226 (Ohio Oct. 1, 2021)......................................................18

*Brandt v. Pompa,*
No. 2021-0497, 2021 WL 6064377 (Ohio Dec. 14, 2021)...................................................18

*Brandt v. Pompa,*
No. 2021-0497 (Ohio) (noticed Apr. 21, 2021)..........................................................1, 18, 19

*Butte Local Dev. Corp. v. Masters Grp. Int'l, Inc.,*
No. DV-11-372, 2014 WL 2895577 (Mont. Dist. Mar. 25, 2014) ........................................20

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.,*
53 F.4th 368, 2022 WL 16846585 (6th Cir. 2022) ........................................................ passim

*Champion Foodservice, LLC v. Vista Food Exch., Inc.,*
No. 1:13-CV-1195, 2016 WL 4468001 (N.D. Ohio Aug. 24, 2016).....................................10

*Cincinnati Indus. Mach., Inc. v. VMI Holland BV,*
No. 1:09-cv-604, 2012 WL 13109820 (S.D. Ohio Aug. 15, 2012) ....................................9, 11

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,*
532 U.S. 424 (2001)................................................................................................16, 17, 18, 19

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)................................................................................17, 18

*Fencorp, Co. v. Ohio Kentucky Oil Corp.*,
    675 F.3d 933 (6th Cir. 2012) ...................................................................17

*Fitness Quest Inc. v. Monti*,
    No. 5:06CV02691, 2007 WL 2359821 (N.D. Ohio Aug. 16, 2007) ........................7

*Galayda v. Lake Hosp. Sys., Inc.*,
    644 N.E.2d 298 (Ohio 1994)....................................................................17

*In re Heparin Prod. Liab. Litig.*,
    No. 09-HC-60186, 2011 WL 3875361 (N.D. Ohio Sept. 1, 2011)........................18

*Lindenberg v. Jackson National Life Insurance Co.*,
    912 F.3d 348 (6th Cir. 2018) ...................................................................18

*Masters Grp. Int'l, Inc. v. Comerica Bank*,
    380 Mont. 1 (Mont. 2015)......................................................................20

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
    855 F. App'x 701 (Fed. Cir. 2021) ........................................................3, 5

*Roginski v. Shelly Co.*,
    31 N.E.3d 724 (Ohio Com. Pl. Aug. 21, 2014)...................................19, 20

*Simpkins v. Grace Brethren Church of Delaware*,
    75 N.E.3d 122 (Ohio 2016).....................................................................19

*State ex rel. Ohio Acad. of Trial Laws. v. Sheward*,
    715 N.E.2d 1062 (Ohio 1999)..................................................................17

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).........................................................................19, 20

*Sunkin v. Hunter Eng'g Co.*,
    No. 5:15-CV-892, 2016 WL 5390408 (N.D. Ohio Sept. 27, 2016).........................8

*UOP LLC v. Exterran Energy Sols.*,
    No. 4:21-CV-02804, 2021 WL 8016712 (S.D. Tex. Sept. 28, 2021).......................7

*Zoppo v. Homestead Ins. Co.*,
    644 N.E.2d 397 (Ohio 1994)....................................................................17

**STATUTES**

35 U.S.C. § 112(f)........................................................................................................7, 8

O.R.C. § 1333.63(A)........................................................................................................18

O.R.C. § 1333.63(B)...................................................................................................16, 20

O.R.C. § 2315.18 ......................................................................................................18, 19

**OTHER AUTHORITIES**

Fed. R. Evid. 701(c).......................................................................................................10

## I.      INTRODUCTION

Alleged trade secrets 7, 11, 20, 23, and 24 remain moving targets, even after Coda failed to define them with particularity before trial and at trial in defiance of this Court's Orders.  Coda's opposition not only fails to muster coherent trade secrets or substantial evidence that could possibly support the jury's verdict; that opposition actually reinforces the indefiniteness of these five "secrets."  Coda's trade secret claim is and has always been meritless.  JMOL of no liability should be granted.

As for the punitive-damages verdict, it of course would go away if the Court grants Goodyear's JMOL motion.  It could not stand in any event:  The jury's implicit finding of "actual malice" is unsupported—Goodyear could not possibly have known it was misappropriating trade secrets in 2009 when Coda itself couldn't even identify those secrets (such as it did) until after 2015.  And the jury's wild punitive-damages award far exceeded the OUTSA's treble-damages statutory cap, and so would have to be reduced in any event.  Coda concedes this under governing law, but nevertheless asks this Court to ignore the OUTSA and hold, contrary to Ohio and U.S. Supreme Court precedents, that the OUTSA's punitive-damages cap is unconstitutional on its face and as applied.  That challenge is meritless—its central authority, *Brandt v. Pompa*, involves neither the OUTSA nor punitive-damages caps.

## II.      ARGUMENT

### A.      The Court Should Grant JMOL As To Trade Secrets 7, 11, 20, 23, and 24

Even now, Coda's "trade secrets" continue to morph, in manifest disregard for this Court's orders.  As the Court said at trial:

> [T]he Court issued orders early on in the case to try to have the parties, particularly the plaintiff, define, because everything was oral.  And so that was the whole purpose of the Court's order, was to define . . . with specificity . . . each and every trade secret being claimed.  And so what we're going to do is we're going to stick to the rule there, that if it wasn't defined as part . . . of the definition, certainly you can't expand upon that.

Dkt. 353 at 173:22–174:8; *see also* Dkt. 355 at 442:18–443:5; Dkt. 82 at 2665 (ordering Coda to define its secrets "with particularity" in "a complete list").  But "expand" is what Coda did with its trade-secret definitions, and now it must face the consequences—and the Court must "decid[e] the legal questions raised by [Goodyear's Rule 50(b)] motion."  Dkt. 364 at 2650:16–24.

Coda points to the verdict as proof that its "secrets" were adequately defined.  Dkt. 385 at 24918–19.  But that question has always been for the Court, and the jury was not asked to decide indefiniteness.  Dkt. 369 at 24223.  Simply put, JMOL is compelled here because Coda never defined trade secrets 7, 11, 20, 23, and 24 with particularity; that's a question for this Court, not the jury; even if it had been for the jury, Coda has no evidence of definiteness; and, in all events, Coda has insufficient evidence of these five secrets' secrecy or misappropriation.

Coda seems to think it has found a silver bullet in the Sixth Circuit's new decision in *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 2022 WL 16846585 (6th Cir. 2022).  *See* Dkt. 385 at 24922–23.  But *Caudill* only confirms why Goodyear is entitled to JMOL.  Applying Kentucky's similar trade-secret statute, the Sixth Circuit emphasized the rule that has been Coda's undoing since day one:  A trade-secret plaintiff *must* define its alleged secret with particularity sufficient "to separate the trade secret from matters of general knowledge in the trade or special knowledge of persons skilled in the trade."  2022 WL 16846585 at *5.  It added: "If a plaintiff 'effectively assert[s] that all information in or about its [product] is a trade secret,' then it brings a case 'both too vague and too inclusive,' and does not allow a jury to 'separate the trade secrets from the other information that goes into any' product in the field."  *Id.* (quotations omitted).  And plaintiffs asserting combinations "must 'offer *concrete evidence*'" to prove the *combinations* were both secret and misappropriated.  *Id.* (citations omitted; emphasis added).

But when it came to complying with those rules of definiteness and concreteness, it turns out that the *Caudill* plaintiff had the kind of case Coda never could have hoped to muster: Caudill had real evidence of *bona fide* secrets—a poached employee who stole thousands of physical R&D files and then implemented his former employer's specific process for his new employer. *Id.* at *1–*2, & *6.[1]  *Caudill*'s misappropriation theory wasn't conjured *post hoc* by investors and lawyers based on uncorroborated oral disclosures. Coda never had any coherent secrets or concrete evidence of their secrecy or misappropriation. None.

Coda has no answer on the merits for *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701 (Fed. Cir. 2021), which, like *Caudill*, supports JMOL in Goodyear's favor. In *Olaplex*, the Federal Circuit *reversed* a misappropriation verdict, holding that the district court erred by not finding, as a matter of law, that the plaintiff didn't define its secrets with adequate particularity. *Id.* at 702. The *Olaplex* jury found that "[plaintiff] possessed specific, identifiable Trade Secrets that [defendant] misappropriated." *Id.* at 703. But *Olaplex* held, *as a matter of law*, that "because of the absence of particularity, *we cannot say that the evidence allowed a reasonable finding that information . . . was even a trade secret*." *Id.* at 710 (emphasis added). That's been Goodyear's point all along: Because of the absence of particularity at the outset, the jury's subsequent fact-finding job was rendered impossible. *See* Dkt. 369 at 24223.

Below, Goodyear individually addresses the lack of evidence to support the jury's verdict as to trade secrets 7, 11, 20, 23, and 24. The Court should grant JMOL of no liability.

### 1.    JMOL As To Trade Secret 24

*Indefinite*. Coda doesn't deny that it morphed trade secret 24 at trial to add (1) a pump in a "normal" or "traditional" sidewall that (2) can't be operated by "rim crush." *See* Dkt. 385 at

---

[1] The Sixth Circuit in *Caudill* didn't hold that definiteness is for the jury; it simply noted that the jury "agreed" with the district court's conclusion. 2022 WL 16846585 at *5.

24920–24; *see also* Dkt. 376 at 24293–95.  Coda now doubles down on these additions, saying that Hrabal's testimony about the flap solution "being crushed against the rim" (Dkt. 385 at 24923 (quoting Dkt. 355 at 361:5–6)) and "being pinched . . . from both sides by the tire" (*id.* (quoting Dkt. 355 at 361:24)) could have been credited by the jury "to understand trade secret 24."  *Id.*

None of that was in "trade secret 24" written by Coda.  There's nothing there about "rim crush" or "normal" sidewalls.  And the Court has already noted this:  "[S]o that it would prevent rim crush is not in the trade secret."  Dkt. 364 at 2614:20–24.  So Coda is not just *admitting* relying on elements that are "not in the trade secret," *id.*, it's affirmatively arguing that the jury should have been allowed to rely on these improperly added-in elements to "understand" the inadequate secret that Coda drafted.  The whole point of the Court's requirement of early disclosure of secrets was so that additional "understanding" couldn't be added later on.  Dkt. 355 at 443:3–5 ("THE COURT . . . [U]nless you elaborated in your answer to the interrogatory, you can't now elaborate.  That was the whole point of saying it was going to be a closed record.");  *see also* Dkt. 365 at 2690:24–2691:4.

Coda continues to play word games with this secret.  It now claims that it excludes published pumps that were undeniably "close to and above the rim" (as described in the closed definition) because they were supposedly "on" the rim.  *See* Dkt. 385 at 24925 and n.4.  Coda's closed definition never said "close to and above *but not on* the rim."

But that only begets more problems for Coda's case.  Figure 7(a) of the 2007 PCT publication (Ex. D-43), which is shown below, discloses a pump (item 1) that is close to and above but not "on the rim" (item 7):

4



The 2007 PCT is obviously not a secret.  It is part of the public's knowledge, because Coda and Hrabal put it there when it published.  But, given Coda's amorphous definition of trade secret 24, how could anyone "separate the trade secret from matters of general knowledge in the trade or special knowledge of persons skilled in the trade" as the law requires?  *Caudill*, 2022 WL 16846585, at *5 (quotation omitted).  That's why indefinite trade secrets are such a scourge, and are not tolerated as a matter of law.  *Id.*; *Olaplex*.  855 F. App'x at 710.  With its all-things-to-all-people definition, Coda misled the jury with handwaving about "normal" or "traditional" sidewalls, not operated by "rim crush," or pumps that are not "on the rim"—none of which appeared in its closed definition of this secret.  Dkt. 376 at 24293–94.

***Not Secret.***  No reasonable jury could have found that Coda proved that trade secret 24 was actually a secret.  Coda insists that "there is no clear admission that would provide a basis for setting aside the jury's verdict."  Dkt. 385 at 24924.  The question is whether there was sufficient evidence of secrecy put forward by Coda, not just "admissions."  But there were admissions aplenty:  Hrabal admitted that "locating a peristaltic pump in the tire sidewall near the rim in an area where it cyclically deforms was *not a trade secret*."  Dkt. 356 at 625:9–12.  Hrabal also admitted that a pump near and above the rim where the tire cyclically deforms *wasn't secret*:

> Q. As I understand your testimony, Mr. Hrabal, you are now contending that the lug boss is not near and above the rim.  Do I have that right?

5

> A. The lug boss is on the rim near and above the rim. . . . The force is caused by the tire coming close to the rim to close the within contained chamber.
>
> Q. Well, the lug boss closes due to deformation forces, correct?
>
> A. In response of the tire deformation, yes.

Dkt. 356 at 662:23–663:15.

> Against this backdrop, Coda resorts to morphing trade secret 24 once again:
>
> Hrabal made clear that a 'lug boss' is not part of a *conventional* tire sidewall. Rather, the lug boss was an *additional layer of rubber* added to the outside layer of the sidewall" and is "always located in between the tire and the rim and *reliant on the rim* to actuate the pump.

Dkt. 385 at 24924–25 (citing Dkt. 356 at 616:18–20, 22) (emphases added). None of that appears in Coda's closed definition of trade secret 24. In fact, here Coda paradoxically relies on Hrabal's admission that a pump close to and above the rim and "part of the tire sidewall" was *publicly known*. Dkt. 356 at 616:10–24. No reasonable jury could deny that Coda publicly disclosed trade secret 24 as articulated by Coda in its closed interrogatory response.

Coda's remaining arguments similarly lack merit. Coda morphs trade secret 24 by claiming that Goodyear distinguished "Coda's prior flap solution, as published in the 2007 PCT" from "the new pump tube location in the tire sidewall that did not rely on the rim to actuate the pump." Dkt. 385 at 24925. But Coda never defined trade secret 24 in terms of "not rely[ing] on the rim to actuate the pump." Neither did Coda define it in terms of "a lower side wall gg grove area slot"—yet another brand-new element that Coda seeks to add after-the-fact. *See id.* at 24926.

### 2. JMOL As To Trade Secret 7

***Indefinite.*** Coda doesn't deny that its closed definition of trade secret 7 requires a multiple-element combination of vague, functional elements without detailing any specific "secret" design that performs those functions. Instead, Coda asserts that *Caudill* somehow saves this secret (but without explaining why). *See* Dkt. 385 at 24928. Coda is wrong again about *Caudill*. As shown

above, *Caudill* only highlights the pervasive factual and legal deficiencies in Coda's case in general, and trade secret 7 in particular.  The *Caudill* plaintiff had physical, concrete proof that went "beyond merely listing technical concepts" and "had a collection of documents that showed the process from the seed all the way to the making of BroccoRaphanin."  2022 WL 16846585 at *6.  And the *Caudill* plaintiff showed that the combination of all elements in its asserted trade secret was both unique and secret.  *Id.* at *5.  Here, Coda has nothing of the sort.  Coda offered zero evidence that its combination secrets, like trade secret 7, pass legal muster under *Caudill*.

As Goodyear showed in its Rule 50(b) motion, Coda's reliance on vague, functional terms in trade secret 7 makes it indefinite.  Dkt. 376 at 24300.  In *UOP LLC v. Exterran Energy Sols.*, the court held that "'disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets, and various concepts, elements, or components that make up designs' do not satisfy the [reasonable particularity] requirement."  No. 4:21-CV-02804, 2021 WL 8016712, at *1 (S.D. Tex. Sept. 28, 2021) (citation omitted).  The same is true here.  Dkt. 376 at 24300.

Coda calls *UOP* "inapposite" because, "even under the exacting standards for claiming an invention in a patent, the law allows for use of functional language."  Dkt. 385 at 24928 and n.6 (citing 35 U.S.C. § 112(f)).  Coda's invocation of patent law is perplexing—*UOP* never mentioned patents at all, let alone § 112(f) of the Patent Act; it recited *trade secret* standards for "reasonable particularity."  Worse, patent-law analogies are unhelpful to Coda's cause.  Section 112(f) lets a patentee write a claim in functional terms, such as a "means for" accomplishing a claimed function—but the deal struck by the statute is that the written description of the patent has to supplement the functional claim with specified, precise structure (*i.e.*, the "means" that the claim references) for performing the function; "[o]therwise, one does not know what the claim means." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007); *see also Fitness*

*Quest Inc. v. Monti*, No. 5:06CV02691, 2007 WL 2359821, at *4 (N.D. Ohio Aug. 16, 2007) (Lioi, J.) ("In return for the opportunity to claim generically, however, 'the applicant must indicate in the specification what structure constitutes the means.'") (quoting *Biomedino*, 490 F.3d at 948).  So even § 112(f) doesn't allow a patentee to assert functional claims without specifying particular structure, like Coda tries to do here.  In the end, even patent law doesn't allow for the drafting of vague, functionally-framed claims, like Coda drafted trade secret 7.

In sum, Coda never described any specific "design and development of a multi-purpose interface for transporting air in a self-inflating tire that can" perform the 10 recited functions.  *See* Dkt. 365 at 2688:9–16.  That makes trade secret 7 indefinite as a matter of law.

***Not Secret.***  Coda bears the burden to prove that its alleged trade secrets were, in fact, secrets.  *Sunkin v. Hunter Eng'g Co.*, No. 5:15-CV-892, 2016 WL 5390408, at *4 (N.D. Ohio Sept. 27, 2016) (citation omitted).  But there's no evidence that trade secret 7 was secret.  Dkt. 376 at 24299.  Coda offers nothing to the contrary in its opposition.  It does cite generically to over 25 pages of testimony regarding Hrabal's development of self-inflating tire technology, arguing from this premise that "[t]he jury could have reasonably credited this testimony in reaching its verdict." Dkt. 385 at 24927 (citing Dkt. 355 at 369–394, 452:15–18, 540:3–9, 542:4–22).  That's wrong.  In the cited testimony, Hrabal never *mentioned* any trade secret, much less the multi-element interface required in trade secret 7.  *See* Dkt. 355 at 369–394.  No reasonable jury could have relied on any of the cited testimony to find that trade secret 7 (or any other trade secret) was actually a secret.

Nothing else cited by Coda even remotely suggests that trade secret 7 was secret.  Coda points to Hrabal's conclusory testimony that he asserted "an interface trade secret."  Dkt. 355 at 452:15–18.  But what was the secret?  Likewise, the existence of a handful of NDAs fails to prove the secrecy of any particular subject matter.  Dkt. 356 at 540:3–9, 542:4–22.

8

"Whether information is a trade secret is a fact-intensive inquiry . . . [that] must be undertaken for *each trade secret [plaintiff] claims*." *Cincinnati Indus. Mach., Inc. v. VMI Holland BV*, No. 1:09-cv-604, 2012 WL 13109820, at *16 (S.D. Ohio Aug. 15, 2012) (emphasis added). Coda identifies no evidence, much less substantial evidence, that trade secret 7 was secret.

***Not Misappropriated.*** Coda offered zero evidence that Goodyear used or disclosed the 10-function interface that Coda recited in alleged trade secret 7. Coda does not deny this in its opposition; instead, Coda insists that "it [doesn't] matter whether Coda established that Goodyear used or disclosed every single element of trade secret 7." Dkt. 385 at 24929.

Coda is wrong. Coda's closed description of trade secret 7 required a *conjunctive* 10-element secret, so it had to "establish that 'the *combination* of known elements or components is unique.'" *Caudill*, 2022 WL 16846585 at *5 (citation omitted; emphasis added). Because such a secret resides in the "combination," which may include known elements, a defendant cannot misappropriate a combination secret by using fewer-than-all of the combination's elements. *Id.*

Here again, Coda played fast and loose: Opposing summary judgment, Coda said that this secret was secret because "Coda disclosed to Goodyear an interface that" performs 10 functions, whereas "[t]he interface described in the 2007 PCT . . . merely generically discloses an air passageway that connects the end of the pump to the atmosphere and to the tire cavity," *i.e.*, only 2 functions. Dkt. 250 at 12433. In discovery, Coda originally said that its secret could have just "one or more" of the 10 recited elements in the combination, but then revised it to include all the elements. *See* Dkt. 297 at 14087; Dkt. 297-3; *compare* Dkt. 290-4 at 13603–604 (Coda initially described the alleged "interface" trade secret as one that "can do *one or more of the following*" 10 functions) *with* Dkt. 290-5 at 13668 (Coda requiring the alleged "interface" to require that it performs all 10 functions, inclusive).

Coda here seeks to have the Court apply a double standard—for determining secrecy, its trade secret is all ten elements, but for misappropriation, the use of any single element will do. Dkt. 297 at 14086–89 & n.2.  That is wrong as a matter of law and common sense.  For example, the world's most famous trade secret—the recipe for Coca-Cola—is a combination of ingredients. The use of one of them—say, carbonated water—is not a misappropriation of the trade secret, even by someone who had learned of the entire combination.[2]

### 3.   JMOL As To Trade Secret 11

*Indefinite.*  Coda's closed description of trade secret 11 never defined what Coda's "knowledge" about the "variant pump tube, groove and chamber dimensions, size and materials" is, or what is the secret "pump tube and groove design to minimize internal friction," or what are the "cross-section designs that minimize stress on compression in order to improve durability." Coda sidesteps these fatal flaws with its "secret" and instead urges that "Hrabal testified specifically at length about a key hurdle he overcame—the problem of the pump tube 'walking away.'"  *See* Dkt. 385 at 24930–31.  That's irrelevant, because "walking away" was in trade secret *12* (Dkt. 223-20 at 7520), which Coda dropped pre-trial.  Dkt. 223-1 at 7083.  Not trade secret 11.

*Not Secret.*  Coda presented no evidence that trade secret 11 was secret, so no reasonable jury could have found that Goodyear misappropriated it.  Dkt. 376 at 24299.  Coda doesn't deny that it never addressed secrecy (*see* Dkt. 359 at 1595:25–1618:11), other than by naked, conclusory assertions (Dkt. 356 at 539:16–20; Dkt. 361 at 1695:10–11) that cannot support a jury verdict.  *See Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-CV-1195, 2016 WL 4468001, at

---

[2]  Coda cites Jackson's testimony (Dkt. 385 at 24929), but that isn't evidence of misappropriation, much less substantial evidence.  He wasn't even aware of Coda until 2014, years after the alleged misappropriation in 2009.  Dkt. 358 at 1065:5–6.  Neither was he an expert qualified to opine about Coda's trade secrets or Goodyear's patents.  Fed. R. Evid. 701(c).

*13 (N.D. Ohio Aug. 24, 2016); *Arnos v. MedCorp.*, No. L-09-1248, 2010 WL 1730139, at *3 (Ohio Ct. App. Apr. 30, 2010).

Coda goes on at length regarding Hrabal's testimony "about his great efforts to preserve the secrecy of his technology—all of which was done so as to protect his multi-year investment in developing a tube-in-groove solution." Dkt. 385 at 24930. But this is just more morphing. Trade secret 11 isn't Coda's "technology," nor is it the vague concept of "a tube-in-groove solution." Coda's closed description framed it as "Coda's knowledge of how to design and develop self-inflating tire pump and groove solutions, consisting of" a combination of 8 elements. Dkt. 365 at 2688:17–2689:3. The "knowledge" was unspecified in the "secret," and Coda offered zero evidence that the 8-part combination—as Coda's closed description framed it—was not generally known or readily ascertainable. *Cincinnati Indus. Mach.*, 2012 WL 13109820, at *16. And, the only pre-2009 evidence of Hrabal conceiving of the idea of placing a tube in a sidewall groove is his 2007 PCT publication that Coda (incorrectly) says "did not have a groove." Dkt. 385 at 24930.

***Not Misappropriated.*** Coda failed to offer any evidence that Goodyear used or disclosed all 8 required elements of trade secret 11. As Goodyear showed in its Rule 50(b) motion, Hrabal identified only *one* feature of this secret that he allegedly disclosed to Goodyear (a feature admittedly disclosed in the non-secret prototype). Dkt. 376 at 24302.

Coda again ignores this fatal hole in its case, offering nothing to support the misappropriation verdict as to trade secret 11. Coda speculates that the jury might have relied on Hrabal's testimony *unrelated* to trade secret 11, and a *demonstrative* exhibit that isn't evidence at all. Dkt. 385 at 24931; *see also* Dkt. 365 at 2675:13–21 (demonstratives "are not themselves evidence or proof of any facts."). Coda cites testimony about "the tubeless solution and different pump lengths" (*id.*), but that testimony wasn't about trade secret 11. *See* Dkt. 355 at 393:1–5

11

(discussing the non-secret prototype), 430:12–431:9 and 461:14–462:1 (discussing trade secret 2); Dkt. 357 at 800:19–801:4 and 808:10–809:7 (discussing trade secret 5).

Coda further cites to purported testimony about trade secret 11 (Dkt. 385 at 24931), but that testimony:  (1) isn't about trade secret 11 (*see* Dkt. 355 at 423:2–13 (discussing trade secret 15)); (2) doesn't address all eight required elements of trade secret 11 (*id.* at 433:11–434:14 (addressing only two of the eight)); or (3) is not probative of misappropriation (*see* Dkt. 356 at 581:18–25 (Hrabal testifying that he had a copy of a demonstrative exhibit listing the alleged trade secrets)).  Finally, Coda claims that Hrabal "gave examples of what the trade secret relates to" (Dkt. 385 at 24931), but simply cites the same Hrabal testimony about just two of the eight required elements.  *See* Dkt. 355 at 433:11–434:14.

In sum, Coda "present[ed] this alleged secret not as the conjunctive eight-element secret it disclosed, but as a simple one- or two-element secret."  Dkt. 376 at 24302.  Coda's morphing can't save the verdict.

### 4.    JMOL As To Trade Secret 20

***Indefinite.***  Coda describes trade secret 20 as "the design considerations for constructing the overall SIT assembly for a self-inflating tire" in its opposition.  Dkt. 385 at 24931.  That's not what Coda's closed description of this secret was.  It framed this "secret" as "Coda's knowledge of how to design and develop self-inflating tire systems with circulating and non-circulating pump variations, comprised of [*sic*]" seven conjunctive elements.  Dkt. 365 at 2689:9–2690:4.

Goodyear showed that trade secret 20 is indefinite—Coda's unspecified "knowledge," and of ill-defined elements at that.  Dkt. 376 at 24303.  Coda skirts the myriad questions raised by its indefinite description.  *See id.* ("what information? . . . what observations, made by whom? . . . what are these descriptions? . . . what functions and air-paths? . . . what different pressures? . . . what various paths? . . . what safety benefit did it provide?")).  *See* Dkt. 385 at 24933.

12

With no answers to these devastating questions, Coda again leans into insisting that the jury resolved indefiniteness, and that Goodyear "ignores record testimony and related exhibits." *Id.* (citing Dkt. 355 at 451:10–23). Wrong on both fronts. The Court has already ruled that indefiniteness is for the Court, as a question of law; it was not decided by the jury. Dkt. 353 at 173:19–175:12 ("MR. GRIFFITH: Your Honor, we do believe it is a question of law for you to decide. THE COURT: And I certainly will."). And Coda's "testimony" and "exhibits" turn out to signify nothing: They amount to Hrabal answering "yes" to whether he agreed that a demonstrative exhibit recited trade secret 20, and "yes" to counsel's leading question about whether the demonstrative somehow "relates to these specifics technical items in relation to your three-way valve regulator." *See* Dkt. 355 at 451:10–23. That doesn't speak to definiteness, even if that question were for the jury.

**Not Secret.** Coda doesn't even try to take on its failure to prove that trade secret 20, a 7-element combination, was secret. As noted above, a trade secret can comprise a combination of public and confidential information (Dkt. 385 at 24933), but Coda *still* had the burden to prove the secrecy of this combination, as recited in Coda's closed description. *Caudill*, 2022 WL 16846585 at *5 ("[T]he plaintiff must establish that 'the combination of known elements or components is unique.' . . . Because all of a combination trade secret's elements may individually be publicly known, the uniqueness of the combination is critical to establishing trade-secret protection."). Coda never even tried to meet that legal requirement. Coda's efforts to lean on disjointed testimony regarding some—but not all—of the seven required elements (Dkt. 385 at 24932–33) is not enough to prove secrecy of the seven-element combination. Dkt. 376 at 24304–05.

**Not Misappropriated.** Coda claims Hrabal "shared the trade secret with Goodyear through his explanations and demonstrations during their visual inspection of pressure regulating valves,"

13

but it identifies no evidence that Hrabal disclosed trade secret 20 as the seven-element combination from its closed description.  *See* Dkt. 385 at 24932.  And there's no evidence that the visually inspected valves (Exs. P-875 and P-876) embodied all seven required elements in the combination. In fact, Hrabal only testified about the valves by linking them to trade secret *3*—not trade secret *20*.  *See* Dkt. 355 at 463:17–464:21.

Coda also claims that "Goodyear used both the dead space and the recirculation concepts in its patents and AMT project" (Dkt. 385 at 24932), but, as Goodyear showed, "dead space" isn't in trade secret 20; recirculation was known; and in any event, recirculation was just one of the seven elements of the "combination" trade secret 20.  *See* Dkt. 376 at 24304–05.  Evidence that Goodyear used one publicly known element isn't substantial evidence of use or disclosure of *all seven* required elements.  Again, it's just like saying that using carbonated water is enough to misappropriate the secret formula for Coca-Cola.  The law and common sense are to the contrary.

### 5.    JMOL As To Trade Secret 23

***Not Misappropriated.***  Coda presented zero evidence that it possessed trade secret 23 or disclosed it to Goodyear, or that Goodyear ever used or disclosed it.  Dkt. 376 at 24305–06.  Coda does not disagree.  It nevertheless argues that "it is . . . irrelevant that the specific testing results described in an email and those identified in trade secret 23 did not exactly match where . . . Goodyear relied on Coda's testing data."  Dkt. 385 at 24934.

It's not only relevant—it's dispositive.  Trade secret 23 isn't "testing data" in the abstract; it's three specific test results that Coda recited in its closed description.  *See* Dkt. 365 at 2690:13–23.  Coda can't now morph it to embrace other, never-before-specified "testing data."  Again, when opposing summary judgment of no secrecy, Coda insisted that trade secret 23 was all three specific test results collectively.  Dkt. 250 at 12434 (relying on "other Coda testing results demonstrating 3.5 and 6.5 atmospheres" recited in trade secret 23).  Now Coda calls these

14

"irrelevant."  They're highly relevant, because they *are* the trade secret Coda asserted, yet Goodyear never used or disclosed any (let alone all) of those three test results.

Coda claims that Hrabal testified he disclosed trade secret 23 to Goodyear, but that bare assertion is unaccompanied by any citation to the record.  *See* Dkt. 385 at 24934.  For good reason: Hrabal never gave such testimony.  The *only* alleged disclosure was the email (Ex. P-471), which Coda does not dispute fails to disclose the three specific test results that make up trade secret 23. *See* Dkt. 385 at 24934.

Coda's other arguments likewise fail.  *First*, Coda asserts that "[t]he jury could have reasonably inferred that Goodyear relied heavily on Coda's testing data" and "it is plain that Goodyear relied on Coda's testing data" (Dkt. 385 at 24934), but that assertion isn't supported by any evidence, much less evidence relating to the test results of trade secret 23.  *Second*, Coda claims that its "testing results gave Goodyear further reason to believe in the technology" (*id.*), but that's just attorney argument—there's no evidence that the three test results in trade secret 23 (or even Coda's public test results, for that matter) had any impact on what Goodyear believed.  *Third*, Coda speculates about the timing of an email with one irrelevant test result (*id.*), but again, there's no evidence that Goodyear ever received or did anything with the trade secret 23 test results.

## B.    No Substantial Evidence Demonstrates "Actual Malice"

Coda says:  "Goodyear infers that the trade secrets were 'not imagined by Coda until after this lawsuit was filed in 2015.'"  Dkt. 385 at 24938 (quoting Dkt. 376 at 24308).  That is not just inference, but documented fact:  Coda itself didn't know about trade secrets 7, 11, 20, 23, and 24 in November 2015, months after filing suit.  All Coda had after suing Goodyear were "*potential trade secrets*" (Ex. D-293) crafted by investors and lawyers who "hop[ed] that some of these items might turn out to actually be secret or confidential."  Dkt. 358 at 1106:11–25; *see also* Dkt. 356 at 582:7–18; Dkt. 358 at 1112:5–9.

15

Coda insists that the jury's finding of malice "is predicated on Goodyear *knowing* it received Coda's trade secret information" in 2009.  Dkt. 381 at 24565 (emphasis in original).  Goodyear knew it received information, but the record is bereft of any evidence that Goodyear knew it got trade secrets.  How could Goodyear have "known" about trade secrets 7, 11, 20, 23, or 24 in 2009, when Coda never identified them as secrets at the time, and when even Coda itself didn't know about them until many years later?  *See also* Dkt. 386, Goodyear's Laches Reply, at 24956–58.  The jury's actual-malice finding is unsupported.

### C. Alternatively, The Punitive Damages Award Should Be Reduced

#### 1. The OUTSA's Cap On Punitive Damages Is Facially Constitutional

The jury's punitive-damages award was clearly excessive.  The statute caps punitive trade-secret awards at three times the actual-damages award, O.R.C. § 1333.63(B), but this jury awarded 22 times the actual-damages award.  Under Ohio law, then, even if the liability verdict could survive, the punitive verdict still would have to be reduced.  *Id.*  Coda doesn't dispute that.  Instead, it says the cap is unconstitutional and that this federal Court should ignore controlling Ohio and U.S. Supreme Court decisions.  This Court should follow the Ohio statute, which is constitutional.

Statutory caps on punitive damages do not violate the constitutional right to jury trial.  "Legislatures enjoy broad discretion in authorizing and limiting permissible punitive damages awards." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 433 (2001) (Seventh Amendment).  As the Ohio Supreme Court ruled in *Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 441 (Ohio 2007), interpreting and applying the Ohio Constitution's similar jury-trial right, "precedent conclusively establishes that regulation of punitive damages is discretionary and that states may regulate and limit them as a matter of law without violating the right to a trial by jury."

Notwithstanding this precedent, Coda asks this Court to declare the statute unconstitutional.  *See* Dkt. 385 at 24939–45.  The Sixth Circuit cautions sternly against this:

Ohio law requires a high degree of certainty before a law is declared to be contrary to the state constitution.   All Ohio statutes have a strong presumption of constitutionality.    For an Ohio court to declare the legislature's action unconstitutional, it must appear *beyond a reasonable doubt* that the legislative and constitutional provisions are clearly incompatible.

*Fencorp, Co. v. Ohio Kentucky Oil Corp.*, 675 F.3d 933, 945 (6th Cir. 2012) (citations and internal quotation marks omitted; emphasis added).

Arbino clearly supports applying the OUTSA's punitive damages cap, and Coda hasn't shown unconstitutionality beyond a reasonable doubt.   Coda nonetheless argues that the Ohio Supreme Court "strangely undermined" its "firmly grounded precedents" in deciding *Arbino* (Dkt. 385 at 24942–43), but that's just a lawyerly way of asking this federal Court to ignore a binding state-law precedent from a state's highest court.   That would violate this Court's *Erie* obligation to apply "the law of the State," whether "declared by its Legislature in a statute or by its highest court in a decision," in diversity cases.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

In any event, Coda ignores how *Arbino* distinguished those precedents:

- In *Zoppo v. Homestead Ins. Co.*, the Ohio Supreme Court struck down a statute in which the court, *alone*, determined punitive or exemplary damages (not the case here). 644 N.E.2d 397, 401 (Ohio 1994).  But *Arbino* explained that *Zoppo* "wholly removed the jury from the fact-finding process" and held that if a jury assesses punitive damages, "[t]he subsequent application of a statute to this decision does not abrogate the established function of the jury."  880 N.E.2d at 440–41.

- As for *State ex rel. Ohio Acad. of Trial Laws. v. Sheward*, 715 N.E.2d 1062 (Ohio 1999), *Arbino* not only found its holding dicta (as Coda points out), but also found that the U.S. Supreme Court's "post-*Sheward* precedent conclusively establishes that regulation of punitive damages is discretionary and that states may regulate and limit them as a matter of law without violating the right to a trial by jury" (a point Coda ignores).  880 N.E.2d at 441 (citing *Cooper*, 532 U.S. at 433).  And, *Arbino* held that "even if we were bound by [*Sheward*'s] reasoning, we would be compelled to revisit it."  *Id.*

- Finally, the statute at issue in *Galayda v. Lake Hosp. Sys., Inc.*, didn't cap punitive damages; rather, it required the court to further reduce a jury's award of *actual* damages that had already been reduced to present value, 644 N.E.2d 298, 301–302 (Ohio 1994), as *Arbino* pointed out, 880 N.E.2d at 432.

17

*Arbino* is the law.  Legislative limits on punitive damages are constitutional.  *See also In re Heparin Prod. Liab. Litig.*, No. 09-HC-60186, 2011 WL 3875361, at *6 (N.D. Ohio Sept. 1, 2011) (finding "Ohio law precludes an award in excess of the statutory cap" and barring punitive damages in excess of the cap) (citing *Arbino*).[3]

Coda also invites this Court to speculate about how the Ohio Supreme Court might rule in a pending case, *Brandt v. Pompa*, No. 2021-0497 (Ohio) (noticed Apr. 21, 2021), and suggests that its outcome might overrule *Arbino*'s holding that statutory caps on punitive damages do not violate the right to a jury trial.  *See* Dkt. 385 at 24943–44.  Under *Erie*, the Court is obligated to follow Ohio Supreme Court precedent, not speculate how it might change in the future.  Besides, *Brandt* has nothing to do with punitive damages under any statute, let alone the OUTSA—Brandt challenges only caps on certain forms of *compensatory* damages under O.R.C. § 2315.18, *see Brandt v. Pompa*, No. 2021-0497, 2021 WL 4713226, *29–*30 (Ohio Oct. 1, 2021).[4]  And *compensatory* damages present fundamentally different constitutional issues:  "Unlike the measure of actual damages suffered, which presents a question of historical or predictive fact, *the level of punitive damages is not really a 'fact' 'tried' by the jury.*"  *Cooper*, 532 U.S. at 437 (citations omitted and emphasis added).  Indeed, Brandt expressly distinguished compensatory damages (which she appeals) from punitive damages (which she doesn't).  *Brandt v. Pompa*, No. 2021-0497, 2021 WL 6064377, at *2 (Ohio Dec. 14, 2021); *see Atwood v. UC Health*, No. 1:16-CV-

---

[3] *Lindenberg v. Jackson National Life Insurance Co.*, 912 F.3d 348 (6th Cir. 2018) is inapposite.  As the Sixth Circuit acknowledged, *Tennessee* appellate courts had not ruled on the constitutionality of statutory punitive damages caps, *id.* at 363–64, but if they had, as the Ohio Supreme Court did in *Arbino*, that would have been the controlling authority, *id.* at 358.

[4] The statute in *Brandt* fundamentally differs from the OUTSA.  Section 2315.18 caps non-economic, compensatory damages in tort cases (with exceptions), but doesn't cap punitive damages.  The OUTSA is the opposite.  *See* O.R.C. § 1333.63(A) (no cap on compensatory damages), (B) (cap on punitive damages).

593, 2019 WL 6877643, at *8 (S.D. Ohio Dec. 17, 2019) ("[T]he Ohio Supreme Court has explained that . . . punitive damages awarded to Plaintiffs are separate and apart from any remedy for their injuries."). Thus, even if the Ohio Supreme Court were to rule in *Brandt* that a different statute's cap on compensatory non-economic damages is unconstitutional, there's no basis to assume that such a holding would extend to the OUTSA's cap on *punitive* damages. *See Cooper*, 532 U.S. at 437; *see also Simpkins v. Grace Brethren Church of Delaware*, 75 N.E.3d 122, 129–131 (Ohio 2016) (holding the damages cap in O.R.C. § 2315.18 constitutional).

### 2.     The OUTSA's Cap Is Constitutional As Applied To Coda

Coda's "as applied" due process and equal-protection challenges also fail. Here, Coda relies on *Roginski v. Shelly Co.*, 31 N.E.3d 724, 753 (Ohio Com. Pl. Aug. 21, 2014). Dkt. 385 at 24945–46. But *Roginski* doesn't help Coda here, for it bears no factual or legal relationship to this case. *Roginski* held that to support "a claim of 'grossly inadequate' punitive damages," a party must prove that applying the cap lacks a "real and substantial relation to the general welfare of the public," under the U.S. Supreme Court's "three guideposts for considering the constitutionality" set forth in *BMW of North Am. Inc. v. Gore*, 517 U.S. 599 (1996). 31 N.E.3d at 755–56.

In its opposition, Coda neither offers the required *Gore* analysis nor even cites *Gore*. *See* Dkt. 385 at 24945–47. In *Gore*, the U.S. Supreme Court discussed the ratio between compensatory and grossly *excessive* punitive damages awards, explaining that "[i]n most cases, the ratio will be within a constitutionally acceptable range . . . . When the ratio is a breathtaking 500 to 1, however, the award must surely 'raise a suspicious judicial eyebrow.'" 517 U.S. at 583 (quotation omitted). The Supreme Court further clarified that "few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003) (citing *Gore*, 517 U.S. at 581). In *Roginski*, the court applied *Gore* to an allegedly *inadequate* punitive damages award, and found that the 40,000:1 ratio

between the $20 million in punitives awarded by the jury and the $47.50 mandated by the statutory cap was "unconscionable as well as unconstitutional" as applied.  31 N.E.3d at 756.

Coda does not and cannot argue any similar disparity between the OUTSA cap and the excessive punitives award in this case.  Nor could Coda make such an argument in good faith, because it would actually *violate* due process to uphold the jury's excessive punitive damages award.  *Campbell*, 538 U.S. at 410.  In particular, Coda does not take issue with the jury's award of $2.8 million in compensatory damages (Dkt. 369 at 24226), which is what Goodyear's expert testified was the maximum value of *all 27* of Coda's alleged trade secrets.  Dkt. 364 at 2434:7–24, 2458:18–24.  The jury awarded $61.2 million, *22 times* the unchallenged compensatory damages, as punitive damages.  Dkt. 369 at 24227.  The OUTSA caps punitive damages here at three times Coda's unchallenged compensatory award, *i.e.*, $8.4 million.  And, importantly, the jury's 22:1 ratio—if not capped—would violate *Goodyear's* due process rights, for it is more than double the 10:1 presumption of unconstitutional excessiveness.  *Campbell*, 538 U.S. at 410.[5]

## III.  CONCLUSION

For these reasons and those stated in Goodyear's opening brief, the Court should grant JMOL in favor of Goodyear and order this case dismissed.  Alternatively, the Court should remit the punitive damages award to "an amount not exceeding three times" the compensatory damages award, as required by O.R.C. § 1333.63(B).

---

[5] Coda's reliance on a Montana state court decision in *Butte Local Dev. Corp. v. Masters Grp. Int'l, Inc.* is misplaced.  No. DV-11-372, 2014 WL 2895577, at *22 (Mont. Dist. Mar. 25, 2014), *vacated sub nom. Masters Grp. Int'l, Inc. v. Comerica Bank*, 380 Mont. 1 (Mont. 2015).  Whereas the Ohio Supreme Court affirmatively holds that punitive damages caps *are* constitutional, *Arbino*, 880 N.E.2d at 441, there was no such on-point Montana precedent.  *See* 2014 WL 2895577, at *10; *see also Masters*, 380 Mont. at 26 (declining to address whether lower court "erred by invalidating Montana's cap on punitive damages.").

Dated:  December 7, 2022                          Respectfully submitted,


                                                  <u>*/s/  David M. Maiorana*</u>
                                                  Calvin P. Griffith (0039484)
                                                  David M. Maiorana (0071440)
                                                  John C. Evans (0081878)
                                                  JONES DAY
                                                  North Point
                                                  901 Lakeside Avenue
                                                  Cleveland, Ohio  44114
                                                  cpgriffith@jonesday.com
                                                  dmaiorana@jonesday.com
                                                  jcevans@jonesday.com

                                                  Gregory A. Castanias (*pro hac vice*)
                                                  Tracy A. Stitt (0079949)
                                                  JONES DAY
                                                  51 Louisiana Ave., N.W.
                                                  Washington, D.C.  20001
                                                  gcastanias@jonesday.com
                                                  tastitt@jonesday.com

                                                  *Attorneys for Defendants The Goodyear Tire*
                                                  *& Rubber Company and Robert Benedict*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December, 2022, a copy of the foregoing was electronically filed with the Court and was served upon counsel of record via the Court's electronic filing system.

<u>*/s/  David M. Maiorana*</u>
One of the Attorneys for Defendants