**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

CODA DEVELOPMENT s.r.o, CODA
INNOVATIONS s.r.o., and FRANTISEK
HRABAL,

          Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER
COMPANY, *et al.*,

          Defendants.

CASE NO.  5:15-CV-01572-SL

JUDGE SARA LIOI

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR ATTORNEYS' FEES**

i

Table of Contents

INTRODUCTION ............................................................................................................................1

LEGAL STANDARD......................................................................................................................3

    Patent Act Standard....................................................................................................................3

    OUTSA Standard .......................................................................................................................4

ARGUMENT...................................................................................................................................5

GOODYEAR'S MOTION FAILS TO SUPPORT A CLAIM FOR FEE-SHIFTING................................5

I.    Coda's Claims Were Never Meritless...................................................................................5

    A.    Coda Reasonably Believed that Goodyear Stole Coda's Trade Secrets .........................5

    B.    That Goodyear's Defenses to Coda's Claims Ultimately Prevailed Does Not Now Retroactively Render Coda's Claims Baseless........................................................................................8

    C.    This Court's Careful Consideration of the "Definiteness" Requirement Supports the Reasonableness of Coda's Position....................................................................................10

    D.    The Federal Circuit's Affirmance on a Novel Legal Ground Does Not Undermine the Underlying Merit of Coda's Claims or the Good-Faith Basis on Which it Prosecuted Them..................................11

II.    Coda Did Not Pursue Its Claims for an Improper Purpose .................................................13

CONCLUSION..............................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alice's Home v. Childcraft Educ. Corp.*,
  No. 09AP-299 (Sep. 2, 2010 Ohio Ct. App.)................................................................4

*BDT Prods., Inc. v. Lexmark Int'l*,
  602 F.3d 742 (6th Cir. 2010) ........................................................................................5

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
  858 F.3d 1371 (Fed. Cir. 2017).................................................................3, 4, 10, 15

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*,
  916 F.3d 1350 (Fed. Cir. 2019)....................................................................................8

*E.J. Brooks Co. v. Cambridge Security Seals*,
  No. 12-CV-2937, 2015 WL 9704079 (S.D.N.Y. Dec. 23, 2015) ...........................12

*Hytera Commc'ns Corp. v. Motorola Sols., Inc.*,
  No. 1:17 CV 1794, 2021 WL 1698693 (N.D. Ohio Apr. 29, 2021) .....................3, 10

*Jones v. Cont'l Corp.*,
  789 F.2d 1225 (6th Cir. 1986) ......................................................................................4

*Magnesium Mach., LLC v. Terves, LLC*,
  Nos. 20-3779/3998, 2021 WL 5772533 (6th Cir. Dec. 6, 2021) ...............................7

*Masimo Corp. v. Apple, Inc.*,
  No. SA CV 20-00048 JVS, 2023 WL 3432126 (C.D. Cal. Mar. 15, 2023) ...............9

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
  603 F.3d 943 (Fed. Cir. 2010).........................................................................4, 7, 15

*Metron Nutraceuticals, LLC v. Adams, et al.*,
  No. 1:20-cv-01803, 2023 WL 6117988 (N.D. Ohio Sept. 19, 2023) .....................3, 4

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)........................................................................................................3

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
  149 F.4th 1081 (9th Cir. 2025) ...................................................................................12

*Shepard and Associates, Inc. v. Lokring Technology, LLC*,
  No. 24-3348, 2025 WL 1420931 (6th Cir. May 16, 2025)........................4, 7, 10, 15

ii

*Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Group, Inc.*,
    68 F.4th 792 (2d Cir. 2023) ........................................................................................12

*In re Wells Fargo COVID Forbearance Settlement Litig.*,
    No. 2:24-CV-1026, 2025 WL 1312393 (S.D. Ohio Feb. 3, 2025) ..........................................14

*XTec, Inc. v. Hembree Consulting Servs., Inc.*,
    183 F.Supp.3d 1245 (S.D. Fla. 2016) ....................................................................................13

*Yellowbrook Inc. v. Brandeberry*,
    708 F.3d 837 (6th Cir. 2013) ...............................................................................................3

**Statutes**

Patent Act Section 285 (35 U.S.C. § 285) .....................................................................................3

**Rules & Regulations**

Rule 26(b)(1)....................................................................................................................................9

Rule 50(a)........................................................................................................................................10

Rule 50(b) .........................................................................................................................2, 10, 11, 12

Rule 56(d) ......................................................................................................................................12

**INTRODUCTION**

Plaintiffs Coda Development s.r.o., Coda Innovations s.r.o, and Frantisek Hrabal (collectively, "Coda"), hereby respectfully submit this Opposition to Defendants' Motion for Attorneys' Fees (Dkt. 411).

Fee shifting is not warranted here.  Coda, at all times, had a good-faith basis to prosecute its claims.  What Goodyear's motion fails to explain is that it prevailed on appeal on a different legal footing than even Goodyear had thought possible: the Federal Circuit *rejected* Coda's trial testimony and construed only the language of an interrogatory response to define the trade secrets. That was a game-changing decision, and it squarely conflicts with the law in other circuits.  That Goodyear ultimately prevailed on that ground does not negate the underlying merits of Coda's claims, the reasonableness of its belief in those claims, and the proper purpose for which it brought them.

Coda's claims had merit.  This Court repeatedly evaluated them at summary judgment and again before submitting them to the jury—each time, after careful review and consideration, allowing the case to move forward.  The evidence Coda amassed in discovery supported its belief that it had valid trade secrets in its self-inflating tire technology and was the rightful inventor of related patents that Goodyear had procured only after stealing Coda's trade secrets.

And the jury ultimately credited that evidence.  After evaluating the credibility of the multiple witnesses who took the stand, the jury rendered a special verdict finding that Coda had established the existence of seven trade secrets; that Goodyear had misappropriated five of them; and, by clear and convincing evidence, that Goodyear had done so willfully and maliciously. Indeed, even when this Court ultimately vacated that verdict, this Court still agreed "that sufficient evidence was presented to the jury to support the jury's finding of actual malice in this case."  Dkt.

1

393 at 27, n.18.

On Rule 50(b), the Court determined that it should not have sent the case to the jury, applying its decision that definiteness was a threshold legal issue for the Court to decide.  But that, too, was an unsettled question on which this Court had sought supplemental briefing, and on which the Federal Circuit expressly did not rule.  Many courts hold a different view, in line with what Coda argued.  The existence of that good-faith dispute does not mean Coda's views were meritless.  If it were so clear, this Court would not have wrestled with the issue and asked for additional briefing.

At the end of a multi-year dispute, the Federal Circuit construed Coda's interrogatory response like an immutable patent claim.  It did not uncover evidence that rendered Coda's claims false or baseless.  Nothing "new" came to light that shattered what Coda had argued all these years. The Federal Circuit simply compared language in an interrogatory response, prepared at the outset of discovery, against prior art, and ignored the record evidence that was developed during discovery and trial.  Even Goodyear never advocated for that result.

Coda did not pursue this case for an improper purpose.  At all times, it sought lost licensing revenue and/or a licensing agreement, whereby Goodyear would license Coda's technology and manufacture Coda's self-inflating tires.  Its damages claim at trial was greater than demands during settlement (as is often true at trial)—and properly supported by Goodyear's own projected revenue, the analysis of independent consultants, and Coda's expert witness, who used all of that evidence to support Coda's damages claim.

Goodyear is right to note that its lack of commercialization impacted Coda's litigation strategy.  Dkt. 411 at 1. Of course it did.  Goodyear intentionally shut down its commercialization efforts—when it was at the literal finish line and about to launch products—right after the Federal

2

Circuit suggested it would reinstate Coda's case. Goodyear's intent was to foil Coda's damages claim.

This is not a record that warrants fee-shifting. Coda reasonably believed it held valid and protectible trade secrets that Goodyear stole and destroyed. Coda's purpose in pursuing its claims aligns with what civil litigation is for—to air and resolve a dispute over strongly contested rights. That Coda lost that fight is of no moment here. Goodyear's motion should be denied.

## LEGAL STANDARD

Goodyear seeks an award of attorney's fees pursuant to the Patent Act and the Ohio Uniform Trade Secrets Act. Dkt. 411 at 2-4. A "request for fees runs counter to the American Rule, which 'generally requires parties to pay their own' legal fees." *Metron Nutraceuticals, LLC v. Adams, et al.*, No. 1:20-cv-01803, 2023 WL 6117988, *2 (N.D. Ohio Sept. 19, 2023). The American Rule is designed to broaden access to justice by ensuring that parties with legitimate but difficult cases are not afraid to pursue their claims. Exceptions are thus extraordinary, or the rule would have no meaning. Movants seeking fees "bear[] the burden of establishing entitlement to an award." *Id.*, citing *Yellowbrook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013).

**Patent Act Standard**

Pursuant to Section 285 of the Patent Act (35 U.S.C. § 285), fee-shifting is allowed only "in exceptional cases" to correct "gross injustice" that is "bottomed upon a finding of unfairness or bad faith . . . ." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017). An "exceptional case" is the "rare case" that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1374 (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)); *accord Hytera Commc'ns Corp. v. Motorola Sols., Inc.*, No. 1:17 CV 1794, 2021 WL 1698693, at *1, *3 (N.D. Ohio Apr. 29,

3

2021) ("In the end, the Court's decision on Summary Judgment was not a close call. . . . [But] [a] case is not extraordinary simply because the Plaintiff was ultimately unsuccessful, even if its lack of success was entirely predictable.").

Moreover, as true here, "[a]bsent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment and JMOL, as well as the jury's favorable verdict, as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (collecting cases); *see also Checkpoint Sys.*, 858 F.3d at 1376 (same).

### OUTSA Standard

Pursuant to the Ohio Uniform Trade Secrets Act (OUTSA) (§ 1333.64(A), a court may deviate from the American Rule only in "rare, truly egregious" cases and award reasonable attorney's fees to the prevailing party where a misappropriation claim was made in bad faith. *Metron Nutraceuticals*, No. 1:20-CV-01803, 2023 WL 6117988, at \*4–\*5 (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)); *see also Alice's Home v. Childcraft Educ. Corp.*, No. 09AP-299 at p. 11 (Sep. 2, 2010 Ohio Ct. App.) (requiring a finding of bad faith to award attorneys' fees under OUTSA and finding that the directed verdict decision "does not mandate the conclusion [that] the matter was fundamentally untenable from the outset"). Although the Sixth Circuit "has not established the precise contours of the underlying bad faith determination in a published decision . . . it has recognized . . . that the standard contains both objective and subjective components . . . ." *Shepard and Associates, Inc. v. Lokring Technology, LLC*, No. 24-3348, 2025 WL 1420931, \* 4 (6th Cir. May 16, 2025) (addressing motion for fees under OUTSA and the federal Defend Trade Secrets Act). In other words, to prevail on a motion for fees under OUTSA, "a district court must find that a party's claim was meritless, that the party knew at a certain point that it was meritless and nonetheless maintained it, and that the party brought or maintained the

4

claim for some improper purpose." *Id*. To that end, "'something more' is required than the knowing pursuit of meritless claims." *Id.* (citing *BDT Prods., Inc. v. Lexmark Int'l*, 602 F.3d 742, 753 (6th Cir. 2010)). The Sixth Circuit has explained that "[t]his could be a finding that the party sought to be sanctioned had been 'harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts.'" *Id.*

## ARGUMENT

## GOODYEAR'S MOTION FAILS TO SUPPORT A CLAIM FOR FEE-SHIFTING

### I.      Coda's Claims Were Never Meritless

Coda had valid grounds on which to pursue relief from Goodyear. Its ultimate loss post-trial and at the Federal Circuit does not unwind its good-faith motives for this suit.

### A.      Coda Reasonably Believed that Goodyear Stole Coda's Trade Secrets

Plaintiff Frantisek Hrabal spent years developing a novel self-inflating tire (SIT) technology. Dkt. 355 at 317, 339. He was not the first to attempt this—but he was the first to succeed. *Id*. at 330–31; 393–94; P-795 [1](Coda's 2009 award from Tire Technology). Goodyear had tried to develop a self-inflating tire, but it was a disastrous failure, and Goodyear had abandoned its attempts—until it met with Coda. Dkt. 357 at 832; P-389 at 8 ("Pump had reliability problems and the company failed").

Coda and Goodyear had two separate meetings in 2009 during which Coda, pursuant to a non-disclosure agreement, shared its confidential trade secrets about SIT technology with Goodyear engineers, in the hope that Goodyear would partner with Coda to develop and manufacture Coda's self-inflating tires. Dkt. 355 at 318, 398–401; P-389 at 6 ("Recommend visiting CODA to evaluate technology level"); P-461 (January 5, 2009, email) and P-585

---

[1] The "P-number" exhibits filed herewith correspond to the trial exhibits filed at the conclusion of trial.

(nondisclosure agreement). Goodyear had other plans. Immediately after the first meeting with Coda, in which Coda shared confidential trade secret information, Dr. Benedict prepared internal invention disclosures describing Coda's technology as his own. Dkts. 357 at 851–53, 361 at 1926–27; P-35 (bi-directional pump and pressure regulating valve). Goodyear then attempted to move forward with building a prototype but needed more information from Coda. Dkts. 357 at 832 & 844, 361 at 1892; P-207 ("goal is to evaluate CODA's Self Inflating Tire technology"). Internal Goodyear documents show that they struggled and therefore sought a second meeting so as to "pick Coda's brains." Dkt. 361 at 1906–08; P-397 (email) and P-199 (attachment, "CODA – pick brains"); P-391 ("No know-how by GY"); *see also* P-157 at 15 (showing Goodyear's creation process "how" and "why"); P-320 at 17 (listing "CODA" as the "how" part of the puzzle). During that second meeting, Coda provided additional confidential trade secret information to Goodyear. Goodyear requested time alone with Coda's prototypes and took secret photos of them. Dkt. 393 at 27, n.18 (crediting Hrabal's testimony at Tr. 599); Dkt. 361 at 1916–17. The prototypes and other physical demonstratives inspected and photographed by Goodyear were a central feature of the trial, and bely Goodyear's assertion that Coda had no prototypes. *See, e.g.*, P-522; P-525; P-556; P-863; P-875; P-886; P-888; P-1112. And when other Goodyear engineers questioned the provenance of their new-found SIT technology, Dr. Benedict instructed his team to "make the best product and worry about the IP later." Dkt. 393 at 27, n. 18 (citing Ex. P-407 at 2).

One month after the second meeting with Coda, Dr. Benedict prepared another invention disclosure in which he identified the optimal location for the pump tube to be placed on the tire—the very location Mr. Hrabal had identified for Dr. Benedict during the second meeting—and distinguished that location from Coda's own prior art. P-36. Goodyear ultimately sought and obtained a patent in which that novel location is also identified. P-8 (US Patent No. 8,042,586).

And it later sought and obtained grants from the Department of Energy drawing the same distinction on pump tube location as support for federal funding. P-340 (application to Department of Energy); P-421 (final report to DOE on Goodyear's SIT, "AMT"); Dkt. 362 at 2172–77.

In opposing Coda's claims, Goodyear could not refute what happened before or after its meetings with Coda—the evidence came from its own files and witnesses.  And when a company with no prior success in SIT technology finds that success overnight, on the heels of meetings with Coda, an award-winning leader in that space, for the express purpose of picking Coda's brains and taking surreptitious photos, the inference is obvious.  Goodyear got what it wanted and left Coda high and dry. As this Court ultimately agreed, sufficient evidence supported the jury's "finding of actual malice." Dkt. 393 at 27, n.18.

That is enough to defeat a motion for fees.  *See Shepard & Assocs.*, 2025 WL 1420931, at *6 (denying motion for fees where claims were not so meritless to be sanctionable); *Medtronic Navigation*, 603 F.3d at 956-57.  There was a malicious misappropriation, and Coda had every reason to seek redress from Goodyear for that theft.  Goodyear leans heavily on the unpublished Sixth Circuit decision in *Magnesium Machine* (Dkt. 411 at 4, 8), but the facts are inapposite. There, plaintiff's counsel sought *ex parte* emergency relief before even serving the complaint— exaggerating the supposed "trade secret," distorting the timeline, and accusing the defendant of lying. *Magnesium Mach., LLC v. Terves, LLC,* Nos. 20-3779/3998, 2021 WL 5772533, at *2, *5– 6 (6th Cir. Dec. 6, 2021). Counsel later conceded the "trade secret" was "just a three-word phrase ending in the word 'Patent,'" which had been properly shared with the defendant under a subpoena. There was no misappropriation—and counsel knew it.  In contrast, here, Hrabal testified under oath about how his trade secrets differed from his patents, and the jury credited that distinction. That this Court later found the trade secrets definition legally deficient does not change that Hrabal

7

believed he had a trade secret separate from his patent.  Nor does the Federal Circuit decision to ignore that testimony on procedural grounds.

### B.    That Goodyear's Defenses to Coda's Claims Ultimately Prevailed Does Not Now Retroactively Render Coda's Claims Baseless

In light of the above evidence, Goodyear was left to claim that the trade secrets were in fact already publicly disclosed in prior art—despite its own invention disclosure, patent claims and federal funding applications identifying how the new pump tube location was *not* previously disclosed.  And in order for that argument to hold water, Goodyear also had to argue that Coda's trade secrets, as described in its interrogatory response, did not clearly identify what Coda believed they identified.

Goodyear made those arguments from the outset of the case—beginning with its motion to dismiss the complaint and repeating them at summary judgment and trial.[2]  Goodyear claimed Coda's trade secrets were vague and indefinite, and it simultaneously identified prior art that it contended publicized Coda's trade secrets.  The same prior art it points to now.[3]

Goodyear repeats its same arguments about how Coda's trade secrets were presented in the litigation and the role that counsel and Coda's investor, Daniel Jackson, played in describing the trade secrets in his personal notes to assist counsel in the Court-ordered interrogatory response. Dkt. 411 at 6.  But attorney involvement in generating an interrogatory response describing trade secrets, for the purposes of providing adequate notice to defendants in discovery, does not evidence

---

[2] Compare Dkt. 16 at 2, 4 (citing Ex. 2, Coda's 2007 PCT, and alleging non-particularized trade secrets) and Dkt. 25 at 2–3 (citing Ex. 19, Coda's *Tire Tech* article, and claiming trade secret allegations are "vague, conclusory, and effectively meaningless") with Dkt. 221 at 2–3, 9–11, 18 (discussing 2007 PCT, trade secret particularity, and *Tire Tech* article) and with Case: 23-1880, Dkt. 22 at 8–11, 39–40 (same).

[3] Indeed, while Goodyear accuses Coda of ill intent in opting to oppose Goodyear's motion to dismiss (Dkt. 411 at 5-6), in lieu of immediately filing an amended complaint, Goodyear lost those same arguments before the Federal Circuit.  That does not support a finding that Coda was acting in bad faith. *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1362 (Fed. Cir. 2019) ("Plaintiffs expressed their desire to proceed with their proposed amended complaint even if this court were to conclude, as it now has, that the original complaint sufficiently stated the claims on appeal.").

bad faith.  *See, e.g.*, *Masimo Corp. v. Apple, Inc.*, No. SA CV 20-00048 JVS (JDEx), 2023 WL

3432126, * 5 (C.D. Cal. Mar. 15, 2023) ("The fact that attorneys prepared a trade secret disclosure

does not tend to prove or disprove the underlying trade secrets are valid and protectable.").  It is

the ordinary course of cooperation between lawyer and client. And Mr. Jackson also addressed

Goodyear's concerns at trial, and the jury credited his explanation.[4]  For example, he testified that

it was the "core of [his] belief" before ever investing in Coda that Goodyear misappropriated

Coda's trade secrets. Dkt. 358 at 1136–37. He also understood before this case was even filed (*id*.

358 at 1135–37) that Mr. Hrabal shared a "complete information package" with Goodyear that

included a mix of public and trade secret information, and Mr. Jackson's notes (i.e., the "Jackson

Chart") created at the direction of counsel reflected his "own thinking" (based on discussions with

Mr. Hrabal and review of physical artifacts shared with Goodyear (*id*. at 1088–89, 1107–08) to

"separate out from that massive information the very specific trade secrets that were disclosed."

*Id.* at 1089, 1103, 1106. As Mr. Jackson testified, his notes were not "the final word [on] anything"

(*id*. at 1093), information deemed not trade secret did not appear in Coda's interrogatory response

(*id*. at 1137–38), and Coda's interrogatory response was written based on an analysis of

information from a variety of other sources (*id*. at 1090–91, 1128–29).

On the full discovery record, this Court properly denied summary judgment—describing it

as a "close call" but ultimately sending the case to trial where a jury could decide.  Dkt. 262 at 19–

20.  That was the right decision.  Throughout this entire time, nothing new surfaced in discovery

that changed the landscape of the case or the trajectory of the evidence.  Coda had a good-faith

---

[4] Goodyear notes that Coda sought to prevent Mr. Jackson's chart from being introduced at trial (Dkt. 411 at 6, n.1), and that is correct: Coda maintains that the document, which was only produced inadvertently, constitutes privileged attorney work product.  A magistrate judge also agreed with that view. (Dkt. 178 at 1–2 ("the Court finds that the notes are work product as they were prepared at the direction of counsel in anticipation of litigation" and "the spreadsheet is not otherwise discoverable under Rule 26(b)(1) as it is protected by attorney client privilege.") While Coda respects that this Court took an alternative view, Coda's view was not objectively baseless.

belief in its case and had proffered evidence in support of every element of its claims.  Goodyear maintained its same defenses, pointing to the same pieces of prior art it identified at the outset of the case.  This was a live dispute appropriately sent to a jury to decide.

The outcome of the jury verdict was decidedly in Coda's favor—but win or lose, the issue here is whether Coda pursued its claims in bad faith. And given the substantial evidence in its favor—the same evidence on which the Court relied to deny summary judgment and deny judgment on Rule 50(a)—Goodyear cannot show that Coda's case was *either* subjectively or objectively baseless (and it must prove both).  *See Hytera Commc'ns Corp.*, 2021 WL 1698693, at *2–3; *Shepard & Assocs.*, 2025 WL 1420931, at *6–8; *Checkpoint Sys.*, 858 F.3d at 1376.

### C.    This Court's Careful Consideration of the "Definiteness" Requirement Supports the Reasonableness of Coda's Position

Prior to trial, in view of Goodyear's allegations about the vagueness of Coda's trade secrets as described in its interrogatory response from the beginning of discovery, this Court asked the parties to provide briefs on whether trade secret definiteness was a fact question for the jury or a question of law for the Court (Dkts. 346–48)—and it ultimately determined it was for the Court to decide (Dkt. 353 at 173–75). At the conclusion of trial evidence, this Court again wrestled with the definitions of the trade secrets, striking some as vague, but ultimately allowing others to go to the jury. Dkt. 364 at 2649–650.

The Court plainly understood the "definiteness" standard (specifically, who has to address that question) to be adequately unsettled as to require supplemental briefing.  At a minimum, that means reasonable minds can differ (and they do).  Ultimately, on Rule 50(b), this Court decided against Coda, relying on its holding that definiteness is a threshold legal question for the Court and finding that the case should not have been sent to the jury.  Dkt. 393 at 10-11. But the Court's careful consideration of this issue, as well as the divergence of views among other courts (*e.g.*,

Dkt. 346; *infra*, § I.D), demonstrates that Coda's position (that definiteness is a fact issue for the jury to decide) was *not* devoid of all merit.

**D.    The Federal Circuit's Affirmance on a Novel Legal Ground Does Not Undermine the Underlying Merit of Coda's Claims or the Good-Faith Basis on Which it Prosecuted Them**

On appeal, the Federal Circuit affirmed this Court's Rule 50(b) judgment, vacating the jury's verdict, and affirmed the dismissal of the patent claims.  But the Federal Circuit's analysis applied a very different approach from what this Court had conducted or from that applied by other circuits.  Because this Court had ordered a "closed list" of trade secrets at the start of discovery, the Federal Circuit expressly *rejected* Coda's trial evidence about those trade secrets and focused only on the language included in Coda's interrogatory response. Case No. 23-1880 (Dkt. 59) at 9-12. It compared that language against the prior art to find that no reasonable juror could have found in Coda's favor. And it declined to rule on whether definiteness was a question of fact or law.  *Id.* at 7, n.2.

Not even Goodyear had argued for this approach.  In Goodyear's Rule 50(b) brief, it also marshalled trial evidence in support of its arguments; it did not argue that trial evidence was irrelevant.  And when this Court granted that motion, it also described trial evidence to support its findings.  *See, e.g.,* Dkt. 393 at 14-17 (reviewing trial evidence and finding that the "testimony showed that the language of the trade secret was susceptible to *too many* interpretations" and "shed no light on *which* interpretation might be the one Coda claimed as secret"); at 18 (citing Dkt. 376 (Goodyear's brief) "marshaling the trial testimony revealing that TS 24 was not secret and had been repeatedly published"). That is also consistent with this Court's approach at summary judgment—where the Court expressly recognized that, "[a]lthough the Court agrees that some of Coda's listed trade secrets are anything but a model of clarity, the Court also concludes that it would be inappropriate to grant summary judgment to Goodyear on Coda's trade secret claims

11

given the entirety of the record." Dkt. 262 at 19. The Court further held that, "[w]hether all of Coda's trade secret claims can withstand a directed verdict will be determined after a presentation of the evidence." Dkt. 262 at 20.

At no time, until the Federal Circuit's ruling, did the parties or this Court ever consider that a closed list of trade secrets meant no other evidence of those trade secrets would ever be considered. If that were true, this Court would have surely instructed the jury about the limited evidence it could consider (but did not). As a result, the Federal Circuit's affirmance on this ground does not mean Coda's claims were meritless or remotely suggest bad faith.

Moreover, the Federal Circuit's and this Court's decisions also conflict with other courts that have expressly permitted the contours of a trade secret to evolve and also reviewed trial evidence to assess definiteness. While this Court found, on Rule 50(b), that Coda's trade secrets had inappropriately "morphed" from the initial interrogatory response (a finding with which Coda disagrees), numerous courts have declined to find that problematic. The Ninth Circuit recently declined to institute a requirement to fix the definition of a trade secret early in the litigation and reaffirmed that trade secret definiteness is a question for the jury. *See Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087-88 (9th Cir. 2025) (finding that the district court "abused its discretion in denying a Rule 56(d) request to allow the plaintiff 'to refine its [trade secret] identifications through discovery.'"). Other courts have followed similar, less rigid paths. *See Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Group, Inc.*, 68 F.4th 792, 800 & 801 (2d Cir. 2023) (holding that whether the "trade secrets were adequately identified (and proved) was ultimately a question for the jury" and presented a "fact-specific question"); *E.J. Brooks Co. v. Cambridge Security Seals*, No. 12-CV-2937, 2015 WL 9704079, *8–9 (S.D.N.Y. Dec. 23, 2015) (analyzing multiple witnesses' testimony at trial to assess whether reasonable jury could have

12

concluded that trade secret was defined with adequate particularity); *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F.Supp.3d 1245, 1257 (S.D. Fla. 2016) (upholding jury verdict despite accusations that plaintiff's trial presentation presented a "moving target" definition of its trade secrets where plaintiff "altered its jury-instruction definition of its trade secrets up until the end of trial"). The great divergence in views confirms that Coda's position fell well within the range of reasonable advocacy, despite being unsuccessful here.

## II. Coda Did Not Pursue Its Claims for an Improper Purpose

Even if Coda's claims had been objectively meritless all along, and even if Coda had known its claims were meritless (neither of which is true), Goodyear must still prove that Coda pursued this lawsuit for an improper purpose. No evidence supports that argument. Goodyear has further waived any opportunity to substantiate its claims with actual evidence for the first time on reply.

First, at all times, Coda has sought to bring its self-inflating tire technology to market. Both Coda and its investors had faith in that technology and its potential to revolutionize the tire industry. Ex. 2 (F. Hrabal Decl.) at 3–5; Ex. 3 (D. Jackson Decl.) at 3, 10–11, 14; P-340; P-282 at 5–6. But as a solo inventor, Frantisek Hrabal had no resources to take his invention to market on his own. To that end, Coda spent several years trying to identify a partner with whom to develop and commercialize its self-inflating tire technology. Those efforts continued during the years leading up to and after the filing of this suit. For Coda and its investors, this was never just a litigation play against Goodyear. This was about commercializing Coda's technology.

Goodyear's misappropriation of Coda's technology and its obtaining patents on that technology placed a cloud on Coda's title. Ex. 3 ¶ 5. While Coda intensively pursued other industrial partnerships, this cloud ultimately made it impossible for Coda to partner with any entity other than Goodyear. Ex. 2 ¶¶ 4–5. Coda's lawsuit was driven by a sincere desire to see this technology commercialized—either through a partnership with Goodyear, or through a resolution

13

that cleared title for Coda and reimbursed Coda for its losses, so that it would have the means to take the technology to market.  Ex. 2 ¶¶ 2–3, 6; Ex. 3 ¶¶ 3–14.

Coda engaged in numerous good-faith settlement discussions with Goodyear in an effort to resolve this dispute, and it is both surprising and disappointing to see Goodyear disclose and misrepresent those discussions in a brief before this Court—without seeking leave of Coda or this Court.  *See, e.g.,* Dkt. 411 at 1–2, 7–8 & 12; Ex. 1 (B. Cloern Decl.) at ¶ 2 (citing same).  Because Goodyear has injected those discussions into this dispute and squarely placed their content at issue, Goodyear is precluded from asserting any remaining privilege over them.[5]  Coda therefore attaches redacted declarations, with a motion to file unredacted versions under seal, from Mr. Hrabal (Ex. 2), Mr. Jackson (Ex. 3), and counsel of record (Exs. 1 & 4) to address those misstatements and defend Coda from the allegations that it pursued its claims for an improper purpose.

Goodyear further asserts that Coda "made no settlement demand that was even arguably proportional to the real-world stakes of this case" (Dkt. 411 at 8) and boldly claims that "[n]o evidence supported any of [Coda's damages' expert's] assumptions" at trial (Dkt. 411 at 10).  Both statements are wrong.  Coda's settlement demands, like its damages claim at trial, were firmly grounded in objective evidence, including evidence from Goodyear's own files.  Coda's damages expert, Shirley Webster, an economist with Ocean Tomo, testified how she calculated damages for Coda's lost licensing revenue by considering numerous pieces of evidence,[6] consistent with the

---

[5] *See*, Ohio Rev. Code. § 2710.04(B) ("A person that discloses or makes a representation about a mediation communication that prejudices another person in a proceeding is precluded from asserting a privilege under section 2710.03 of the Revised Code, but only to the extent necessary for the person prejudiced to respond to the representation or disclosure."); *In re Wells Fargo COVID Forbearance Settlement Litig.*, No. 2:24-CV-1026, 2025 WL 1312393, at *3 n.1, *6 (S.D. Ohio Feb. 3, 2025) (finding no mediation privilege under federal law because "the harm caused by non-disclosure would be manifestly greater than the harm caused by disclosure" and noting that it may also have been waived under Ohio law based on "representations about mediation communications that prejudice[d]" others).

[6] That evidence included, inter alia, Goodyear's internal documents covering analyses of market demand, tire pricing, business model options, and projected annual revenues. Dkt. 359 at 1410, 1419, 1422–23 (discussing P-278), 1423–24 (discussing P-912). They also included a 2013 Goodyear business case analysis that calculated a $411 million net present value for estimated profits arising from AMT sales within just the North American truck

14

evidence she expressly identified in her expert report. Webster Rpt. at 6, Appx. B. (Indeed, if she had "*no evidence*," as Goodyear now claims, her testimony would likely have been struck at the *Daubert* stage.) Armed with that evidence, Ms. Webster calculated Coda's lost licensing revenues in the range of approximately $89 million to $246 million. Dkt. 359 1409–410. These figures support Coda's good-faith basis for its settlement demands and its damages case at trial.

### CONCLUSION

As described herein, Coda prevailed at the pleadings stage through trial, which provides a basis on which to find that its claims were "objectively reasonable and suitable for resolution at trial." *Medtronic Navigation*, 603 F.3d at 954 (collecting cases); *see also Checkpoint Sys.*, 858 F.3d at 1376 (same); *see also Shepard & Assocs.*, 2025 WL 1420931, at *6. No new evidence came to light that undermined the strength of those claims *after* trial, despite the changed result. Instead, this Court ruled on an unsettled legal issue, and the Federal Circuit affirmed that ruling upon applying an even different approach—that expressly rejected consideration of the trial evidence. There is no gross injustice here on which to award fees. For all of the foregoing reasons, Goodyear's Motion should be denied.

Respectfully submitted,

*/s/ Boyd Cloern*

Boyd Cloern *(Pro Hac Vice)*
bcloern@steptoe.com
Leah Quadrino
lquadrino@stpetoe.com
Joseph Ecker
jecker@steptoe.com
Scott Richey
srichey@stepoe.com
Steptoe & Johnson LLP

---

tire market in the first five years alone. Dkt. 359 at 1423–24 (discussing P-912). And they included other third-party market studies and valuations prepared by Cyrrus (P-607) and Deloitte (P-456). Dkt. 359 at 1445–452. Ms. Webster also relied on witness testimony. E.g., Dkt. 359 at 1418 (Mineur), 1424–25 (Anderson), 1431–32 (Russo).

15

1330 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

*Attorneys for Plaintiffs*