# EXHIBIT 3

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **CODA DEVELOPMENT s.r.o., CODA INNOVATIONS s.r.o., and FRANTISEK HRABAL,** | |
| Plaintiffs, | Case No. 5:15-CV-01572-SL |
| v. | Honorable Sara Lioi |
| **THE GOODYEAR TIRE & RUBBER COMPANY and ROBERT BENEDICT,** | |
| Defendants. | |

## DECLARATION OF DANIEL JACKSON

1. I, Daniel Jackson, am one of Coda's principal investors. I submit this declaration to address statements in Goodyear's Motion for Attorneys' Fees asserting that Coda failed to engage in good-faith settlement negotiations or made unreasonable settlement demands, and abusively sought a "windfall."

2. I have firsthand knowledge of the reasons Coda initiated this lawsuit, as well as Coda's and Goodyear's respective positions during their numerous settlement negotiations throughout the litigation.

### I.      The Reasons Coda Brought this Lawsuit Against Goodyear

3. At all times, Coda has sought to bring its self-inflating tire technology to market. Both Coda and its investors had faith in that technology and its potential to revolutionize the tire industry. From an environmental perspective, the opportunity was particularly strong: in the commercial trucking industry, the technology had the potential to lower fuel usage and reduce the frequency of tire replacement.

1

4.      As a solo inventor, Frantisek Hrabal had no resources to take his invention to market on his own. To that end, Coda spent several years trying to identify a partner with whom to develop and commercialize its self-inflating tire technology.

5.      Goodyear's misappropriation of Coda's technology and its obtaining patents on that technology placed a cloud on Coda's title. That ultimately made it impossible for Coda to partner with any entity other than Goodyear. Coda's lawsuit was driven by a sincere desire to see this technology commercialized—either through a partnership with Goodyear, or through a resolution that cleared title for Coda and reimbursed Coda for its losses, so that it would have the means to take the technology to market.

6.      As discussed below, Coda's effort to structure a settlement based on the cross-licensing of technology is evident in all of its settlement negotiations with Goodyear. Coda did not just seek a quick payout of past damages. It hoped for a forward-looking partnership that would ultimately benefit all parties.

**II.      History of the Parties' Settlement Negotiations**

7.

2



).

3

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

██    ████████████████████████████████████████████████

████████████████████████████████████████████████████

**III.**    ████████████████████████████

13.    ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████

14.    ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Case: 5:15-cv-01572-SL  Doc #: 415-7  Filed:  05/21/26  5 of 6.  PageID #: 26210

4

**IV.     Coda's Ongoing Efforts to Identify an Industrial Partner**

15.     Coextensively with these settlement efforts, Coda diligently pursued alternative industrial partnerships to bring its technology to market. These efforts covered thousands of miles and hours, and extended to major and secondary tire-makers, tire industry-adjacent enterprises, major tire consumers, car-makers, experts in consulting and academia, and others. The cloud on Coda's title to the self-inflating tire technology resulting from Goodyear's occupation of the market, as well as Goodyear's subsequent public abandonment of the technology, hobbled Coda's efforts, which ultimately were unsuccessful.

**V.      Conclusion**

16.     At all times, Coda's settlement conduct was reasonable, supported by evidence, and directed toward resolving the dispute and enabling commercialization of the technology, both for the benefit of the parties and consumers. Coda made specific, substantiated monetary proposals; participated in multiple mediations; and consistently sought terms that would benefit both parties.

****

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This declaration was executed on May 21, 2026.

*s/Daniel  Jackson*
Daniel Jackson

5